6/27/2019 1:54 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 34709217
By: Adiliani Solis
Filed: 6/27/2019 1:54 PM

## CAUSE NO. 2019-38876

| | | |
|---|---|---|
| CHIEF DPT. JERRY LUMAN, | § | IN THE DISTRICT COURT |
| ASST. CHIEF NORMAN VERBOSKY, | § | |
| LT. DAVID WILLIAMS, | § | |
| DPT. DWAYNE PACIFICO, | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | 333RD JUDICIAL DISTRICT |
| V. | § | |
| | § | |
| CHRISTOPHER DIAZ, INDIVIDUALLY, | § | |
| LEE HERNANDEZ, INDIVIDUALLY, | § | |
| HARRIS COUNTY, TEXAS, | § | OF HARRIS COUNTY, TEXAS |
| *Defendants.* | § | |
| | § | |

## FIRST AMENDED PETITION AND JURY DEMAND

### TO THE HONORABLE DARYL L. MOORE:

### DISCOVERY PLAN

The Plaintiffs intend discovery to be conducted under Texas Rule of Civil Procedure 190 Level 3.

### NATURE OF THE CASE

This is an unlawful employment practices case involving termination of employment in violation of the Texas Whistleblower Act.

### PARTIES

Chief Deputy Jerry Luman is an individual who resided in Harris County, Texas at the time the cause of action asserted herein accrued and who continues to reside in Harris County, Texas. The last 3 digits of his driver's license are 452. The last 4 digits of his

EXHIBIT 1

social security number are 238.

Assistant Chief Norman Verbosky is an individual who resided in Kerr County, Texas at the time the cause of action asserted herein accrued and who continues to reside in Kerr County, Texas.  The last 3 digits of his driver's license are 019.  The last 4 digits of his social security number are 564.

Internal Affairs Lieutenant David Williams is an individual who resided in Harris County, Texas at the time the cause of action asserted herein accrued and who continues to reside in Harris County, Texas.  The last 3 digits of his driver's license are 091.  The last 4 digits of his social security number are 718.

Deputy Dwayne Pacifico is an individual who resided in Galveston County, Texas at the time the cause of action asserted herein accrued and who continues to reside in Galveston County, Texas.  The last 3 digits of his driver's license are 833.  The last 4 digits of his social security number are 977.

Harris County (the "Harris County") is a political subdivision of the State of Texas.  Service of citation upon Harris County shall be made on the County Judge located at 1001 Preston, Houston, Texas 77002.

Chris Diaz is an individual who resided in Harris County, Texas at the time the cause of action asserted herein accrued and who continues to reside in Harris County, Texas.  Service of citation upon Chris Diaz shall be made at his residence located at 10826 Munn St., Houston, Texas 77029.

M. Lee Hernandez is an individual who resided in Harris County, Texas at the time the cause of action asserted herein accrued and who continues to reside in Harris County, Texas.  Service of citation upon M. Lee Hernandez shall be made at his residence located

at 1514 Avenue M, South Houston, Texas 77587.

## SUBJECT MATTER JURISDICTION

The Court has original subject matter jurisdiction, under the Texas Constitution Article V § 8, over the claim asserted herein because no other court has exclusive original jurisdiction over that claim and because damages are within the jurisdictional limits of this Court.

## PERSONAL JURISDICTION

This Court has personal jurisdiction over Harris County because (1) Harris County was formed in Texas, is located in Texas, and maintains continuous and systematic ties to Texas, and (2) the cause of action asserted herein arose from activities and omissions occurring in Texas.

## VENUE

Venue is proper under Texas Government Code § 554.007(a) because the cause of action asserted herein arose in Harris County, Texas.

## CLAIM FOR RELIEF:
## TEXAS WHISTLEBLOWER ACT
### Purposes and rules

The Texas Whistleblower Act ("TWA") is intended to enhance openness in government, compel the government's compliance with law, and deter the government's violation of law.  It is designed to keep open the communication lines between public employees — who are often in the best position to discover illegal conduct — and those who are in a position to remedy the illegal conduct.  It is intended to prevent harm to the physical safety and the financial safety of the public.  It represents an important confidence in the ability of individuals to make a difference in that regard to protect the well-being of their community.

Both state and local governmental entities must comply with the TWA[1] to prevent harm to the physical safety and the financial safety of the public.  If a state or local governmental entity violates the TWA, it is responsible for the consequences.  To comply with the TWA, a state or local governmental entity (1) must allow its employees to report to any appropriate law enforcement authority what the employee reasonably believes to be a violation of law and (2) must not suspend, terminate, or take other adverse personnel action against its employee for making such a report.[2]

The TWA expressly waives and abolishes immunity from suit and liability to the extent of liability for the relief provided under it.[3]

Harris County, specially Harris County Constable Precinct 2 and Constable Chris Diaz (thereafter "Diaz"), know that they must comply with the criminal statutes as codified under the Texas Penal Code.

All of these laws are intended to protect the physical safety and the financial safety of the public — *i.e.*, safeguard life, health, property, and welfare of the public.  The TWA recognizes Texas Penal Code as "laws" — *e.g.*, statutes.[4]

For example, Chapter 31 of the Texas Penal Code provides for various theft offenses as based upon a range of the value of the property stolen.   These theft offenses can also be enhanced if the theft is committed by a public servant under Texas Penal Code

---

[1] *See* Tex. Gov't Code § 554.002 (retaliation prohibition).

[2] *See* Tex. Gov't Code §§ 554.001(3) (definition of personnel action) & 554.002 (retaliation prohibition); Tex. PJC Employment § 107.4.

[3] *See id.* at § 554.0035 (waiver of immunity).

[4] *See* Tex. Gov't Code § 554.001(1) (definition of law).

Section 31.03(f).  Also, driving while licensed invalid is a crime under Section 521.457 of the Texas Transportation Code.

### Local governmental entity and public employee

Harris County is a local governmental entity that must comply with the TWA.

Harris County was required to protect its employees under the TWA.  Harris County, specially Harris County Constable Precinct 2, employed the Plaintiffs as licensed peace officers for the State of Texas.   Harris County Constable Precinct 2 treated the working relationship as that of employer and employee.  For example, it reported wages for services performed for it on an IRS Form W-2 and otherwise documented the relationship as one of "employment."

### Reports under the TWA

This case involves at least two types of reports from the Plaintiffs that are protected under the TWA:  (1) Chief Deputy Jerry Luman, Assistant Chief Norman Verbosky, and Internal Affairs Lieutenant David Williams reported various theft offences committed by Senior Lieutenant Kim Bellotte, and employee of Harris County; and (2) Deputy Investigator Thomas Dwayne Pacifico reported suspension of Assistant Chief Clerk Jessica Duran's driving license, also an employee of Harris County.

Plaintiffs allege that Harris County adversely affected the employment of each of the Plaintiffs in this case.   Harris County does not have any legitimate reason for the adverse employment action and, in the absence of a legitimate reason, the adverse employment action was taken because of the reports at issue in this case.

### Appropriate law enforcement authority

An "appropriate law enforcement authority" includes any part of any state or local governmental entity that the employee in good faith believes is authorized to:

(1)     regulate under the law alleged to be violated in the report **or**

       (2)       enforce the law alleged to be violated in the report **or**

       (3)       investigate a violation of criminal law, **or**

       (4)       prosecute a violation of criminal law.[5]

An "appropriate law enforcement authority" may also be an individual who works for a governmental entity, may be a department, division, or other unit of a governmental entity, or may be the governmental entity itself.[6]  More than one person or entity may be an appropriate law enforcement authority for a particular violation of law.

Chief Deputy Jerry Luman, Assistant Chief Norman Verbosky, and Internal Affairs Lieutenant David Williams believe, in good faith, that their reports to Harris County Attorney's Office, Office of Inspector General, and the Texas Rangers, Company A, are reports to appropriate law enforcement authorities.  And appropriate law enforcement authorities received Chief Deputy Jerry Luman, Assistant Chief Norman Verbosky, and Internal Affairs Lieutenant David Williams' reports of violations of law by Senior Lieutenant Kim Bellotte while she was employed by Harris County Precinct 2.  The Harris County Attorney's Office is an appropriate law enforcement authority with respect to violations of the Texas Penal Code.  The Office of Inspector General is also an appropriate law enforcement authority with respect to violations of the Texas Penal Code.  Texas Rangers, Company A, is another appropriate law enforcement authority with respect to violations of the Texas Penal Code.

Additionally, Deputy Investigator Thomas Dwayne Pacifico believes, in good faith, that his reports to Harris County Constable Precinct 2 regarding the suspended driver's license of Assistant Clerk Jessica Duran are reports to an appropriate law enforcement

---

[5] *See* Tex. Gov't Code § 554.002(b) (appropriate law enforcement authority); Tex. PJC Employment § 107.4, at comment on appropriate law enforcement authority.

[6] *See generally id.*

authority.  Harris County Constable Precinct 2 is an appropriate law enforcement authority with respect to violations of the Texas Penal Code.

### Report by Chief Deputy Jerry Luman, Assistant Chief Norman Verbosky, and Internal Affairs Lieutenant David Williams

On February 12, 2018, Texas Ranger Daron Parker, was contacted by Assistant County Attorney (ACA) Nick Lykos who was employed with the Harris County Attorney's Office in Houston, Texas. Lykos held the position of Inspector General at the Harris County Attorney's Office.  Lykos advised Texas Ranger Daron Parker that managerial staff with the Harris County Precinct 2 Constable's Office had contacted Lykos for guidance with regard to Texas Public Information Act ("PIA") requests received by their office from Keaton Fuchs, Journalist, KTRK – ABC 13 as well as other media outlets that sought documentation regarding various theft offenses related to Harris County Constable Precinct 2. The managerial staff who reported the theft offences referenced in the Texas Rangers' report were Chief Deputy Jerry Luman, Assistant Chief Norman Verbosky, and Internal Affairs Lieutenant David Williams.

According to the Texas Rangers' report, Chief Deputy Jerry Luman, Assistant Chief Norman Verbosky, and Internal Affairs Lieutenant David Williams reported that the PIA requests asked for the production of documentation which would indicate that Senior Lieutenant Kim Bellotte had committed theft by falsifying timesheets for hours claimed to have worked during Hurricane Harvey.

Chief Deputy Luman and Assistant Chief Verbosky also advised Texas Ranger Daron Parker that they were concerned that the PIA request asked for the production of documentation for inventory logs and final disposition information regarding distributed Hurricane Harvey donations.   Chief Deputy Luman indicated to Texas Ranger Daron Parker that he had knowledge that Lieutenant Bellotte became heavily involved with the Oak Meadows Church of God located at 6105 Allendale Road in Pasadena.  Oak Meadows

Church of God was paired with an organization called Pastor's Army, who was a faith-based non-profit organization that had received donations to aid hurricane victims. The donations included everything from food to clothing. To house the donations, the Pastor's Army had obtained a warehouse in the La Porte area.

Regarding the clothing donations, Lieutenant Williams showed ACA Lykos and Texas Ranger Daron Parker a red, dry-fit-material shirt. On the front of the shirt was a standard star-styled badge which read "Harris County Constable." The badge's top banner read "Christopher Diaz" and the bottom banner read "Precinct 2." Printed just below the badge was the title "Volunteer." Printed on the back of the shirt was "Team Diaz" "Pastor's Army" "Houston Gulf Coast Building and Construction Trades Council" "International Association of Heat and Frost Insulators and Allied Workers" and "Partnering Together To Rebuild Harris County."

Chief Deputy Luman, Assistant Chief Verbosky, and Lieutenant Williams advised Texas Ranger Daron Parker the shirts were passed out to the community by Pastor's Army Volunteers and members of the Precinct 2 Constable's Office. Williams stated he had knowledge the shirts were distributed during a 2017 Christmas event where Pastor's Army volunteers passed out donations.

According to the report, Chief Deputy Luman also advised Texas Ranger Daron Parker that another area of concern in the FOI request involved Lieutenant Kimberly Bellotte's time sheets. During the course of preparing the FOI response, Chief Deputy Luman, Assistant Chief Verbosky, and Lieutenant Williams observed an anomaly regarding Lieutenant Bellotte's time and attendance records submitted during Hurricane Harvey. Bellotte's time sheets reflected she earned an overtime amount that was noticeably higher than the other commissioned staff.

According to the report, Texas Ranger Daron Parker classified the theft reported

by Chief Deputy Jerry Luman, Assistant Chief Norman Verbosky, and Internal Affairs Lieutenant David Williams as theft of property under Chapter 31 of the Texas Penal Code and indicated that the range of theft was between $1,500 and less than $20,000. Texas Ranger Daron Parker also indicated that the theft could be enhanced under Section 31.03(f) because the theft was committed by a Senior Lieutenant Kim Bellotte, a public servant, under the course and scope of her duties as a senior lieutenant at Precinct 2.

### Suspension, termination, or other adverse personnel action taken against Assistant Chief Norman Verbosky

On November 16, 2018, Assistant Chief Deputy Norman Verbosky went out on FMLA leave for medical issues related to cancer.  On February 11, 2018, Assistant Chief Deputy Norman Verbosky returned to work.

On February 11, 2018, Diaz approached Chief Jerry Luman and ordered Chief Jerry Luman to ask Assistant Chief Deputy Norman Verbosky if he wanted to retire.  On that same day, Chief Jerry Luman asked Assistant Chief Deputy Norman Verbosky if he wanted to retire and Assistant Chief Verbosky indicated that he did not want to retire.

On March 7, 2019, Chief Jerry Luman was ordered to report to a restaurant, called "Ernie's," located near Beltway 8 at Pasadena.  Chief Luman went into the restaurant to meet Diaz.  After meeting Diaz, Diaz instructed Chief Luman to walk outside to his car. After the two walked outside, Diaz handed Chief Luman a letter indicating that Assistant Chief Deputy Verbosky was to be terminated, effective today.  Diaz then added, "I want you to put Lee in that spot, assistant chief, and move Brown into his spot."  Diaz added, "Do it immediately!"

Later, on March 7, 2019, Assistant Chief Verbosky was ordered to repot to Chief Jerry Luman.   At the meeting, Chief Luman informed Assistant Chief Verbosky that he was terminated, effective immediately, as ordered by Diaz.    Diaz has also ordered

Lieutenant Hernandez to be present at the meeting. Assistant Chief Verbosky's termination letter stated, "This decision is based on my loss of confidence, complete lack of trust and faith in your continued ability to perform your duties, and actions that demonstrate you no longer support my strategy and vision moving forward." Assistant Chief Verbosky believes that his termination letter refers, specifically to the terms "lack of trust," to Assistant Chief Verbosky's participation in the aforementioned reports.

### Suspension, termination, or other adverse personnel action taken against Internal Affairs Lieutenant David Williams

On April 1, 2019, Internal Affairs Lieutenant David Williams was informed by Assistant Chief Lee Hernandez that he was demoted.  Internal Affairs Lieutenant Williams was relieved of a majority of his prior assignments, including (1) supervision of the entire internal affairs division, (2) criminal warrants, (3) recruiting, and (4) background investigations.   The only assignments Internal Affairs Lieutenant Williams retained were (1) communications, (2) training, (3) property room, and (4) two task force positions. Internal Affairs Lieutenant David Williams was also ordered to vacate his office.

On April 11, 2019, Assistant Chief Lee Hernandez informed Lieutenant Williams, now losing his "Internal Affairs" designation, that he was transferred and demoted to an evening shift lieutenant position under Lt. Kritzler, the division commander.  This evening shift lieutenant position never existed before and was specifically created for Lieutenant David Williams.  Lieutenant David Williams perceived this position as less desirable, as he was no longer a member of the constable's command staff, originally being the third individual in charge of all personnel at Precinct 2, excluding Diaz, and was ordered to report directly to Lt. Kritzler, the division commander, who was previously his subordinate.

On May 30, 2019, Assistant Chief Lee Hernandez informed Lieutenant David Williams he was again involuntarily transferred and demoted to a task force position previously occupied by Deputy Ricardo Rodriguez.  The task force position was a day shift

assignment and was perceived as a less desirable position, as the individual who Lieutenant Williams replaced was a deputy.

## Suspension, termination, or other adverse personnel
## action taken against Chief Deputy Jerry Luman

On May 6, 2019, Chief Deputy Jerry Luman was placed on indefinite suspension.

### Report by Deputy Investigator Pacifico

On February 15, 2019, Deputy Investigator Pacifico and Deputy Investigator Vance Britt were ordered by Chief Jerry Luman to complete a periodic background check on all Harris County Constable's Office Precinct 2 employees.

The background check included both civilian and well as classified employees. The periodic background check is conducted so that all Precinct 2 employees are working without any unreported arrests, driving restrictions, warrants, or other criminal activity which would curtail their ability to perform their job. Additionally, Section 6.017 of Harris County Personnel Policies and Procedures Manuel provides that "Employees who drive as part of their regular job are subject to periodic checks of their driver's license and must immediately notify their Department Head of any change in the status of their license."

During the course of this assignment, all personnel with last names beginning with A-M were instructed to bring proper documents to Deputy Investigator Pacifico for verification. At approximately 2:00 p.m. on February 15, 2019, all personnel's information had been verified with the exception of Assistant Chief Clerk Jessica Duran. At approximately that time, Deputy Investigator Pacifico notified her supervisor, Chief Clerk Mary Ann Carrion, that Deputy Investigator Pacifico was missing the required documents from Jessica Duran.

On Monday, February 18, 2019, Deputy Investigator Pacifico informed Duran's

immediate supervisor, Chief Clerk Mary Ann Carrion, in the presence of Chief Jerry Luman, that Deputy Investigator Pacifico had still not received any of the documents from Assistant Chief Clerk Duran, and both Chief Luman and Chief Clerk Carrion stated they would again order her to present the documents to Deputy Investigator Pacifico.

Deputy Investigator Pacifico did not receive the required documentation and instead discovered that Duran had gone home sick and was otherwise insubordinate for not turning over the required documentation as ordered to do so by a superior officer, namely Chief Luman.    In order to complete the assignment, Deputy Investigator Pacifico conducted an inquiry via JIMS and located Duran's SPN number by name and DOB. Deputy Investigator Pacifico then performed a full criminal history check on Assistant Chief Clerk Jessica Duran using her assigned SPN number.

As a result of the findings, Deputy Investigator Pacifico informed Lieutenant David Williams that the driver's license of Jessica Duran was suspended on or about November 2018 due to nonpayment of surcharges related to a citation for failure to maintain financial responsibility received from Harris County Constable Precinct 5.

Deputy Investigator Pacifico later submitted an official written report, along with Duran's criminal history report, to Lieutenant David Williams. Deputy Investigator Pacifico was later informed that an Internal Affairs case was opened.

Assistant Chief Clerk Jessica Duran did not return to work for over five weeks and did not report her absence to her direct supervisor, Mary Ann Carrion.

### Suspension, termination, or other adverse personnel action taken against Deputy Investigator Pacifico

On March 29, 2019, Deputy Pacifico received a phone call from Lieutenant Michael Kritzler who indicated that Deputy Pacifico was to report to duty on night shift in patrol

division. Deputy Pacifico did not want to transfer to the night shift in the patrol division. Lt. Michael Kritzler was ordered by Lieutenant Lee Hernandez to involuntarily transfer Deputy Pacifico.  Deputy Pacifico received no reason for the transfer.

On April 1, 2019, Deputy Pacifico completed his first shift as a night shift patrol deputy.  The night shift in the patrol division position was less desirable.  Deputy Pacifico lost his take-home car, was required to wear a uniform, lost z-time with Harris County in construction, and lost his extra jobs.   Deputy Pacifico was also moved from a proactive investigatory position, where he investigated crimes from theft to sexual assault, to a reactive patrol assignment.

## GRIEVANCE PROCESS
**Harris County claims it has no applicable grievance process**
**and refuses to respond to grievance and appeal letter**

Before filing suit, the Plaintiffs timely followed up in writing —through an attorney — to initiate any applicable grievance or appeal process concerning the Plaintiffs' suspension, termination, or other adverse personnel action in violation of the Texas Whistleblower Act.

Harris County never responded to the grievance and appeal letter.  The TWA does not require initiation of a grievance process that the employer claims does not exist or with respect to which the employer refuses to move forward.  Plaintiffs timely file suit not later than the 90th day after the date Harris County committed some unlawful adverse personel actions against the Plaintiffs.

## CONDITIONS PRECEDENT
All conditions precedent to filing suit and to recovery on the cause of action asserted herein have occurred, been performed, or been waived.

## ATTORNEYS' FEES

As a result of the conduct described above, Plaintiffs hired attorneys to pursue the claims asserted herein.   The Plaintiffs seeks to recover reasonable attorneys' fees in connection with this case, including all appeals, pursuant to the TWA.

## ACTS OF HARRIS COUNTY

The individuals involved in the adverse action at issue were agents and vice principals of Harris County.   Alternatively, the cat's paw theory of responsibility applies with respect to the adverse action at issue, if the evidence so indicates.

## JURY DEMAND

Plaintiffs request a jury trial on all issues triable of right or choice to a jury.

## NO FEDERAL CLAIMS

Plaintiffs assert no claims in this Petition for violation of any federal law or for remedies under any federal law.

## WAIVER OF IMMUNITY

A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter.   Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.[7]

## RELIEF REQUESTED

Texas Rule of Civil Procedure 47 requires Plaintiffs to plead one or more of five categories of relief set forth in the rule, even when losses continue to accrue and the defendant controls information that is material to the calculation.   So, based on additional discovery to date, Plaintiffs state that they seek non-monetary relief and monetary relief in

---

[7] *See* Tex. Gov't Code § 554.0035

the range stated in Rule 47(c)(4) excluding costs and attorneys' fees, but that evidence obtained to date may result in a legally and factually sufficient, just, and fair verdict and judgment after trial in the range of Rule 47(c)(5).  They reserve the right to amend their petition as discovery proceeds.  They note that these ranges do not consider the statutory damages caps at issue in this case.

Plaintiffs pray for all relief, in law and equity, to which they may be justly entitled under the TWA and Texas Rules of Civil Procedure, including, but not limited to:

A.   any and all appropriate injunctive relief to help protect against future violations of the TWA, to the extent permitted under the TWA; examples of such relief may include appropriately tailored injunctions: (1) preventing Harris County from violating the TWA, (2) requiring Harris County to train its employees about compliance with the TWA, (3) requiring Harris County to address compliance with the TWA in its personnel policy and procedures manual, and (4) requiring Harris County to post the required notice about the TWA in a place that its employees are likely to see the notice;

B.   any and all appropriate injunctive relief to help restore the Plaintiffs' professional and personal standing in the community as licensed peace officers in the State of Texas to the extent permitted under the TWA;

C.   judgment on the TWA claim asserted herein;

D.   reinstatement to their former positions with Harris County or an equivalent position with Harris County, shielded from the influence of Diaz, including reinstatement of lost fringe benefits and lost seniority rights; or, alternatively, compensation for the value of those reinstatement rights; all such relief to the extent permitted under the TWA;

E.   past lost compensation due to the termination and before the reinstatement date or equivalent, to the extent permitted under the TWA;

F.   any and all appropriate actual damages for other losses to the extent permitted under the TWA; examples of such compensation may include other past and future: pecuniary losses such as harm to career, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses such as harm to professional and personal standing;

G.   court costs and attorneys' fees to the extent permitted under the TWA, including attorneys' fees for all appeals, whether interlocutory or otherwise,

and expert witness fees;

H.  court costs under the Texas Rules of Civil Procedure;

I.  pre-judgment and post-judgment interest as allowed by law; and

J.  assessment of civil penalties against Chris Diaz and/or M. Lee Hernandez, individually, as allowed under Section 554.008 of the TWA.


Respectfully submitted,


**THE POERSCHKE LAW FIRM, PC**

/s/ R. Scott Poerschke, Jr.
R. SCOTT POERSCHKE, JR.
State Bar. No. 24067822
CHRIS J. AINSWORTH
State Bar. No. 24072789
5111 Center Street
Houston, Texas 77007
Phone 713.974.1600
Fax 713.621.2106
scott@rsplegal.com
ainsworth@rsplegal.com


**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES**