UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EMILY RIVERA *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-4920 |
| | § | |
| HARRIS COUNTY *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to dismiss filed by defendant Harris County. Dkt. 22. After considering the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED.

**I. BACKGROUND**

The plaintiffs are individuals who are or were employees of Harris County Precinct Two under Constable Christopher Diaz. Dkt. 9. They assert that Diaz required Precinct Two employees to perform certain essential functions for Diaz's reelection campaign and conditioned the plaintiffs' employment on this performance. *Id.* They additionally contend that Diaz retaliated against any employee who participated in any investigation regarding Diaz's use of campaign funds. *Id.* The plaintiffs assert claims for violation of the right to free speech and freedom of association that are guaranteed by the First Amendment to the U.S. Constitution. *Id.* They have sued Harris County, Christopher Diaz, Jacinto City, Texas, and Ana Diaz, who was the mayor of Jacinto City and also the wife of Christopher Diaz. *Id.*

Harris County moves for dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing that Harris County cannot be liable for Christopher Diaz's actions as an elected constable because

Christopher Diaz is not a policymaker for Harris County. Dkt. 22. Harris County additionally, or alternatively, argues that the claims by the plaintiffs who had claims in a separate state court lawsuit related to a Texas Rangers investigation (Jerry Luman, Norman Verbosky, David Williams, Cindy Vara-Leija, and Mary Ann Carrion) should be dismissed to avoid claim splitting. *Id.* The plaintiffs filed a response, and Harris County filed a reply. Dkts. 30, 33. The motion is now ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

## III. ANALYSIS

The plaintiffs bring their Constitutional claim against Harris County pursuant to 42 U.S.C. § 1983. Municipal liability under § 1983 requires "proof of three elements: a policymaker; an

2

official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978)).

Harris County argues that the claims against Harris County should be dismissed because Christopher Diaz is not a policymaker with final policymaking authority for Harris County and Harris County therefore cannot be liable for Christopher Diaz's decisions. Dkt. 22. Harris County cites several cases in which courts in this district and the Fifth Circuit have found that elected constables are not policymakers. *Id.*

The plaintiffs contend that the "rubber stamp exception" discussed by this court in *Murphy v. Butler* in 2007 applies in this case and that Harris County is a thus a proper party because Christopher Diaz had policymaking authority, or a lack of oversight from the commissioners court, which allowed him to coerce campaign donations from the plaintiffs. Dkt. 30 (citing *Murphy v. Butler*, 512 F. Supp. 2d 975, 990 (S.D. Tex. 2007)). The plaintiffs argue that because Christopher Diaz is the actual policymaker under this exception, Harris County can be held liable under *Monell*. *Id.* The plaintiffs additionally rely on *Garcia v. Dallas County, Texas*, a case decided by a federal district court in the Northern District of Texas, for the proposition that if a county does not extend civil service protection over constable precinct employees to provide a check on an elected constable's power, it is appropriate to impose liability for the constable's employment decisions onto the county. *Id.* (citing *Garcia v. Dall. Cty., Tex.*, No. 3:10-CV-2521-N, 2012 WL 13102723, at *5–6 (N.D. Tex. Jul. 23, 2012)).

With regard to the rubber stamp exception, Harris County asserts that the Fifth Circuit decided *Tonkin v. Harris County* after this court decided *Murphy v. Butler*, and in *Tonkin* the Fifth Circuit "made it clear that the County is not liable for the alleged constitutional violations by a

3

constable retaliating against constable deputies for refusing to support a constable's election campaign." Dkt. 22 (citing *Tonkin v. Harris Cty.*, 257 F. App'x 762, 763 (5th Cir. 2007) (unpublished) (per curiam)). Harris County contends that the Fifth Circuit's opinion in *Bowden* ten years later reiterated that, with limited exceptions, a constable is not a policymaker for the county. *Id.* (discussing *Bowden v. Jefferson Cty.*, 676 F. App'x 251, 253 (5th Cir. 2017) (unpublished)). With regard to the civil service protection argument discussed in *Garcia*, Harris County argues that a lack of civil service protection does not create, in the absence of legislative intent or Fifth Circuit precedent, liability for Harris County vis-a-vis policymaker status for the constable as there is no constitutional or statutory right for the plaintiffs to be entitled to civil service protection. *Id.*

**A.**   ***Murphy v. Butler***

The plaintiffs contend that Christopher Diaz's policies "were accepted without question and without any oversight from the Harris County Commissioners Court" and, as such, Harris County can be liable under the rubber stamp exception discussed in *Murphy v. Butler*. Dkt. 30. In *Murphy*, this court denied Harris County's motion for summary judgment in a case very similar to the instant case. 512 F. Supp. 2d at 978. The plaintiffs were employees of Harris County Precinct 7 whose employment had been terminated by Constable Michael Charles Butler. *Id.* They argued that Butler terminated their employment because they exercised their First Amendment rights by supporting candidates other than Butler during the primary election. *Id.* They sued both Butler and Harris County. *Id.* at 978–79. Harris County argued, like it does in this case, that it could not be held liable because Butler was not an official policymaker for the county. *Id.* at 990. The plaintiffs, like the plaintiffs here, argued that the "rubber stamp" exception applied. *Id.* Under this exception, which is typically used in employment discrimination cases, "tainted motivations" are imputed "to the titular policymaker" "if that policymaker essentially accepted the subordinate's recommendations

4

without evaluation of any kind."[1]  *Id.*  This court found that the *Murphy* plaintiffs had adduced enough summary judgment evidence to meet their burden of showing that the rubber stamp exception applied, as the commissioners' court technically had the power to hire and fire deputies, but there was evidence that the votes were "just a formality" and the commissioners' court basically "rubber stamped" Butler's decisions.  *Id.*  The court determined that it was appropriate to apply the rubber stamp exception and held that Butler's actions could be imputed to Harris County; the court thus denied Harris County's motion for summary judgment on this point.  *Id.*

Harris County requested reconsideration of the order denying summary judgment, arguing that it could not have rubber stamped Butler's decisions because Harris County had no authority to hire or fire a specific deputy constable.  *Murphy v. Butler*, No. H-05-2883, 2007 WL 1574302, at *1 (S.D. Tex. May 29, 2007).  Harris County argued that Butler had the "sole discretion to make a decision regarding the plaintiffs' employment." *Id.* The court denied the motion for reconsideration, finding that even if Butler had the sole discretion, his actions could be imputed to Harris County because he thus would be the final policymaker.  *Id.*  In making that finding, the court relied on *Brady v. Fort Bend County*, 145 F.3d 691, 702 (5th Cir. 1998), a case in which the Fifth Circuit

---

[1]  The "rubber stamp" analysis applies in retaliation and discrimination cases to allow plaintiffs to use statements of nondecisionmakers as evidence of discrimination "when the ultimate decision maker's action is merely a 'rubber stamp' for the subordinate's recommendation." *Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001) (Title VII); *see Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226–27 (5th Cir. 2000) (Age Discrimination in Employment Act) ("[I]t is appropriate to tag the employer with an employee's age-based animus if the evidence indicates that the worker possessed leverage, or exerted influence, over the titular decisionmaker.").  The Fifth Circuit also cited the rubber stamp as an "exception" to the requirement that the decisionmaker have actual knowledge the improper basis of a supervisor's employment recommendation in a footnote in a § 1983 claim, but it determined there was no evidence of a rubber stamp in that case.  *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 604 n.14 (5th Cir. 2001).  This court relied on these cases when deciding to apply the rubber stamp exception in *Murphy*.  *See Murphy*, 512 F. Supp. 2d at 990.

5

determined that an elected county sheriff was a final policymaker with regard to a decision not to rehire deputies for exercising First Amendment rights, thus exposing Harris County to liability under *Monell*.

**B.     *Tonkin* and *Bowden***

Harris County argues that, notwithstanding this court's *Murphy* decision, counties cannot be liable for a constable's decisions. Dkt. 22. Harris County primarily relies on two unpublished Fifth Circuit cases: *Tonkin* and *Bowden*. The Fifth Circuit considered *Tonkin* a few months after this court decided *Murphy*. The *Tonkin* plaintiffs were employees in the Harris County Constable's Office, Precinct Three , and they alleged that Constable Ken Jones violated their First Amendment rights by retaliating against them when they refused to support his reelection campaign. 257 F. App'x 762, 763. They sued Harris County and did not sue the constable. *Id.* The Fifth Circuit pointed out that "the discretion to terminate and hire does not in itself represent final policy-making authority, if another body or official sets county employment policy." *Id.* (citing *Brady*, 145 F.3d at 699 n.1). It stated that the "threshold question for this case, therefore, is whether a constable of a county in Texas can be said to be the policy maker for the county with respect to his actions so as to hold the county liable for the constable's conduct. Our precedents are clear: the answer is no." *Id.* It held that the "'seeming independence . . . and . . . lack of superintendence by the county court'" did not "imbue final policy-making power." *Id.* (quoting *Rhode v. Denson*, 776 F.2d 107, 110 (5th Cir. 1985)). The Fifth Circuit acknowledged its holding in *Brady* that a sheriff could be a final policymaker, but it pointed out that a precinct constable is elected only by the voters of a specific precinct, not the entire county. *Id.* (citing *Rhode*, 776 F.2d at 109). It contrasted this to a county sheriff, whose power impacts the entire county. *Id.* at 764 (citing *Rhode*, 776 F.2d at 109).

6

Ten years later, in *Bowden*, the Fifth Circuit again considered whether a constable could be considered a final policymaker for the purposes of finding a county liable under § 1983.[2] 676 F. App'x at 253–54. The court pointed out that whether a particular individual is a final policymaker for the county is a matter of state law. *Id.* (citing *McMillan v. Monroe Cty.*, 520 U.S. 781, 786, 117 S. C. 1734 (1997)).

> Under Texas law, a policymaker must "be one who 'takes the place of the governing body in a designated area of city administration,' and who (1) decides the goals for a particular city function, (2) devises the means of achieving those goals, (3) acts in the place of the governing body in the area of delegated responsibility, and (4) is not supervised except as to the totality of performance.
> [T]he delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee. . . . The governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board."

*Id.* (quoting *Democracy Coalition v. City of Austin*, 141 S.W.3d 282, 293 (Tex. App.—Austin 2004, no pet.). The Fifth Circuit affirmed the district court's summary judgment, finding that the constable "may have been a decision maker for a single precinct, but he was not a policymaker for all of Jefferson County when he constructively terminated [the plaintiff]."[3] *Id.* at 256.

---

[2] The lower court (the federal district court in the Eastern District of Texas) in *Bowden v. Jefferson County* explained the distinction in caselaw between sheriffs and constables, noting that the "Supreme Court has 'sharply distinguished between decisionmakers and final policymakers.'" *Bowden v. Jefferson Cty., Tex.*, No. 1:14-CV-287, 2015 WL 13307503, at *7 (E.D. Tex. Nov. 6, 2015) (Crone, J.) (quoting *Jett*, 7 F.3d at 1247)). It noted that "constables are county officers and may have decisionmaking authority with respect to the personnel they hire, such authority is not final policymaking authority as required for the imposition of governmental liability under § 1983." *Id.*

[3] The *Bowden* court discussed *Harris County v. Nagel*, which provides an exception to this rule, noting that *Nagel*'s "limited holding" was not applicable to the *Bowden* facts. 676 F. App'x at 255–56. In *Nagel*, the Texas Fourteenth Court of Appeals explained that "the person or entity

7

While neither of these cases expressly discussed the rubber stamp exception, both involved the very type of power provided to the constable that this court found subjected the county to liability in both of its *Murphy* decisions–whether the power was rubber stamped by the commissioners' court or bestowed directly by the county is of little consequence if the fact that the constable had the power did not subject the county to liability.

**C.**     ***Garcia* and *Logan***

The plaintiffs additionally rely on the reasoning in *Garcia v. Dallas County* in an attempt to distinguish these Fifth Circuit cases that have clearly found that constables are not final policymakers for the purposes of imposing liability on a Texas county for the types of decisions at issue in this case. In *Garcia*, a federal district court in the Northern District of Texas acknowledged the Fifth Circuit precedents, including *Tonkin* and several other cases, but determined that the precedent was "inapposite to the particular facts relating to Dallas County constables' authority over their deputies." 2012 WL 13102723, at *6. The court found that Dallas County constables "alone define employment policy objectives for deputy constables and have the full range of choice over deputy constables' employment that the Commissioners Court would have had . . . it not delegated that authority to them." *Id.* The court considered the fact that Dallas County did not provide the deputy constables with civil service procedural protections and found that Dallas County could not "hide behind the shield of *Monell*" after failing to provide the protections. *Id.* It thus held that the deputies

---

capable of subjecting the government to *Monell* liability must be an official or body responsible under state law from making policy in *that area* of the [governmental entity's] business.'" *Harris Cty. v. Nagel*, 349 S.W.3d 769, 792 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S. Ct. 915 (1988)). The *Nagel* court found that the Precinct One Constable's office had been given authority to and executed all of the mental-health warrants in Harris County and that, as such, the constable for that precinct was "the final policymaker concerning the manner in which mental-health warrants are executed in Harris County." *Id.* at 794.

8

had "alleged enough to state a claim for relief under section 1983." *Id.* The plaintiffs here assert that Harris County similarly does not provide civil service protection to deputy constables. Dkt. 30. According to the second amended complaint, Harris County has never extended civil service protection to constable employees. Dkt. 9 ¶ 139.

Harris County points out that the same district court that decided *Garcia* later granted summary judgment in favor of Dallas County in *Logan v. Dallas County, Texas*. Dkt. 22 (citing *Logan v. Dall. Cty., Tex.*, 331 F. Supp. 3d 640, 646 (N.D. Tex. 2017) (Godbey, J.). The *Logan* plaintiff was a deputy constable in Dallas. He was fired, allegedly pursuant to a reduction in force, after reporting allegations about the constable's "irregular acts" to the Dallas County Commissioners Court. 331 F. Supp. 3d at 643–44. The court first found that Logan was terminated due to a legitimate reduction in force that was caused by a budget shortfall. *Id.* at 644. The court acknowledged its holding in *Garcia*, noting that it was still "of the opinion that the County cannot dictate personnel decisions regarding the Deputy Constables, or the hiring or firing of particular Deputy Constables, due to the delegation of policymaking authority to the constables, but found that to be "a very different proposition from the one in play here, where the County, in the exercise of its budgetary authority, eliminated numerous positions as part of a reduction in force." *Id.* at 645. The court granted summary judgment in the county's favor because there was no issue of fact supporting the contention that the plaintiff's termination was causally related to his speech. The plaintiff additionally argued that the elimination of civil service protection for deputy constables impaired his right to petition under the First Amendment. *Id.* at 647–48. The court, however, found that Logan was hired after this right was removed and thus "Dallas County never took anything away from Logan." *Id.* at 647. Harris County argues that this case stands for the proposition that a deputy

9

constable has no constitutional or statutory right to civil service protection and that the plaintiffs' reliance on *Garcia* in this case is thus "misinformed." Dkt. 33.

First, none of the cases relied upon by the parties represents binding precedent.[4] The Fifth Circuit cases are unpublished, and the district courts cases are merely persuasive. The unpublished Fifth Circuit cases—*Tonkin* and *Bowden*—support a finding that the constable is not a county policymaker with regard to the employment decisions at issue. *Garcia* supports the proposition that a county that discontinues providing civil service protection after having previously done so has acquiesced to the constables being policymakers and thus should be liable under *Monell*. *Logan* adds only that the analysis may be different if the deputy constable never enjoyed civil service protection, as is the case with Harris County (according to the second amended complaint). This court's analysis in *Murphy* relating to the rubber stamp exception would be quite persuasive to this court if it were not entered several years ago without the benefit of the Fifth Circuit's guidance in the aforementioned unpublished decisions, both of which did not apply or even discuss such an exception even though they related to constables making the same types of employment with the same type of authority from Harris County. The court is thus inclined to follow *Tonkin* and *Bowden*, but it believes a more in depth discussion of the precedent relied on by the Fifth Circuit in *Tonkin* and *Bowden* will be helpful.

---

[4] Harris County argues that if *Tonkin* had been decided before this court decided *Murphy*, "this Court would have been bound by the precedent created in *Tonkin*." Dkt. 33. This is incorrect. While certainly this court would have found *Tonkin* highly persuasive, it is an unpublished opinion. Under Fifth Circuit Rule 47.5.4, "[u]npublished opinions issued on or after January 1, 1996*, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like). An unpublished opinion may be cited pursuant to Fed. R. App. P. 32.1(a)."

10

### D.      Other Constable Cases

The court starts with *Rhode v. Denson*, which is a published Fifth Circuit case from 1985. The *Rhode* court held that the unconstitutional acts of an elected San Jacinto County constable did not reflect county policy. *Rhode v. Denson*, 776 F.2d 107, 107 (5th Cir. 1985). The *Rhode* plaintiff sued the constable and San Jacinto County for allegedly depriving the plaintiff of his constitutional rights while the constable was arresting him. *Id.* at 108. A jury found in favor of the plaintiff, and the county appealed. *Id.* On appeal, the plaintiff argued that the constable was a policymaker and that "every decision [the constable] made within the general ambit of his authority is an expression of a policy." *Id.* The Fifth Circuit was "unpersuaded that a constable of a Texas county precinct occupies a relationship to the County such that his edicts or acts may fairly be said to represent official county policy." *Id.* It reasoned that even though the commissioners' court disburses the salary of constables, "the commissioners' court and the county judge have no supervisory authority or other direct superintendence over the constable's training, qualifications, or the manner in which he [or she] performs his [or her] constable duties." *Id.* at 109. It pointed out that "official policy" is a "'policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'" *Id.* (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)). In deciding that the county was not liable for the constable's actions, the Fifth Circuit noted that a "constable's constituency was not county wide" and the constable was and "was elected by the voters of a precinct." *Id.* It found that the "critical circumstance is that [the constable] was not given that discretion, or range of choice, that is at the core of the power to impose one's own chosen policy." *Id.*

Several panels of the Fifth Circuit have cited *Rhode* for a general rule that constables cannot be policymakers for a county. In *Pena v. Jimenez*, the Fifth Circuit stated that the "issue of whether Constable Jimenez is a policymaker for 42 U.S.C. § 1983 liability is foreclosed by *Rhode* . . ., which held as a matter of law that the constable of a Texas county precinct was not a policymaker, and, therefore, the county could not be held liable for his acts or edicts." 31 F. App'x 833, 2002 WL 180460, at *1 (5th Cir. Jan. 10, 2002). In *Keenan v. Tejeda*, the Fifth Circuit cursorily disposed of an argument that Bexar County could be held liable as a policymaker for retaliating against the plaintiffs for alerting a local television station about possible wrongdoing by a constable. 290 F.3d 252, 264 (5th Cir. 2002). It simply noted that, "[p]ursuant to *Rhode*, Constable Tejeda cannot be considered a policy-maker for Bexar County." *Id.* In *Bowles v. Cheek*, the Fifth Circuit again quickly disposed of an argument that a constable was a municipal policymaker, citing *Rhode*. 44 F. App'x 651, 2002 WL 1496929, at *1 (5th Cir. June 5, 2002). In *Frank . Harris County*, the constable had admitted during a deposition that he was the final policymaker. 118 F. App'x 799, 802, 2004 WL 2914035, at *2 (5th Cir. Dec. 15, 2004). Regardless, the Fifth Circuit noted, "As a matter of law in this Circuit, an elected constable is not, absent specific facts not present in this case, the final policymaker such that his unconstitutional conduct may be chargeable against the county." *Id.* (citing *Rhode*, 776 F.2d at 109–10).

While the Fifth Circuit cases directly on point are not published, the court finds that *Tonkin* and *Bowden*, in combination with other Fifth Circuit authority relating to county liability for constable conduct, both published and not, provides overwhelming support for the conclusion that an elected constable serving a single precinct within a multi-precinct county is not a policymaker for the county with regard to his or her employment decisions. Any adoption of the rubber-stamp exception that this court followed in *Murphy* or determination that lack of civil service protection

12

changes the equation as in *Garcia* is best left to the Fifth Circuit. Thus, the court holds that Harris County cannot be held liable for Christopher Diaz's employment decisions in this case.

The County's motion to dismiss is GRANTED. The court need not consider the claim splitting argument at this time.

### IV. CONCLUSION

The County's motion to dismiss is GRANTED. The claims against the County are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on April 16, 2020.

*[signature]*

Gray H. Miller
Senior United States District Judge