UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EMILY RIVERA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-4920 |
| | § | |
| HARRIS COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to dismiss the claims made against defendants Ana Diaz and the City of Jacinto City, Texas. Dkt. 35. Having reviewed the motion, response, reply, and applicable law, the court is of the opinion that the motion to dismiss should be GRANTED. However, the plaintiffs request leave to amend in their response to the motion to dismiss, Dkt. 45, and the court finds that the motion for leave to amend should be GRANTED IN PART AND DENIED IN PART.

**I. BACKGROUND**

The plaintiffs brought this lawsuit for alleged violations of their First Amendment Rights. Dkts. 1, 3, 9. Among other defendants, they sued Ana Diaz, the Mayor of Jacinto City, in her individual capacity, and Jacinto City (collectively, the "Jacinto Defendants"). Dkt. 9 (second amended complaint). The plaintiffs contend that the Jacinto Defendants "abused their position of power in order to threaten and intimidate the Plaintiffs for exercising their rights under the First Amendment." *Id.* Specifically, they contend that Ana Diaz, acting under her authority as Mayor of Jacinto County, (1) allowed a notice to be placed on the property of plaintiff Claudia Arellano indicating that she violated a city ordinance relating to building without a permit ("Building Permit

Notice") even though Arellano had not done so; and (2) allowed a notice to be placed on the property of plaintiff Jerry Luman for violating grass height restrictions ("Grass Notice") when his grass was not too high. *Id.* The plaintiffs assert that these notices were placed to threaten or intimidate the plaintiffs for exercising their First Amendment rights. *Id.*

Ana Diaz is married to Christopher Diaz, the elected constable of Harris County Precinct Two. *Id.* The plaintiffs are or were employees of Precinct Two. *Id.* The plaintiffs assert that Christopher Diaz required them to work for his campaign, and that employees who "spoke out," refused to participate in the campaign, or provided information in an investigation by the Texas Rangers related to how Christopher Diaz operated his campaign, would be disciplined in retaliation. *Id.* Luman allegedly refused to contribute to Christopher Diaz's reelection campaign and participated in a Texas Rangers investigation of Christopher Diaz. *Id.* Jacinto City allegedly put a notice in Luman's yard regarding his grass about three months after this investigation and ten days before his employment with Precinct Two was terminated. *Id.* Arellano allegedly refused Christopher Diaz's request to put a yard sign in her yard for a particular candidate and instead put up a sign for an opposition candidate. *Id.* She received Building Permit Notice from Jacinto City six days later. *Id.* Both of these individuals were discharged from their positions with Precinct Two. *Id.*

The Jacinto Defendants move to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiffs fail to plead facts to establish an ordinary citizen First Amendment retaliation claim against the Jacinto Defendants because their allegations are all conclusory and do not state how the Jacinto Defendants' alleged actions had a chilling effect on the plaintiffs' First Amendment rights. Dkt. 35. They also argue that there are insufficient facts alleged to show that any of Jacinto City's customs, policies, practices, or procedures resulted in the

alleged violation. *Id.* Additionally, they argue that Ana Diaz is entitled to qualified immunity and that the City cannot be liable for punitive damages. *Id.*

The plaintiffs respond that the Jacinto Defendants fail to see the "trout in the milk," quoting Henry David Thoreau's advice that "'[s]ome circumstantial evidence is very strong, as when you find a trout in the milk.'" Dkt. 45 (quoting Henry David Thoreau, *Journal*, Nov. 11, 1850). They argue that their case arises from political corruption and that conspiracies are "commonly circumstantially evidenced and inferred." *Id.* They contend that while Ana Diaz is the mayor of Jacinto City, "[i]t is much more pertinent that the mayor of Jacinto City is Mrs. Diaz, Constable Diaz's wife." *Id.* The plaintiffs concede that Ana Diaz "may, in the end, after discovery, be able to prove herself rather a catspaw than a co-conspirator with her husband, an incurious (or obsequious to the point of half-wittedness) wife with no knowledge of her husband's doings. It is at least remotely conceivable." *Id.* But they argue that they need only comply with the Federal Rule of Civil Procedure Rule 8 pleading standard, asserting that the Jacinto Defendants appear to believe that invoking the standard enunciated by the U.S. Supreme Court in *Bell v. Twombly* and *Ashcraft v. Iqbal* permits "a Rule 56 summary judgment on the cheap." *Id.*

The plaintiffs assert they have sufficiently pled a *prima facie* circumstantial case of coordinated, conspiratorial acts whereby Ana Diaz used "her influence as a small-town mayor to serve her husband's unlawful interests." *Id.* Moreover, as to how the municipality can be liable, the plaintiffs assert that the "city's liability proceeds, as it were, from what may be called, in rather doggy Latin, its *respondeat inferior*," because the city was merely subservient to Ana Diaz and Christopher Diaz's political ambitions. *Id.* (citing *Smith v. Winter*, 782 F.2d 508 (5th Cir. 1986)). They assert that Ana Diaz has "yoked the city to her husband's chariot wheels" and exercised her power so as to "land the city in the soup along with her." *Id.* They argue that the "ordinary citizen"

3

standard is inapplicable because Ana Diaz used her power as mayor of Jacinto City to support her husband's campaign. *Id.* Instead, they contend the case involves unofficial misuse of official influence and position, and argue that Ana Diaz's ultra vires acts are not entitled to qualified immunity. *Id.* (citing *Dugan v. Rank*, 372 U.S. 609, 621 (1963) and other cases). The plaintiffs argue that the alleged conspiracy renders it immaterial that the plaintiffs were employees of Christopher Diaz and not Ana Diaz and the City of Jacinto. *Id.* As to the Jacinto Defendants' argument that the City cannot be liable for punitive damages, the plaintiffs agree that this is the current state of the law but argue that the law prohibiting punitive damages is mistaken and should be modified, reversed, or overruled. *Id.*

The Jacinto Defendants point out in their reply that the plaintiffs do not even mention a conspiracy in their second amended complaint. Dkt. 48. The Jacinto Defendants argue that, moreover, the plaintiffs do not adequately allege a constitutional violation, that Ana Diaz is immune, and that even if Jacinto City were subservient to Ana Diaz in this instance, the plaintiffs have not pled a custom that represents municipal policy and thus the pleading is insufficient to hold the municipality liable for Ana Diaz's alleged constitutional violation. *Id.*

The motion to dismiss is now ripe for disposition.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim

4

under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence.[1] *Id.* at 556.

### III. ANALYSIS

**A.     Violation of First Amendment Rights**

The Jacinto Defendants argue that the only facts related to them involve Arellano and Luman, who were not employees of Jacinto City and thus can assert claims against the Jacinto Defendants only as ordinary citizens. Dkt. 35. They argue that the facts stated in the complaint show nothing more than a coincidence in timing between the Building Permit Notice and the Grass Notice and Arellano's and Luman's alleged First Amendment activities. *Id.* Moreover, the Jacinto Defendants contend that there is no allegation of injury that would have a chilling effect on the plaintiffs' continuation of their exercise of their First Amendment rights as the complaint does not suggest that

---

[1] The plaintiffs devote a significant portion of their brief to arguing that the "incantatory, ritual recital of the *Twombly* standard is, although common, ill chosen." Dkt. 45. They specifically take issue of the notion that *Twombly* somehow *changed* the Rule 8 pleading standard. *See id.* (The notion which bedevils too many pleaders, that *Twombly* and *Iqbal* between them have somehow rewritten Rule 8, must be discarded."). The court agrees that Rule 8 is firmly intact, but that does not change the fact, explained by the U.S. Supreme Court in *Twombly* and *Iqbal*, that the short and plain statement must be plausible. *See Ashcraft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (explaining that Rule 8's "'short and plain statement of the claim showing that the pleader is entitled to relief'" "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" and that it must "'state a claim to relief that is plausible on its face'" to survive a motion to dismiss (quoting Rule 8 and *Twombly*, 550 U.S. at 570)).

either notice resulted in a citation or that Luman or Arellano were prosecuted for any ordinance violations. *Id.* There is also no allegation that either plaintiff receiving a notice felt intimidated or threatened and no indication that they ceased their First Amendment activity as a result of receiving the notices. *Id.*

The plaintiffs assert that the notices are part of an overall conspiracy to violate their First Amendment rights. Dkt. 45. However, the second amended complaint does not directly allege a conspiracy; it must be inferred. *See* Dkt. 9. "To establish a cause of action based on conspiracy [under § 1983] a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*. 726 F.2d 1022, 1024 (5th Cir. 1982). Conclusory or blanket accusations are not sufficient. *Id.*; *see also Rodriguez v. Neely*, 169 F.3d 220, 222 (5th Cir. 1999). The elements are (1) "'the existence of a conspiracy involving state action'"; and (2) "'a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.'" *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds*).

Here, while there is not an allegation of conspiracy in the second amended complaint, the plaintiffs seem to indicate that an agreement to conspire can be inferred by the mere fact that Ana Diaz is married to Chris Diaz. However, agreeing to marry someone is not an agreement to conspire in illegal activity. There is simply not enough information alleged in the second amended complaint, taking the facts in the light most favorable to the plaintiffs, to support a conspiracy claim against the Jacinto Defendants based on the alleged unlawful adverse employment actions taken by Christopher Diaz.

Because there are not sufficient allegations of a conspiracy, the court must consider whether the plaintiffs have sufficiently alleged that the Jacinto Defendants deprived the plaintiffs of their First

6

Amendment rights as ordinary citizens. Certainly, the First Amendment prohibits limitations on an ordinary citizen's freedom of speech and retaliation against an ordinary citizen for exercising his or her First Amendment rights. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). To establish this type of claim, the plaintiffs "must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Id.* With regard to the second prong, not "all disadvantages imposed for the exercise of First Amendment freedoms constitute actionable retaliation." *Colson v. Grohman*, 174 F.3d 498, 510 (5th Cir. 1999)."[R]etaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable under § 1983." *Id.* at 513.

Here, the plaintiffs contend that Ana Diaz allowed the notices to be placed on Luman's and Arellano's properties. While there is some implication that Ana Diaz's alleged action of allowing the notices was motivated by Luman's and Arellano's protected activity, there is no indication that these notices caused Luman or Arellano to suffer any injury. The harm alleged is more akin to criticisms, investigations, or false accusations, which the Fifth Circuit has determined are not actionable absent a tangible adverse action. Ana Diaz was not involved in the tangible adverse actions alleged here, which relate to Luman's and Arellano's employment and not the status of building on their property or the height of their grass.

The court finds that the plaintiffs have not alleged constitutional violations by the Jacinto Defendants. The court, however, will address the Jacinto Defendants' other arguments in an abundance of caution.

**B.**     *Monell* **Claim Against Jacinto County**

The plaintiffs assert that Diaz and Jacinto City abused their power by threatening and intimidating Luman and Arellano for exercising their First Amendment Rights. Dkt. 9. Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Municipalities and other local government units qualify as "persons" under § 1983. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 689, 98 S. Ct. 2018 (1978). However, a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532 (5th Cir. 1996) ("If a § 1983 suit is brought against a [municipality or local government], the claim must be based upon the implementation or execution of a policy or custom which was officially adopted by that body's officers.") (citing *Krueger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995)). "In order to hold a municipality or local government liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom 'was the cause in fact of the deprivation of rights inflicted,'" and the "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)).

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). A "policymaker" must

8

have "'final policymaking authority' over the subject matter of the offending policy." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702 (1989). "There is no 'de facto' final policymaking authority." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). A "final policymaker" has "final authority to establish municipal policy with respect to the action ordered . . . . [Having] discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482, 106 S. Ct. 1292 (1986).

To meet the "official policy" element, the plaintiff must either allege (1) a written policy or procedure that is officially adopted or promulgated by the policymaking authorities of a governmental agency; or (2) a persistent, widespread practice of governmental agency officials or employees which, although not officially promulgated or adopted, is so common and well settled as to constitute a policy or custom that fairly represents the agency's policy. *Piotrowski,* 237 F.3d at 579. The plaintiff may also demonstrate an unwritten policy if he or she proves that a "final policymaker" took a single unconstitutional action. *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008).

To meet the "moving force" element, the plaintiff must show direct causation by establishing "'a direct causal link' between the policy and the violation." *Peterson*, 588 F.3d at 848. It is not enough for the plaintiff to allege that a change in policy may have prevented the violation, the municipality's policy "must be affirmatively linked to the constitutional violation." *Faire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

The Jacinto Defendants contend that the plaintiffs fail to allege any facts showing that a custom, policy, practice, or procedure of Jacinto City was the moving force behind the alleged violation of Luman's and Arellano's constitutional rights. Dkt. 35. The Jacinto Defendants point

9

out that the Jacinto City Council, not the mayor, is the policymaker for the City, citing the city's charter, and that while the mayor is on the council, she can only cast a vote if there is a tie. *Id.* (citing Dkt. 35, Exs. A, B, C, and G). They argue that nothing in the second amended complaint suggests that the notices received by Arellano and Luman were pursuant to a policy of the Jacinto City Council, and that since Ana Diaz had no final policymaking power, the city cannot be held liable under § 1983. *Id.* Additionally, they assert that there is no allegation that there were other instances where Jacinto City gave notices of ordinance violations as retaliation for exercising First Amendment rights, and thus there is no pattern or custom alleged. *Id.* Finally, the Jacinto Defendants argue that there is nothing to suggest that Jacinto City was deliberately indifferent to the plaintiffs' rights. *Id.*

The plaintiffs contend that the city had a custom of being subservient to Ana Diaz, who "used the unofficial influence of her official position for unofficial and *ultra vires* acts, outside the scope of her office," and has thus "inculcated a custom in the city of subservience to her and her husband's political ambitions." Dkt. 45. There are a couple of problems with this theory, as it relates to municipal liability. First, if her acts were outside of the scope of her office, how can the city be responsible for them? Second, if there is some "custom" of subservience by Jacinto City to Ana Diaz's and Christopher Diaz's actions relating to political advancement, the complaint does not provide any information about additional instances, other than the two discrete alleged issues with notifications placed on property, of Ana Diaz using her position in this manner. It is not plausible that these two notices constitute a custom of subservience to Ana Diaz's political maneuvering. Accordingly, Jacinto City cannot be held liable for the allegations of misuse of authority by Ana Diaz.

10

## C.     Qualified Immunity

Next, the Jacinto Defendants argue that the claims against Ana Diaz should be dismissed because she is entitled to qualified immunity. Dkt. 35. In a lawsuit brought against an individual defendant in his or her personal capacity, "'it is enough to show that the official, acting under the color of state law, caused the deprivation of a federal right.'" *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009). The official may assert qualified immunity, which "shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known.'" *Id.* at 395 (quoting *Wallace v. Cty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005)). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). At the motion to dismiss stage, the court must evaluate the conduct as alleged in the complaint for objective legal reasonableness. *Id.* (citing *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S. Ct. 834 (1996)). Courts must determine (1) if the plaintiff alleged a violation of a clearly established constitutional right, and (2) whether the alleged conduct was objectively reasonable under clearly established law that existed at the time of the incident. *Id.* Judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808 (2009).

The Jacinto Defendants argue that the plaintiffs fail to show that the alleged facts establish a constitutional violation and that Ana Diaz's actions violated any clearly established laws. Dkt. 48. The plaintiffs assert that Ana Diaz participated in Christopher Diaz's adverse employment action that was based on the plaintiffs' exercise of their First Amendment rights, as Ana Diaz misused her

11

official influence and "the coincidence of the petty, pettifogging harassment-by-regulatory-violation-notices at issue here is *prima facie* proof of a conspiracy in deprivation of civil rights, at least sufficient to justify the claim and to preclude its dismissal by a motion under Rule 12(b)(6) at this juncture." Dkt. 45. They contend that Ana Diaz is not entitled to qualified immunity for *ultra vires* acts of lawlessness. *Id.* They argue that public officials have been on notice that involvement in a conspiracy can result in § 1983 liability since *Smith v. Winter* was decided in 1986. *Id.* (citing *Smith v. Winter*, 782 F.2d 508 (5th Cir. 1986)).

In *Smith*, the Fifth Circuit found that the plaintiffs had stated a claim when they alleged that the defendants conspired to misuse the recall statute against the plaintiffs in retaliation for their exercise of First Amendment rights. 782 F.2d at 512. One of the defendants, a county clerk, falsely certified names on a recall petition, and the other defendants were allegedly wilful participants in the state official's action to deprive the plaintiffs of constitutional rights. *Id.* The Fifth Circuit found that the non-government officials acted under the color of law because their co-conspirator was a government official. *Id.* It additionally noted that misuse of state law by public officials qualifies as "under the color of" state law for the purposes of § 1983. *Id.*

Here, Ana Diaz is not a non-government official, but it appears that the plaintiffs contend that the alleged *ultra vires* acts at issue were overt acts in furtherance of the conspiracy and that the conspiracy and infringement of First Amendment rights relates to the adverse employment decisions made by Christopher Diaz. It is difficult to ascertain the exact theory, though, because the second amended complaint does not explain the alleged conspiracy or even mention a conspiracy. While misuse of state law as part of a conspiracy was clearly established as unlawful, the second amended complaint does not plausibly assert that Ana Diaz is part of a conspiracy or that her actions caused a deprivation of any of the plaintiffs' rights. Accordingly, she is entitled to qualified immunity.

**D.     Punitive Damages**

The Jacinto Defendants argue that Jacinto City cannot be liable for punitive damages, and the plaintiffs do not disagree that this is currently the law. Dkts. 35, 45. However, the plaintiffs advocate for a change in the law. The court, however, is bound by current Fifth Circuit precedent. Thus, if the plaintiffs had stated a claim against Jacinto City, which they did not, punitive damages would not be available.

**E.     Leave to Amend**

The plaintiffs move for leave to amend in their response to the motion to dismiss. Dkt. 45. The defendants do not respond to this request in their reply. *See* Dkt. 48. While the plaintiffs have already amended twice, under the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," and the court is given broad discretion in granting leave. *See* Fed. R. Civ. P. 15(a); *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386 (5th Cir. 2003). However, a "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)." *Willard*, 336 F.3d at 387. Here, the plaintiffs ask in their prayer for relief that "if the Court finds that Plaintiffs' pleadings are deficient in any particular way, Plaintiffs ask the Court for clarification as to what elements of the pleading are lacking before dismissing Plaintiffs' § 1983 claims under Rule 12(b)(6), and Plaintiffs request leave to cure those defects before the Court dismisses the claims against Diaz." Dkt. 45. This could be construed as a bare request, but, since the Jacinto Defendants did not file an opposition to the request and leave should be freely given, the court will construe the request as a motion. While generally the court freely grants leave to amend, it will not do so if a request is futile. An amendment to the claim for punitive damages could not cure the defect with this claim. There is a possibility, however,

that the plaintiffs will be able to state a claim and overcome Ana Diaz's claim of qualified immunity with additional facts and allegations. The plaintiffs' motion to amend is therefore GRANTED IN PART AND DENIED IN PART. The plaintiffs may amend their complaint to better explain their allegations against the Jacinto Defendants, but they may not seek punitive damages against Jacinto County. The amendment shall be filed within twenty (20) days of the date of this order.

### IV. CONCLUSION

The Jacinto Defendants' motion to dismiss (Dkt. 35) is GRANTED. The plaintiffs fail to state a claim upon which relief can be granted, Ana Diaz is entitled to qualified immunity, and Jacinto City cannot be held liable for the alleged conduct of Ana Diaz. The claim for punitive damages against Jacinto City is DISMISSED WITH PREJUDICE. The claims against Ana Diaz and remaining claims against Jacinto City are DISMISSED WITHOUT PREJUDICE TO REFILING in an amended complaint.

The plaintiffs' alternative motion for leave to amend is GRANTED IN PART AND DENIED IN PART. The plaintiffs' claims against Ana Diaz and Jacinto City, with the exception of the punitive damages claim against Jacinto City, will be reinstated if an amended complaint if filed within twenty (20) days of the date of this order.

Signed at Houston, Texas on May 18, 2020.

_____
Gray H. Miller
Senior United States District Judge