UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JERRY LUMAN *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-4920 |
| | § | |
| CHRISTOPHER DIAZ *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to dismiss filed by defendants Ana Diaz and the City of Jacinto City, Texas (collectively, "Jacinto Defendants"). Dkt. 59. After considering the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

On May 18, 2020, the court entered an order granting the Jacinto Defendants' motion to dismiss the plaintiffs' second amended complaint. Dkt. 53. The court also granted, in part, the plaintiffs' motion to amend, allowing the plaintiffs to replead all claims against the Jacinto Defendants except their claim for punitive damages. *See id.* On June 7, 2020, the plaintiffs filed their third amended complaint, which provides some additional facts and theories relating to the plaintiffs' claims against the Jacinto Defendants. Dkt. 55. On June 22, 2020, the Jacinto Defendants filed a motion to dismiss the third amended complaint. Dkt. 59. This order considers that motion.

The plaintiffs contend that Ana Diaz is the wife of Chris Diaz, the elected constable of Precinct Two in Houston. Dkt. 55. She is also the mayor of Jacinto City. *Id.* The plaintiffs allege

that the mayor is a policymaker for Jacinto City, which is governed by a council consisting of the mayor and five "Councilmen." *Id.* They contend that Ana Diaz is "not a ceremonial figurehead" because she has voting power on the council. *Id.*

The plaintiffs allege that the Diazes conspired to use Ana Diaz's position a mayor of Jacinto City to "send a clear signal to [plaintiffs Claudia Arellano and Jerry Luman] that they had violated Chris Diaz's employment policy of conditioning employment upon participation in the [Chris] Diaz campaign." *Id.* The plaintiffs contend that Chris Diaz took adverse employment actions against them for failing to support his campaign. *Id.* Arellano and Luman both worked for Precinct Two but lived in Jacinto City near the residence of the Diazes. *Id.* Ana Diaz's participation in the alleged conspiracy included "allowing" notices of Jacinto City code violations to be placed on Arellano's property and Luman's property. *Id.* Arellano allegedly received a notice for failing to obtain a construction permit even though there was no construction on her property; she received this a few days after placing a yard sign for Diaz's opponent on her property. *Id.* Luman also received a notice for a violation that allegedly did not occur, and the notice was issued just ten days after Luman was placed on indefinite suspension at Precinct Two.[1] *Id.* Additionally, the plaintiffs contend that Ana Diaz supported Chris Diaz's campaign and exercised influence over his personnel decisions, which they contend supports their theory of an alleged conspiracy between the Diazes to violate Luman's and Arellano's constitutional rights.[2]

---

[1] The third amended complaint states that Luman and Arellano received "notices" but also indicates they were "cited" for code violations. *See* Dkt. 55.

[2] There are additional allegations relating to Chris Diaz's actions as the plaintiffs' employer, but it is not necessary to detail these allegations to determine if the plaintiffs have stated a claim against the Jacinto Defendants.

The Jacinto Defendants move to dismiss the claims against them in the third amended complaint, arguing that (1) the plaintiffs have not stated a claim for municipal liability against Jacinto City because, in light of the actual role of a mayor of Jacinto City, the plaintiffs have not adequately pled that Ana Diaz is a policymaker with final policymaking authority; (2) additionally, the plaintiffs have not pointed to any policy adopted by an official policymaker that caused a constitutional violation; (3) the plaintiffs have not adequately alleged a conspiracy because they have made only blanket allegations of an agreement to conspire and provided no actual facts to support the allegations; and (4) Ana Diaz is entitled to qualified immunity.  Dkt. 59.

The plaintiffs contend that it is premature to dismiss this case, as the facts needed to support their claim are peculiarly in the possession of the defendants.  Dkt. 64.  They thus request the opportunity to conduct discovery on the qualified immunity question.  *Id.*  They also argue that Ana Diaz, as a mayor, is considered a policymaker under Texas law, notwithstanding Jacinto City ordinances that establish the Jacinto City Council as the policymaker.  *Id.*  They additionally contend that even if Ana Diaz were not a policymaker, there is no immunity for illegal or improper acts taken by an official *ultra vires*.  *Id.*

The motion to dismiss is now ripe for disposition.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812,

816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. As part of the *Twombly–Iqbal* analysis, the court proceeds in two steps. First, the court separates legal conclusions from well-pled facts. *Iqbal*, 556 U.S. at 678–79. Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Id.* at 679. When considering a motion to dismiss for failure to state a claim, "a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, the court may take judicial notice of matters of public record. *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

## III. ANALYSIS

The court will first consider whether the third amended complaint contains sufficient allegations to hold Jacinto City liable for Ana Diaz's alleged actions. Next, it will consider whether the plaintiffs have stated a claim for conspiracy to interfere with the plaintiffs' First Amendment rights. Third, the court will determine whether Ana Diaz is entitled to qualified immunity at this stage of the litigation.

### A.    Section 1983 Municipal Liability

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983.

4

Municipalities and other local government units qualify as "persons" under § 1983.  *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 689, 98 S. Ct. 2018 (1978).  However, a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Id.* at 694.  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*; *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532 (5th Cir. 1996) ("If a § 1983 suit is brought against a [municipality or local government], the claim must be based upon the implementation or execution of a policy or custom which was officially adopted by that body's officers.") (citing *Krueger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995)).  "In order to hold a municipality or local government liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom 'was the cause in fact of the deprivation of rights inflicted,'" and the "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."  *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)).

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  The reason municipal liability requires proof of a policymaker is because there is no *respondeat superior* liability under § 1983.  Instead, courts must consider whether the official's "decisions may rightly be said to represent the official policy of [the municipality, thus] subjecting it to liability under § 1983."  *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 736, 109 S. Ct. 2702 (1989).  A "policymaker" must have

5

"'final policymaking authority' over the subject matter of the offending policy." *Id.* at 737. "There is no 'de facto' final policymaking authority." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). A "final policymaker" has "final authority to establish municipal policy with respect to the action ordered. . . . [Having] discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482, 106 S. Ct. 1292 (1986).

To meet the "official policy" element, the plaintiff must either allege (1) a written policy or procedure that is officially adopted or promulgated by the policymaking authorities of a governmental agency; or (2) a persistent, widespread practice of governmental agency officials or employees which, although not officially promulgated or adopted, is so common and well settled as to constitute a policy or custom that fairly represents the agency's policy. *Piotrowski*, 237 F.3d at 579. The plaintiff may also demonstrate an unwritten policy if he or she proves that a "final policymaker" took a single unconstitutional action. *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008). The "'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle v. City of Houton*, 613 F.3d 536, 542 (5th Cir. 2010).

To meet the "moving force" element, the plaintiff must show direct causation by establishing "'a direct causal link' between the policy and the violation." *Peterson*, 588 F.3d at 848. It is not enough for the plaintiff to allege that a change in policy may have prevented the violation, the municipality's policy "must be affirmatively linked to the constitutional violation." *Faire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

The Jacinto Defendants argue that the plaintiffs fail to identify any policy statement formally

adopted by an official policymaker that caused an alleged constitutional violation.   Dkt. 59. Specifically, they contend that while the plaintiffs assert that Ana Diaz was "acting under the authority as Mayor of Jacinto City," she was not the policymaker of the city.   *Id.*   The Jacinto Defendants point to Jacinto City ordinances that indicate that the mayor is the ceremonial head of the municipality, but that the City Council is the governing body.   *Id.*   She is a member of the City Council, but only holds a tie-breaking vote.   *Id.*   They point out that nothing in the third amended complaint indicates that the City Council delegated final policymaking authority to the mayor with regard to placing notices on the properties of Jacinto City residents.   *Id.*   Moreover, the third amended complaint contains no allegations that there is a consistent and widespread practice of enforcing ordinances in retaliation for the exercise of First Amendment rights, or ever allowing the mayor to unfairly enforce ordinances.   *Id.*   The Jacinto Defendants argue that, thus, the plaintiffs fail to allege any custom, policy, or practice of the city that was the moving force behind any alleged constitutional violation or suggest that there was deliberate indifference to the plaintiffs' rights.   *Id.*

The plaintiffs assert that Ana Diaz, as mayor of Jacinto City, is a policymaker as a matter of Texas law.   Dkt. 64.   They extensively quote *Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998), and *Gomez v. City of Eagle Pass*, 91 F. Supp. 2d 1000 (W.D. Tex. 2000), in support of this argument.   *See id.*   They note that the mayor is the chief executive of Jacinto City, much like the President of the United States is the Chief Executive of the United States, and they hypothesize that Justice Gorsuch would be unlikely to conclude that President Trump is not a "policymaker."   *See id.* They argue that if the court were to follow "the textualism now enjoined upon it by the Supreme

Court in this Term's opinions," it would be unlikely to decide that Ana Diaz is not a policymaker.[3] *Id.* The plaintiffs additionally contend that an official may be a "final policymaker" even when a municipality retains some power and final legal control to limit or revoke the official's authority. *See id.* (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010); *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)). They contend that if Ana Diaz is *not* a policymaker, then she is simply "a ministerial employee, an administrative drone."[4] *Id.*

In reply, the Jacinto Defendants note that the President of the United States acts separately from Congress, whereas the Jacinto City mayor acts with the Jacinto City Council and only has tie-breaking voting powers. Dkt. 65. Thus, while both are chief executives, the extent of power they possess under the law is quite different. The Jacinto Defendants additionally point out that there are no facts in the third amended complaint indicating that the City Council delegated any responsibility to the mayor to make law or set policy in any given area, including no indication that the City Council delegated decisions relating to issuing notices of violations of Jacinto City's building codes. *Id.* The Jacinto Defendants concede that it is possible that a single incident can give rise to municipal liability, but only if the individual involved is a "final policymaker." *Id.* They argue that, construing the facts pled in the most liberal manner, Ana Diaz is part of a governing body, *not* a sole policymaker, and municipal liability cannot attach. *Id.*

The court is not convinced that carrying the title of "mayor" equates to policymaking

---

[3] The plaintiffs make this textualism argument after discussing how a mayor is like the President. It is unclear what text, other than the actual term "mayor," or perhaps the city charter, that the plaintiffs would like the court to interpret to reach the plaintiffs' desired conclusion.

[4] The plaintiffs appear to contend there are no levels of responsibility between these two extremes.

authority as a matter of law, particularly given the Jacinto City ordinances that cover how the city is governed. The cases cited by the plaintiffs do not support their argument that because Ana Diaz is the mayor, she is a policymaker. *Brady* was about whether a sheriff was the final policymaker for a county with regard to hiring deputies. The *Brady* court found that the legislature had "vested sheriffs with such discretion," which was "unreviewable by any other official or governmental body" and constituted "final policymaking authority with respect to the determination of how to fill employment positions in the county sheriff's department." 145 F.3d at 699. Here, the third amended complaint does not allege that the Jacinto City Council gave the mayor this type of discretion. *Gomez* relates to the policymaker status of a city manager under the *Elrod-Branti* framework and does not apply to a determination of whether Ana Diaz is a policymaker for purposes of imposing municipal liability. 91 F. Supp. 2d at 1008–13.

The court agrees with the Jacinto Defendants that there is no allegation in the third amended complaint that the Jacinto City Council delegated any power to Ana Diaz to make policy related to the action at issue here—alleged code violations by residents. As chief executive, the Jacinto City Charter provides power for the mayor to "preside at meetings of the City Council" and "be recognized as the head of the City government for all ceremonial purposes." Jacinto City Charter, Art. 7, Sec. 1 (Sept. 20, 2012), https://library.municode.com/tx/jacinto_city/codes/charter. The mayor cannot cast a vote, except to break a tie. *Id.* She has the power to "see that all ordinances, by-laws, and resolutions of the City Council are faithfully obeyed and enforced." *Id.* However, she "has no regular administrative duties and shall deal with administrative departments through the City Manager." *Id.* While the charter gives the mayor the right to "see" that the city's ordinances are obeyed and enforced, she does not appear to have any direct control and must go through the city

9

manager to deal with departments. *See* Jacinto City Charter, Art. 7, Sec. 1. This would necessarily place a check on any attempt by the mayor to attempt to unfairly enforce city ordinances. Moreover, a "municipality can be held liable only when it delegates policymaking authority, not when it delegates *decisionmaking* authority." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019). The "fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481–82.

Even if she had discretion to enforce, she was not a final policymaker whose actions can expose the city to liability for a single incident. In the third amended complaint, the plaintiffs allege that the mayor "allowed" these notices to be placed. *See* Dkt. 55. The Jacinto City Ordinances indicate that the city's Building Official issues notices relating to building permits, and the Health Officer "or his [or her] assistant" issues notices related the weed nuisances. Jacinto City Code, Ch. 3 § 1 (Building), Ch. 7 § 3 (Weeds). Thus, to the extent Ana Diaz exercised her discretion to instruct these individuals, through the city manager, to place the notices this one time, or did so on her own in contravention to the ordinances, this did not constitute "final policymaking" authority.

The plaintiffs assert that the remedy for the uncertainty regarding Ana Diaz's policymaking role is discovery, not dismissal, because the defendants are the parties who hold the keys to the knowledge the plaintiffs need to flesh out their claims. Dkt. 64. However, the cases the plaintiffs cite do not support allowing the case to proceed to discovery with regard to municipal liability when there is insufficient allegation, after amendment has been allowed, of facts supporting policymaking

10

authority.[5] *Zarnow* and *Bennett* both support the idea that the City Council could have delegated, even impliedly, authority. In *Zarnow*, the Fifth Circuit noted that the "nature of administrative oversight is important in determining 'policymaker' status. An official may be a policymaker even if a separate governing body retains some powers," and a city may impliedly delegate its policymaking authority. 614 F.3d at 168. In *Bennett*, the Fifth Circuit explained,

> The governing body may delegate policymaking authority in either of two ways. It may delegate policymaking power by an express statement, by a job description or by other formal action. Or it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role. In either case, the delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee.

728 F.2d at 769. Here, the plaintiffs have at most alleged facts supporting a mere discretion or decisionmaking authority; nothing indicates the city delegated, impliedly or otherwise, authority to make policy about issuing notices.

The plaintiffs argue that Jacinto City should be held liable even if Ana Diaz acted *ultra vires*. Dkt. 64 ("Ain't no virus like coronavirus . . . except the contagion of acts *ultra vires*." (alteration in original); "If Mayor Diaz were indeed a mere functionary answerable to unspecified superiors, of course, the City's failure to rein her in, it supine decision to let her reign despite their claimed retained powers, should be an act of ratification of her acts, *ultra vires* or not, imputing her acts to the City." (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S. Ct. 915 (1988) (plurality))). "[A] municipality may be liable in 'extreme factual situations' when [a final policymaker] ratifies a subordinate's decision, which requires more than the defense of a decision or action shown to be

---

[5] Here, we have a conclusory allegation that Ana Diaz is a policymaker when the municipal ordinances and city charter indicate otherwise.

11

unconstitutional after the fact." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 217 (5th Cir. 2019). "A municipality may also be liable when a policymaker engages in deliberately indifferent failure to control subordinates in a way likely to result in violation of constitutional rights." *Id.* The third amended complaint, however, does not allege that Jacinto City somehow was "supine" and failed to "reign in" Ana Diaz and should accordingly be held liable for her *ultra vires* act. *See* Dkt. 55. As noted above, since there are insufficient allegations that Ana Diaz was a final policymaker, the city cannot be held liable for her alleged single *ultra vires* act.

In sum, despite amending the complaint, the plaintiffs fail to allege that Ana Diaz is a final policymaker or provide sufficient allegations to state a claim that Jacinto City may be held liable for Ana Diaz's actions. *Cf. Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson, Miss.*, 817 F.3d 163, 166 (5th Cir. 2016) (finding that a city council, and not the mayor, was the final policymaker with regard to funding decisions even though the mayor had veto power, s it could be overridden by the council). The motion to dismiss the claim against Jacinto City is GRANTED.

**B.   Conspiracy**

The plaintiffs assert that the Diazes engaged in a conspiracy to deprive Luman and Arellano of their First Amendment rights. Dkt. 55. To state a claim for conspiracy claim under § 1983, one must allege facts that show (1) "'the existence of a conspiracy involving state action'"; and (2) "'a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.'" *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds*). "[N]aked allegations or legal conclusions masquerading as something more will not thwart dismissal." *Id.*

While the third amended complaint states that Ana Diaz was part of a conspiracy, the Jacinto

12

Defendants argue that it is unclear whether the plaintiffs are asserting that she and Chris Diaz conspired to violate the plaintiffs' First Amendment rights resulting in the adverse employment decisions or to violate their ordinary citizen First Amendment rights.   Dkt. 59.   The Jacinto Defendants assert that there are no factual allegations that are more than conclusory that Ana and Chris Diaz agreed to commit any illegal acts as required to establish a cause of action based on conspiracy.   *Id.* (arguing that a "conspiracy cannot be devined from allegations that do not include facts to show the accused conspirators agreed to commit an illegal act" (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982))).   The Jacinto Defendants agree that the complaint alleges that Ana and Chris Diaz shared a common goal of getting Chris Diaz reelected, but they contend there is no allegation that the Diazes agreed to take adverse employment actions against the plaintiffs or agreed to violate their First Amendment rights in any other way.   *Id.*   They assert that the Third Amended Complaint does not state what affirmative action Ana Diaz took to further the alleged conspiracy; instead, the defendants contend that the facts alleged by the plaintiffs merely demonstrate a coincidence in the timing of the notices.   *Id.*

Additionally, according to the Jacinto Defendants, the plaintiffs merely "jump to a conclusion" unsupported by facts that Ana Diaz was the moving force of the notice placement, even though she is alleged only to have "allowed" the notices.[6]  *Id.*  The Jacinto Defendants argue that the plaintiffs fail to provide any facts supporting their suspicion that these notices were related to Ana Diaz and Chris Diaz other than the plaintiffs' counsel's *ispa dixit*.  *Id.*  The defendants thus assert the pleading thus does not rise beyond possible to plausible.  *Id.*  The Jacinto Defendants additionally

---

[6]  Arellano received her notice eight days after putting up a sign for Chris Diaz's opponent, and Luman received his notice ten days after his indefinite suspension.  *See id.*

argue that nothing in the third amended complaint indicates that the notices caused a chilling effect of Luman's and Arellano's continued exercise of their First Amendment rights. *Id.*

The plaintiffs contend that Luman and Arellano "suddenly found themselves harassed over petifogging regulations and municipal nit-picking, the timing of which was mysteriously convenient to Constable Diaz" and clarify that they allege that Ana Diaz misused her authority as a public official acting in concert with Chris Diaz to retaliate against the plaintiffs for exercising their First Amendment rights. Dkt. 64. They argue that because the facts are peculiarly withing the possession of the defendants, they need only plead upon information or belief or set forth sufficient facts to make the inference of culpability plausible.[7] *Id.* (extensively quoting *Artista Records v. Doe 3*, 604 F.3d 110, 119–21 (2d Cir. 2010)). They argue that the "clear remedy to the Jacinto City Defendants' issues with the pleadings they seek to dismiss is *discovery*, not dismissal." *Id.*

In their reply, the Jacinto Defendants argue that conclusory or blanket accusations are insufficient and the pleading must show that the defendants agreed to commit an illegal act. Dkt. 65 (citing the court's order dismissing the claims against Ana Diaz and Jacinto City in the second amended complaint). They contend that the third amended complaint alleges that Ana and Chris Diaz "shared a common interest . . . in having Constable Diaz reelected," but "there are no facts to suggest that Mayor Diaz and Constable Diaz agreed to commit an illegal act." *Id.* They assert that issuing notices is *not* an illegal act, and even if it were a First Amendment violation, there are no

---

[7] The only facts that appear to be plead "on information and belief,' or at least "belief," in the third amended complaint that relate in any way to Luman and Arellano are that "Ana Diaz promoted Nancy Gosney to the position of Head Clerk after Mary Ann Carron was constructively discharged," which the plaintiffs contend supports their theory that Ana Diaz was involved in Chris Diaz's employment decisions, and that "the timing of [Luman's and Arellano's] notice[s] to the proximity of [adverse employment actions] . . . show that Ana Diaz . . . allowed th[ese] notice[s] to be placed." *See* Dkt. 55.

facts alleging that either Ana or Chris Diaz knew the notices were issued. *Id.*

First, the court disagrees with the Jacinto Defendants' argument that the third amended complaint does not allege that Ana Diaz knew about the notices. The third amended complaint says that Ana Diaz "allowed" the notices to be placed; thus, she at least knew about the notices being placed. The court must determine, however, whether there are sufficient allegations of a conspiracy to retaliate against Luman and Arellano for exercising their First Amendment rights, which would, of course, be unlawful.

The "First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms." *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). Retaliation includes actions such as "prosecution, threatened prosecution, bad faith investigation, and legal harassment." *Izen v. Catalina*, 382 F.3d 566, 571 n.5 (5th Cir. 2004) (quoting *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001)). Additionally, the Government "may not place conditions on public benefits, including jobs, that penalize [individuals] for their speech, beliefs, or association." *Colson*, 174 F.3d at 508–09. Retaliation against the exercise of First Amendment rights is a violation of the First Amendment because the "Supreme Court has asserted that imposing penalties for speech, belief, and association chills the exercise of First Amendment freedoms and thereby indirectly produces a result that the government cannot command directly." *Id.* at 509. That being said, not "all disadvantages imposed for the exercise of First Amendment freedoms constitute actionable retaliation." *Id.* at 510. While "trivial retaliatory harassment" such as failing to hold a birthday party for a public employee is actionable if it is "'intended to punish [the employee] for exercising her free speech rights,'" "there may be some minor adverse actions that would not constitute First Amendment violations." *Id.* at

15

510–11 (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 n.8, 110 S. Ct. 2729 (1990)). The Fifth Circuit has found false accusations, verbal reprimands, investigations that did not result in any action, and a law dean's criticism, without more, not actionable. *Id.* at 511. Formal reprimands, however, are actionable. *Id.*

Here, the plaintiffs contend that the Diazes "conspired to utilize Ana Diaz's position as Mayor of Jacinto City to issue unlawful code violation notices" to Luman and Arellano and that the "notices were unlawful because [Arellano and Luman] were not in violation of the codes they were cited for." Dkt. 55. They allege the timing of the notices, which was close in time to alleged adverse actions taken by Chris Diaz, is evidence of the conspiracy, and that the purpose of the notices was "to send a clear signal to Arellano and Luman that they had violated Chris Diaz's employment policy of conditioning employment upon participation in the [Chris] Diaz campaign." *Id.* The plaintiffs allege that the notices "are an *additional example* of the retaliation experienced by Arellano and Luman for exercising their First Amendment Right not to participate in the [Chris] Diaz campaign." *Id.* (emphasis added). They also plead that Ana Diaz had influence over Chris Diaz's personnel decisions, that the Diazes' interests were aligned to get Chris Diaz elected, and that Ana Diaz knew that Chris Diaz would punish employees who did not fully participate in his campaign. *Id.* The plaintiffs contend that the notices are *further attempts* to punish Luman and Arellano. *Id.*

While certainly the notices could be considered "trivial" since there is no allegation they resulted in fines, it is plausible that the notices in combination with the other allegations relating the Ana Diaz's involvement in Chris Diaz's work and campaign were harassment and meant to be viewed by Arellano and Luman as punishment for not supporting a specific political candidate at work. While there are not detailed allegations relating to exactly what Ana Diaz did to "allow" the

16

notices to be placed, the court finds that because these allegations are combined with the other allegations relating to retaliation in the workplace, it is plausible Ana Diaz was involved in a conspiracy to retaliate against Luman and Arellano for exercising their First Amendment rights.

While the third amended complaint alleges that Ana Diaz was acting under the color of law, and it indicates that her participation in the conspiracy impacted the plaintiffs' employment, she was not the plaintiffs' employer and had no official authority over their employment. Thus, in an abundance of caution, the court will also consider whether the plaintiffs have stated a claim of "ordinary citizen" retaliation.

To establish a claim of ordinary citizen retaliation, the plaintiffs must show "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.2d 252, 258 (5th Cir. 2002). The court finds that the claims in the third amended complaint meet these elements. The Jacinto Defendants argue that there is no other indication that the notices chilled the plaintiffs from exercising their First Amendment rights. Dkt. 59. They point out that the plaintiffs had already been either suspended or fired when they received the notices. *Id.* The notices, however, cannot be divorced from the alleged adverse employment actions described in the complaint. The plaintiffs allege that Ana Diaz was involved to some extent in both—that it was all a conspiracy and that the Diazes agreed to take the actions in the complaint in retaliation for the plaintiffs' exercise of their First Amendment rights. While there are no allegations in the complaint that Arellano or Luman did anything differently (were chilled) due to the notices, the ordinary citizen standard is that the allegations would chill a

17

*person of ordinary firmness* from continuing to engage in constitutionally protected activity.  It is plausible that a person of ordinary firmness would be chilled from supporting a particular candidate if their employment was terminated or suspended as a result and then, within ten days, they received unwarranted notices of city ordinance violations due to that support.  Taking these allegations as true, the plaintiffs have stated a plausible claim against Ana Diaz of retaliation for exercising their First Amendment rights.  The motion to dismiss this claim under Rule 12(b)(6) is DENIED.

## C.    Qualified Immunity

The Jacinto Defendants assert that even if the court finds that the plaintiffs have plausibly alleged a conspiracy, Ana Diaz is entitled to qualified immunity.  Dkt. 59.  "Qualified immunity questions should be resolved 'at the earliest possible stage in litigation.'"  *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808 (2009)).  If a defendant raises a qualified immunity defense, the plaintiff bears the burden of demonstrating that "(1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation."  *Id.*  At the motion to dismiss stage, this burden is discharged by pleading facts that, if true, overcome the defense.  *Brown v. City of Houston*, 297 F. Supp. 3d 748, 773 (S.D. Tex. 2017) (Rosenthal, J.) ("[T]he issue is whether [the plaintiff] has alleged facts that, if true, show an objectively unreasonable violation of a clearly established right." (relying on *Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir. 2016))).

The Jacinto Defendants ' argument is essentially parallel to the argument relating to the adequacy of the conspiracy claim—that the third amended complaint states that Diaz "allowed" notices to be placed on Luman's and Arellano's properties, but it does not allege that Ana Diaz

18

actively did anything to cause the complained of constitutional violation, and, moreover, Ana Diaz is not a policymaker and there are no facts indicating that she had the authority to enforce ordinance violations. Dkt. 59. And, again, the Jacinto Defendants argue that the plaintiffs do not even describe any alleged conduct of Ana Diaz that was a violation of the law. *Id.*

The plaintiffs, quoting John Milton, proclaim that Ana Diaz "not only has, by wanton wiles, nods, becks, and wreathèd smiles, an unofficial but potentially potent influence to exert in affecting and effecting the policy of the city; she is, as a matter of law, a policy maker, for purposes of immunity analysis under Texas law."[8] Dkt. 64. They argue that she is a policymaker, but assuming arguendo that she only performed the acts in the complaint under the color of law "vested with at least the apparent authority of her office, policymaker or not," the acts were *ultra vires*, and "therefore as a matter of law not subject to an immunity defense." *Id.* They contend "there is no immunity for illegal or improper actions taken by an official *ultra vires*." *Id.* They additionally assert that Jacinto City, "by not riding herd upon this nonentity but allowing her to vaunt her position, has ratified her acts, whatever they may be." *Id.*

The Jacinto Defendants argue, in reply, that the Fifth Circuit "has not abandoned its requirement for heightened pleadings by plaintiffs who bring claims against government officials

---

[8] See John Milton, Milton's poems 1645 (1924), which includes the following verse from the poem L'Allegro:

    Haste thee nymph, and bring with thee
    Jest and youthful Jollity,
    Quips and Cranks, and wanton wiles,
    Nods, and becks, and wreathèd smiles,
    Such as hang on Hebe's cheek,
    And love to live in dimple sleek;
    Sport that wrinkled Care derides,
    And Laughter holding both his sides.

in their individual capacities" and the plaintiffs therefore must do more than provide conclusory allegations.  Dkt. 65 (citing *Elliot v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985) and *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995)).  They assert that the plaintiffs offer only conclusory or blanket allegations that the defendants conspired.  *Id.*

In *Schultea*, the Fifth Circuit considered "the age-old dance of procedure and substance, . . . with the music of qualified immunity" and stood by its "insistence that complaints plead more than conclusions," but it no longer insisted that a plaintiff "fully anticipate the [qualified immunity] defense in his [or her] complaint at the risk of dismissal under Rule 12." 47 F.3d at 1430. Instead, it drew "to center stage a judicial tool explicitly preserved by the Civil Rules, the reply." *Id.*  The court pointed out that the district court may allow a reply to an answer in which a public official pleads the affirmative defense of qualified immunity.  *Id.* at 1433.  Regardless, the court instructed that Rule 9's heightened pleading standard does not apply to the complaint or reply merely because a qualified immunity affirmative defense has been raised.  *See id.* at 1434 ("None of this draws on the authority of Rule 9(b)."); *see also Anderson v. Valdez*, 845 F.3d at 590 (clarifying *Schultea*)).

The issue here, then, is whether the plaintiffs have alleged facts that, if true, show an objectively unreasonable violation of a clearly established right.  The Jacinto Defendants take issue only with whether the plaintiffs adequately plead that an unreasonable violation occurred, not whether the right to be free from First Amendment retaliation—or a conspiracy to retaliate due to the exercise of those rights—was clearly established.  In the third amended complaint, the plaintiffs allege that the Diazes conspired to use Ana Diaz's position to issue the notices to the plaintiffs who resided in Jacinto City.  *Id.*  The plaintiffs contend that Ana Diaz, "acting under her authority as

20

Mayor of Jacinto City, allowed" the notices to be placed on Arellano's and Luman's properties. *Id.* They assert that the notices were unlawful because there were actually no code violations and the purposes of the violations was to "send a clear signal to Arellano and Luman that they had violated Chris Diaz's employment policy of conditioning employment upon participating in the Diaz campaign." *Id.* They note that the timing of both notices supports their theory as does the fact that Ana Diaz was involved in Chris Diaz's campaign and allegedly exercised influence over his personnel decisions. *See id.* While these allegations do not contain the detailed who, what, when, why, and where questions required by Rule 9(b), they also are not merely conclusory allegations.

The court finds that the facts alleged, if true, demonstrate that the defendant violated the plaintiffs' constitutional rights and her actions were objectively unreasonable in light of clearly established law at the time of the violation. Accordingly, the motion to dismiss the claims against Ana Diaz because she is entitled to qualified immunity is DENIED.

## IV. CONCLUSION

The Jacinto Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to Jacinto City, and the claims against Jacinto City are DISMISSED WITH PREJUDICE. It is otherwise DENIED.

Signed at Houston, Texas on August 18, 2020.

Gray H. Miller
Senior United States District Judge

21