United States District Court
Southern District of Texas
**ENTERED**
June 06, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JERRY LUMAN, *et al.*, § § *Plaintiffs*, § § v. § § CHRISTOPHER DIAZ, *et al.*, § § *Defendants*. § | CIVIL ACTION H- 19-4920 |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to exclude the expert testimony of Kenneth Brady filed by the plaintiffs. Dkt. 118. After considering the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED IN PART AND DENIED IN PART.

### I. BACKGROUND

The plaintiffs are suing their former employer, Christopher Diaz, who was the Harris County Constable of Precinct Two during the relevant time, and Ana Diaz, who is the mayor of Jacinto City and also Christopher Diaz's wife.[1] Diaz designated Brady as an expert on law enforcement issues, and Brady filed his expert report on December 17, 2021. *See* Dkt. 118-1 (Brady's expert report). Brady asserts he is "qualified to provide reliable conclusions and opinions regarding Christopher Diaz's staffing decisions." *Id.* The plaintiffs move to exclude Brady's opinions because they are "nothing more than regurgitation on the ultimate fact issue of the [Diazes'] stated reason for the adverse employment actions, made without any scientific, technical, or specialized knowledge." Dkt. 118. The plaintiffs contend that Brady did not present the methodology or technical basis for his opinions, and that his opinions would therefore not be helpful to the jury and would be more prejudicial than probative. *Id.* They point out that Diaz's deposition testimony

---

[1] While both Chris Diaz and Ana Diaz are defendants in this case, this motion relates primarily to Chris Diaz. Accordingly, the court will use "Diaz" to refer to Chris Diaz for the remainder of this memorandum opinion and order, and it will use Ana Diaz's full name to refer to her if needed.

reveals that he did not have any knowledge of the purported reasons for his own personnel decisions, yet it is Diaz who needs to testify about his own management decisions rather than relying on Brady to provide viable reasons for Diaz's actions. *Id.* They assert that Brady's testimony does not address any opinions that are beyond the comprehension of a layperson and instead appears to be a blatant attempt to bolster Diaz's testimony. *Id.* However, even in bolstering it fails because Diaz testified during his deposition that he did not remember reasons for decisions that Brady provides reasons for, which will be confusing to the jury. *Id.*

Diaz argues that Brady's testimony is relevant, will assist the trier of fact, and is based on sufficient facts and data. Dkt. 126. Diaz points out that he designated Brady, the former Chief Deputy of Fort Bend County Sheriff's Office, as an expert on law enforcement issues. *Id.* He notes that the opinions center around whether Diaz's actions followed Precinct Two Standard Operating Procedures and applicable law and whether Constable Diaz's actions were those of a reasonable law enforcement administrator. *Id.*

In reply, the plaintiffs assert that there is no need for specialized knowledge to guide the jury in this case. Dkt. 150. They reassert that Diaz's reasons for taking the actions he took are questions for the jury, which alone must assess the reasonableness of Diaz's employment actions. *Id.*

## II. LEGAL STANDARD

The U.S. Supreme Court acknowledged in *Daubert v. Merrell Dow Pharmaceuticals* that Federal Rule of Evidence 702 serves as the proper standard for determining the admissibility of expert testimony. 509 U.S. 579, 597-98, 113 S. Ct. 2786 (1993). The party offering expert testimony has the burden to prove by a preponderance of the evidence that the proffered testimony satisfies the admissibility requirements of Federal Rule of Evidence 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

>expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the *ipse dixit* of the expert. *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592-93; *Moore*, 151 F.3d at 276. "The expert's assurances that he [or she] has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts for her testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *See* Fed. R. Evid. 104(a); *Moore*, 151 F.3d at 276. The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified, and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

### III. ANALYSIS

The plaintiffs' arguments about why Brady's opinions should be excluded fall into four categories: (1) Brady's opinions invade the province of the jury, which is capable of understanding and analyzing the evidence; (2) Brady's opinions are not based on scientific, technical, or specialized knowledge; (3) Brady's opinions could confuse the jury; and (4) Brady testified as to why Diaz took certain actions when Diaz

himself could not remember why during his deposition. Dkt. 118. The court will consider these arguments *in seriatim*.

A. **Invading the Province of the Jury**

The plaintiffs assert that Brady's opinions about Diaz's management decisions, which seem to be an effort to save Diaz from the fact that he could not enunciate a legitimate reason for his employment decisions, are merely an effort to bolster Diaz's testimony, and the Fifth Circuit has rejected the use of "experts" for this purpose. Dkt. 118 (citing *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)). Diaz argues that Brady's opinion is needed to explain the standards and expectations of operating a law enforcement agency, which is not within common knowledge of the public. Dkt. 126. In reply, the plaintiffs note that "[i]f the reasons are complicated for a jury to comprehend, Brady can explain those reasons and help the jury, as a guide, understand what they mean." Dkt. 150. They argue, however, that none of the reasons Brady provides require specialized knowledge. *Id.*

The court agrees with the plaintiffs that the expert must assist the jury, and the court must ensure that "a proffered expert bring to the jury more than the lawyers can offer in argument." *In re Air Crash*, 795 F.2d at 1233. However, running a law enforcement agency is generally a topic about which an expert's opinion could be helpful to a jury. While certainly if Brady is qualified and his testimony relevant and reliable, he would be able to testify about this topic so long as his testimony were not merely bolstering Diaz's reasons (or lack of reasons), for his employment decisions. For instance, an independent opinion about the requirements in Precinct's Standard Operating Procedures, the need for a law enforcement administrator to have confidence in the truthfulness of her officers, and considerations that come into play for staffing, would all be helpful to a jury.

B. **Scientific, Technical, Specialized Knowledge**

The plaintiffs contend that Brady's opinions are not expert opinions because they are not based on scientific, technical, or specialized knowledge. Dkt. 118. They argue that Brady does not bring any specialized knowledge that is beyond the comprehension of a layperson, pointing out that, for instance, if

4

Brady's opinion is that a plaintiff's employment was terminated due to an unfavorable IAD report, the jury is capable of reading the IAD report and recommendations and does not need Brady to interpret it. *Id.*

Diaz contends that Brady is qualified to testify as an expert because his extensive experience in recruiting, training, and leading one of the largest sheriff's offices in Texas gave him specialized knowledge in understanding the structure and management of a law enforcement agency and the role of an administrator within that agency, and his opinions are relevant and reliable. Dkt. 126.

Brady has 34 years of law enforcement experience and served as the Chief Deputy for Fort Bend County Sheriff's Office from 1997 to 2012. Dkt. 118-1. He earned a Bachelor of Science in Criminal Justice from University of Houston Downtown, has his Master Peace Officer Certification from the Texas Commission on Law Enforcement, and attended the 192nd Session of the FBI National Academy. *Id.*; *see also* Dkt. 126-2 (Brady's CV). The court agrees with Diaz that Brady is qualified and that his opinions are based on specialized knowledge.

C.     **Confusing Opinions**

The plaintiffs next argue that Brady's opinions will confuse the jury. Dkt. 118. They point out that Diaz's testimony is the most accurate account of his reasons for the employment decisions he made in this case, and Brady's superfluous report will confuse the jury—particularly since Diaz himself did not appear to know these reasons during his deposition. *Id.*

Diaz asserts that Brady's opinions are not superfluous as he needs to explain the standards and expectations of a law enforcement agency, and the jury will have no experience or knowledge about the way a law enforcement agency runs and is managed. Dkt. 126 (citing *Basler v. Barron*, No. H-15-2254, 2017 WL 635501 (S.D. Tex. Feb. 16, 2017), and *Kemp v. City of Hous.*, No. H-10-3111, 2013 WL 12320720 (S.D. Tex. July 24, 2013)). He also asserts that Brady's testimony puts the employment decisions in context and sheds light on what a reasonable law enforcement administrator would have done in Diaz's position. *Id.*

The court agrees that the opinions Brady expresses about the way a law enforcement agency runs and is managed are not superfluous, and he has "specialized knowledge that will help the trier of fact to

5

understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. To the extent Brady's opinions are so confined, it would not confuse the jury. The court will address the extent to which Brady's testimony will be confusing because Diaz does not remember the reasons for his employment actions and Brady offers reasons in the next section.

**D.** **Brady Knowing More About Diaz's Reasons Than Diaz**

The plaintiffs argue that Brady ignored Diaz's deposition testimony when formulating his opinions and point to numerous instances of Diaz saying he could not remember why he took certain actions during his deposition, yet Brady offered reasons for those same actions in his report. *See* Dkt. 118. The plaintiffs provide thirteen examples. *See id.* (noting, for example, that Brady opines Diaz transferred an officer to night shift on the basis of a report by Kuhn or Coons, but Diaz testified that he did not remember making any employment decisions about this officer).

Diaz asserts that Brady was not required to review Diaz's deposition prior to offering his opinion and needed only to review enough information to prepare his opinion. Dkt. 126. He points out that Diaz's deposition was not available for Brady's review because it took place after Brady started reviewing materials and preparing his report, which was due ten days after Diaz's deposition took place. *Id.* Diaz contends that Brady thus relied on Diaz's declaration rather than his deposition. *Id.* Neither Diaz nor the plaintiffs provide the court with a copy of this declaration or its date, at least in conjunction with the briefing for the instant motion.[2]

---

[2] There is a ten-page declaration by Diaz offering reasons for all of his employment decisions in the record. *E.g.*, Dkt. 129-2. This declaration is dated February 15, 2022. *See id.* The deposition during which Diaz did not remember the reasons for his employment actions occurred on December 7, 2021, and Brady's report was due on December 18, 2021. Dkt. 126; *see* Dkt. 117-1 (Diaz Dep.). Thus, this declaration, in which Diaz now remembers the reasons for his employment actions, post-dates the report and the deposition. This is very concerning to the court. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 ("A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction."). Regardless, this must not be the declaration reviewed by Brady since it post-dates Brady's report as well.

In reply, the plaintiffs assert that it "is clear that Brady had Diaz's deposition, reviewed Diaz's deposition, but chose not to address it." Dkt. 150. The plaintiffs reach this conclusion because the report lists Diaz's deposition as a source. *Id.* at 2 n.2. They assert that "Brady likely chose not to address [Diaz's] deposition because that deposition does not explain the reasons for any adverse employment actions in this case, which is problematic." Dkt. 150 at 2. They note that the expert report conflicts with the deposition, which offers no reasons for the decisions, and this will likely confuse the jury. *Id.*

The court must determine if the bases for Brady's opinions are reliable. The report, indeed, lists the deposition as a source, though it is unclear if Brady actually relied on the deposition. *See* Dkt. 118-2. Regardless, conclusions based on Diaz's purported reasons for taking actions that Diaz himself said he did not recall are not reliable. Diaz argues that Brady relied on Diaz's declaration, but he does not provide the court with the date of this declaration or the substance. The evidence before the court is that Diaz does not remember the reasons for his employment decisions, and Brady has provided reasons. While Brady may testify about factors that officers consider when making these employment decisions, he cannot testify about why *Diaz* made a particular decision. The issue in this case is not whether Brady can come up with a legitimate reason that a law enforcement officer may have taken these actions, it is whether Diaz had a legitimate reason to take the employment actions or if he instead did so because the plaintiffs did not support his political campaign. Diaz has the burden of demonstrating by a preponderance of the evidence that his expert's testimony is reliable, and he has failed to do so.[3]

Because Diaz has not met his burden of demonstrating the reliability of Brady's opinions that conflict with Diaz's testimony that he does not remember why he took certain employment actions, these

---

[3] While there may not be a requirement to review the deposition of the defendant prior to asserting an expert opinion, and the court understands the timing issue that Brady had, the deposition testimony by the decisionmaker himself—even if it was after Brady had determined the reasons for the employment actions, renders Brady's testimony about those reasons unreliable. In fact, it is highly suspicious that Diaz provided a declaration—not cited by Diaz in support of the expert here—that did provide reasons when Diaz could not remember them for his deposition; this raises the question of who provided the reasons set forth in the declaration upon which Brady relied.

7

opinions are EXCLUDED.  *See* Dkt. 118 at 3– 5 (listing the 13 instances of Brady offering an opinion for Diaz's actions when Diaz could not remember why he took those actions during his deposition).

### IV. CONCLUSION

The plaintiffs' motion to exclude Brady's expert opinions is GRANTED IN PART AND DENIED IN PART.  It is GRANTED with respect to any of Brady's opinions that conflict with Diaz's deposition testimony that he did not remember why he took certain employment actions.  Any testimony on these topics is EXCLUDED.  The motion is otherwise DENIED.

Signed at Houston, Texas on June 6, 2022.

_____
Gray H. Miller
Senior United States District Judge