United States District Court
Southern District of Texas
**ENTERED**
June 10, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JERRY LUMAN *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H- 19-4920 |
| | § | |
| CHRISTOPHER DIAZ *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are a motion for summary judgment filed by defendant Ana Diaz (Dkt. 99); and objections to evidence that were contained in Diaz's reply to the motion for summary judgment (Dkt. 121). After considering the motion, response, reply, record evidence, and the applicable law, the court is of the opinion that the objections (Dkt. 121) should be SUSTAINED IN PART and OVERRULED IN PART and the motion for summary judgment (Dkt. 99) should be GRANTED.

**I. BACKGROUND**

This is a First Amendment case relating to the right of employees of Harris County Precinct Two to refuse to participate in or support the elected constable's reelection campaign. Dkt. 55. The plaintiffs contend that defendant Christopher Diaz, the elected Constable of Precinct Two, conditioned their employment on performing essential campaign functions for him, and he retaliated against anyone who spoke out or refused to participate in the Diaz campaign or supported opposition candidates. *Id.* The plaintiffs additionally allege that defendant Ana Diaz (the "Mayor"), who served as the elected mayor if Jacinto City, Texas, at the relevant time periods and is the wife of defendant Christopher Diaz (the "Constable"), conspired with the Constable to use

her position as mayor to issue unlawful code violations to the plaintiffs who owned or managed property located within Jacinto City boundaries.  *Id.*  The plaintiffs impacted by this alleged conspiracy between the Mayor and the Constable are Claudia Arellano, who worked in the Civil Division of Precinct Two (Dkt. 129-1), and Jerry Luman, who was Chief of the Precinct Two constable's office (Dkt. 120-2).  *Id.*  Arellano and Luman were both began having problems at work in the spring of 2019, and their employment was terminated in mid-2019.  Dkts. 120-2, 129-1.

Arellano and Luman, who are the only two plaintiffs who have property in Jacinto City, contend that they received notices for violations of Jacinto City ordinances when there were no violations and that the timing of these notices gives rise to a suspicion that the Mayor had the notices issued to send a signal to Arellano and Luman about their decisions not to support her husband's campaign or to support his opponent.  *Id.*  Arellano's notice said, "STOP ALL WORK UNTIL CITY PERMIT OBTAINED" and provides the contact information for obtaining a permit. Dkt. 99-1 at 252 of 368 (exhibit to Arellano's deposition).  The notice to Luman was a "notice to abate nuisance and/or unsanitary conditions" and stated that an inspection of the property found the address to be in violation of a city ordinance because "[w]eeds, brush, Rubbish, or other objectionable, unsightly and unsanitary matter covering the surface of a lot or real estate situated within the city and renders the surrounding atmosphere unhealthy, unwholesome or obnoxious. High Grass."  *Id.* at 168 of 368 (exhibit 6 to Luman's deposition).

The Mayor moves for summary judgment on the remaining claims asserted against her. Dkt. 99; *see* Dkt. 70 (explaining that the conspiracy and "ordinary citizen" claims against Ana Diaz were plausibly pled).  She asserts that the evidence shows that she did not engage in the activities that the plaintiffs contend are retaliatory and did not engage in a conspiracy with the

Constable to retaliate against the plaintiffs. *Id.* She provides affidavits and deposition testimony supporting her contention that she did not instruct anybody to cite or give notices to either Arellano or Luman for code violations. *Id.* & Exs. L–O. She also asserts that she is entitled to qualified immunity. *Id.* The Mayor additionally argues that the plaintiffs have no evidence of "ordinary citizen" First Amendment violations. *Id.*

The plaintiffs assert that they have sufficient evidence of conspiracy: (1) the Mayor and Constable are married, which the plaintiffs assert "should make the existence of a conspiracy very likely"; (2) the Mayor's and Constable's interests were aligned; (3) the Mayor knew the Constable would punish employees who did not fully participate in his campaign; (4) the Mayor lived in the same marital residence as the Constable during the relevant time period, and this residence is on the same street as Arellano; (5) the alleged violation at Arellano's house was for a stack of limestone blocks that had been there for months and could be easily seen by a jogger, such as the Constable who jogged by Arellano's house, but was difficult to see by car; (6) the Constable knew where Luman's property that received the violation was located; (7) the notice given to Luman was about high grass, but the grass was not high; (8) Arellano and Luman were the *only* two plaintiffs in this case who live in Jacinto City, and they both received violations; (9) neither Luman nor Arellano have received any notices of violations from the city since their Precinct Two employment was terminated, even though Arellano never moved the blocks and Luman's grass continues to grow; and (10) the timing of the notices was around the time both Luman and Arellano became the targets of an internal Precinct Two investigation that ultimately resulted in the termination of both employees. *Id.*

They plaintiffs argue that the Mayor's evidence does not point to a legitimate source for the alleged complaints that led to the notices Luman and Arellano received. *Id.* It in fact does not

foreclose on the possibility that the Mayor forwarded a complaint to the City Manager or Jacinto City department to investigate and address the issues. *Id.* The plaintiffs also note that the court should not rely on the Mayor's denial because the factfinder must determine if she is credible. *Id.* Finally, the plaintiffs point out that even though one of the Mayor's witnesses, Joe Ayala, stated in his affidavit that the city verifies the existence of conditions before notices are sent, he does not state that anybody did so before the notices were issued to Luman and Arellano. *Id.* With regard to immunity, the plaintiffs assert that the Mayor's actions to intimidate Arellano and Luman were overt acts in furtherance of her conspiracy with the Constable to retaliate against them. *Id.* The plaintiffs argue that there is evidence of an agreement to terminate Luman's and Arellano's employment coupled with an intent to achieve that agreement's objective. *Id.* The plaintiffs advise that they are not pursuing their First Amendment claims under the "ordinary citizen" standard. *Id.*

In reply, the Mayor asserts various objections to the plaintiffs' evidence. Dkt. 121. The Mayor further asserts that the plaintiffs' response "relies on assumptions, speculation, and beliefs rather than admissible evidence." Dkt. 121. She points out that if there is no underlying § 1983 violation, there can be no conspiracy. *Id.* (citing *Hale v. Townley*, 54 F.3d 914, 920–21 (5th Cir. 1995)). She also asserts that the plaintiffs have failed to establish any facts supporting a conspiracy. *Id.* Additionally, she argues that the plaintiffs have failed to establish that any of her actions violate clearly established laws or that the Mayor and Constable had a meeting of the minds to violate Luman's and Arellano's constitutional rights. *Id.*

The plaintiffs filed a response to the evidentiary objections contained in the reply (Dkt. 139), and the motion and objections are now ripe for disposition. The court will first consider the evidentiary objections. It will then set forth the legal standard for motions for summary judgment before turning to the claims at issue.

4

## II. EVIDENTIARY OBJECTIONS

The Mayor objects to plaintiffs' exhibits 3, 4, and 5.  Dkt. 121.  The plaintiffs responded to the objections to exhibits 3 and 4.  Dkt. 139.

### A.  Exhibit 3

The Mayor objects to exhibit 3 because it fails to meet the requirements of an unsworn declaration under section 1746.  Exhibit 3 is Claudia Arellano's declaration.  *See* Dkt. 120-1 (Ex. 3).  Under 28 U.S.C. § 1746, an unsworn declaration is permitted, but it must be "subscribed" by the person "as true under penalty of perjury, and dated."  The statute indicates a signature is required.  *See* 28 U.S.C. § 1746(1).  The declaration the plaintiffs provide is neither signed nor dated.  *See* Dkt. 120-1.

The plaintiffs refiled a corrected declaration with their reply and requested leave to do so. Dkt. 139.  In the interest of justice, leave is hereby GRANTED.  The Mayor's objection to Exhibit 3 being unsworn is thus DENIED AS MOOT.

### B.  Exhibit 4

The Mayor objects to Exhibit 4 to the extent it contains hearsay upon hearsay, is speculative, or contains evidence that was not produced during discovery.  Dkt. 121.  Exhibit 4 is the Luman's declaration, and Luman states that he "believe[s] [Arellano's] statements as to what [the Constable] said at the event are true and correct."  Dkt. 120-2 (Ex. 4) at 2.  He also states that the Mayor was listening to the threats echoed by the Constable at a meeting at a restaurant.  *Id.* The Mayor also objects to Luman including a photograph that was not produced during discovery. *Id.*

5

The plaintiffs respond that Luman was not speculating because he attended the meeting, and both the Mayor and Constable were present.  Dkt. 139.  He also asserts that there is no photograph in Exhibit 4.  *Id.*

Under Federal Rule of Evidence 805, "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.  The Mayor asserts that the following is hearsay within hearsay: Luman's statement that he believes that the Constable said what Arellano says he said because the statements are typical of the types of statements the Constable makes.  Dkt. 121.  While Luman can testify about statements that he personally witnessed—because the Constable is a party opponent—he cannot testify about his belief regarding statements that Arellano heard.  The objection to this particular statement is therefore SUSTAINED.

The next objection is to Luman's statement that the Mayor was listening to the Constable at the meeting.  While certainly he can testify that she was there and looked engaged, the court agrees that whether she was actually listening to what her husband was saying is speculative.  This objection is SUSTAINED.

Finally, the Mayor objects to Luman's inclusion of a photograph in his declaration that was responsive to a discovery request but not produced during discovery.  Dkt. 121.  The plaintiffs point out that there is no photograph in this exhibit.  Dkt. 139.  While the Constable is correct that the plaintiffs may not use photographs that were requested during discovery and not produced, there is no photograph in Exhibit 4.  Accordingly, this objection is OVERRULED.

6

## C.  Exhibit 5

The Mayor objects to Exhibit 5—Ana Herrera's declaration—because it contains statements made by Nancy Gosney, a nonparty to this lawsuit, that the Mayor asserts are hearsay. Dkt. 121.  In Herrera's declaration, she states that she was employed by Precinct Two, and recalls receiving an application for Nancy Gosney.  Dkt. 120-3.  Herrera states that her "command staff" told her that Nancy Gosney was the Mayor's best friend, and the application needed to be expedited.  *Id.*  After Gosney was employed, Herrera says Gosney also told her the Mayor is married to the Constable and that Gosney is the Mayor's best friend.  *Id.*  Since the only objection is to what Gosney said, and what Gosney said is hearsay unless it is used for purposes other than the truth of the matter asserted, the hearsay objection to Gosney's assertion that she was the Mayor's best friend and the Mayor is married to the Constable is SUSTAINED.  However, these facts are in Herrera's declaration even without Gosney's statements, so the court will, to the extent relevant, still consider the fact that Gosney was the Mayor's best friend and that the Mayor and Constable were married during the events in question.

### III.  SUMMARY JUDGMENT LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The court must view the evidence in the light most

7

favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## IV. SUMMARY JUDGMENT ANALYSIS

First, to the extent the plaintiffs allege First Amendment claims against the Mayor under the ordinary citizen standard, the Mayor's motion for summary judgment is **GRANTED** because the plaintiffs state that they are not pursing their claims under that theory.

The court will now turn to the conspiracy claim. "To establish a cause of action based on conspiracy [under § 1983] a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*. 726 F.2d 1022, 1024 (5th Cir. 1982). Conclusory or blanket accusations are not sufficient. *Id.*; *see also Rodriguez v. Neely*, 169 F.3d 220, 222 (5th Cir. 1999). The elements are (1) "'the existence of a conspiracy involving state action'"; and (2) "'a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.'" *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds*).

The court first considers the evidence each party has provided, and then it will discuss whether the plaintiffs have presented sufficient evidence of a conspiracy to survive summary judgment.

### 1.     The Mayor's Evidence

The Mayor asserts that the plaintiffs cannot present an issue of material fact to support their contention that the Mayor made an agreement with the Constable to violate the plaintiffs' First Amendment rights. Dkt. 120. The Mayor provides an affidavit stating that she does not have authority to order city employees to take certain actions, but when she hears about complaints, problems, or issues from citizens of Jacinto City, she usually forwards them to the City Manager

8

or correct city department to investigate and address the issue.  Dkt. 99, Ex. N-1.  She contends that she did not order or direct any city employee to place a notice on either Arellano's or Luman's property.  *Id.*  She notes that she is the campaign treasurer for the Constable's campaign, but she asserts that she is 'not involved in the details of who has contributed to his campaign or the amounts contributed."  *Id.*  She also asserts that she did not discuss the details of personnel decisions in Precinct Two with her husband before he made the decisions.  *Id.*

The plaintiffs point out that the court cannot necessarily rely on the Mayor's self-serving affidavit because the finder of fact will need to assess her credibility.  Dkt. 120 (relying on *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097 (2000) (instructing that a court considering a motion for summary judgment "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence").  The court agrees that it must view the facts in the light most favorable to the plaintiffs at the summary judgment stage.  However, the Mayor's affidavit does not stand alone.

In addition to her own affidavit, the Mayor provides evidence to support her contention that she was not involved in issuing the notices or a conspiracy relating to Luman's and Arellano's employment.  She provides some excerpts and exhibits from Luman's and Arellano's depositions that provide factual context, and she provides two additional declarations.  First, she provides an affidavit from the Constable.  Dkt. 99, Ex. M-1.  The Constable says that he did not know Arellano or Luman had been served with a notice of violation of Jacinto City Code of Ordinances until he learned about the allegations in this lawsuit.  *Id.*  He also asserts that he did not request that his wife take any action with regard to Luman's or Arellano's properties, and he did not discuss any personnel decisions with his wife prior to making the decisions.  *Id.*

9

The Mayor also provides Joe Ayala's affidavit.  Dkt. 99, Ex. N-2.  Ayala was the Chief of Police of Jacinto City during the relevant time period.  *Id.*  Ayala asserts that as Chief, he serves as the department head of the Police Department and reports to the City Manager.  *Id.*  He oversees the issuance of nuisance or unsanitary conditions notices to citizens and property owners.  *Id.*  The notices usually request that the person abate the nuisance or condition within ten days and that a Class C Misdemeanor charge may be filed if it is not abated.  *Id.*  The notices are sent via certified and regular mail, and the police department maintains a list of notices and updates.  *Id.*  Ayala asserts that the Jacinto City Police Department learns of nuisance and unsanitary conditions in a variety of ways, including observation by city employees and complaints from citizens or elected officials.  *Id.*  He also asserts that the conditions are verified before the notices are mailed out.  *Id.*  Ayala notes that the city sent Luman a notice of unhealthy condition on May 16, 2019, via certified mail.  *Id.*  The unhealthy condition was high grass.  *Id.*  The list kept by the police department was updated on May 23, 2019, indicating that the condition was abated on May 19, 2019, and no further action was taken.  *Id.*  Ayala states that the Mayor did not direct him to send a notification relating to Luman's property.  *Id.*

The Mayor additionally provides the log that Ayala was talking about.  Dkt. 99, Ex. O-2.  The log shows that both Luman and another citizen on the same street were sent notices on May 16, 2019, and Luman complied on May 19, 2019.  *Id.*

### 2.     The Plaintiffs' Evidence

While the Mayor's evidence is helpful, it is the plaintiffs' burden to demonstrate that there is an issue of material fact that the Mayor and Constable engaged in a conspiracy to deprive them of their First Amendment rights at Precinct Two.  The court will thus turn to the evidence the

plaintiffs present indicating that there was an agreement to deprive the plaintiffs—or at least Luman and Arellano—of their First Amendment rights.

The plaintiffs first provide Arellano's declaration. Dkt. 129, Ex. 3A. Arellano notes that she attended a campaign meeting for the Constable at Tepatitalan Mexican Grill on April 9, 2019, and that the Constable, Mayor, Jerry Luman, and Lee Hernandez were all there. *Id.* According to Arellano, all employees were required to attend the event. *Id.* The Constable gave a speech about how the people in attendance needed to be loyal to his campaign and eventually "got into [Arellano's] face," continued the speech about loyalty, and said specifically "if you're not loyal, you're not going to go anywhere." *Id.* He went on to say, "When you're on a ship, you need to stay on the ship. Don't jump off the ship when the waters get rough." *Id.* Arellano states that the Constable asked her to put up a sign for Ramon Garza in her yard as that meeting broke up. *Id.* She did not put up the sign. *Id.*

In the following days, various things happened at work that Arellano believes were retaliatory. *Id.* On April 18 she was transferred to patrol, and she put a sign in her fence that evening supporting the Constable's political opponent (Jerry Garcia). *Id.* Less than a week later, on April 24, Arellano received a notice of violation on her mailbox from Jacinto City. *Id.* This notice indicated that a complaint had been received by Jacinto City that she did not have a building permit for a construction project on her property. *Id.* She asserts there was no building project at her home, but there was a pile of limestone blocks on a pallet towards the back of her property that had been there for a while. *Id.* Two days later, on April 26, Arellano received notice of an Internal Affairs Division (IAD) investigation, which resulted in her employment being terminated on May 30, 2019. *Id.* She notes that the Mayor and Constable lived on the same street that she lived on, and she routinely observed them pass in front of her house or even jog in front of her home,

including while the Jerry Garcia sign was on the fence. *Id.* She never received any other notices even though she did not move the stones. *Id.*

Luman asserts that he was placed on administrative leave on May 3, 2019, due to a pending IAD investigation. Dkt. 120-2. He received a notice of a violation of a Jacinto City ordinance due to the grass being too high on his property on May 17, 2019. *Id.* He notes that the Constable previously had been with him to that property, which is one street over from the Constable and Mayor's residence, to pick up signs, so the Constable knew it was Luman's property. *Id.* Luman asserts that he is meticulous about mowing and mows that property on a regular basis; additionally, he states that other properties located on the street had higher grass that day than his. *Id.* He notes that his employment with Precinct 2 was terminated on July 30, 2019, and he has not had any issues with the grass, even though "[g]rass continues to grow on the property, . . . [and he] continue[s] to mow the grass as [he] did before." *Id.* Luman also substantiates Arellano's declaration that the Mayor and Constable were both at the Tepatitalan event on April 9, 2019, where the Constable "order[ed]" his employees to be loyal to the campaign and said that disloyal people "ain't no good to us." *Id.*

The plaintiffs also provide a declaration of Ana Herrera. Dkt. 120-3. Herrera was a deputy at Precinct 2 whose employment was terminated on July 19, 2019. *Id.* Herrera discusses how she was in charge of background checks at Precinct Two, and when the Mayor' best friend, Gosney, applied, Herrera was told the expedite the application. *Id.* The Mayor's best friend was hired. *Id.*

The plaintiffs also provide the declaration of David Williams. Dkt. 120-4. Williams was a deputy in Precinct Two whose employment was terminated on August 28, 2019. *Id.* He asserts that he received a direct order from Kim Bellotte, whom the Constable referred to as his work wife, to ensure that the Gosney's application be expedited. *Id.* Additionally, he notes that the

12

Constable met with him about promoting Gosney to sergeant three months after Gosney had worked in the patrol division; Williams states that he "convinced" the Constable to promote Gosney to a position in the civil division instead. *Id.*

### 3. Do the Plaintiffs Meet Their Burden?

There is no direct evidence that the Mayor told anyone at Jacinto City to send notices of ordinance violations to Luman or Arellano as a roundabout way of sending a message that they should support her husband's campaign or that she initiated the serving of these notices in furtherance of a conspiracy to retaliate against Arellano and Luman for exercising their First Amendment rights. In fact, the Mayor presents evidence indicating that the Mayor did not instruct anybody to send a notice to Luman. *See* Dkt. 99-1 at 362–68 (stating that he "was not directed by Mayor Ana Diaz to send the notification letter regarding [Luman's] property."). That being said, there is a "trail of breadcrumbs" supporting the plaintiffs' theory that the Mayor was involved in the notices. *Cf. Jordan v. Ector Cnty.*, 516 F.3d 290, 301 (5th Cir. 2008) ("finding that the elected official/employer's "conduct following the 2002 election left a trail of breadcrumbs, albeit circumstantial, that would allow a jury to conclude there was a pattern of hostility towards the [plaintiff]."). However, the trail tapers off when it comes to tying the notices to the alleged adverse employment actions in this case.

The discernable trail begins with the fact that during the relevant time period the Mayor and the Constable were married and lived in the same house, and their house was near Arellano's house and not far from Luman's property. There is evidence supporting the assertion that the defendants could see the limestone blocks near the back of Arellano's residence by walking or jogging by Arellano's house. Additionally, though the pallet of limestone blocks had been at Arellano's house for some time, and the grass on Luman's property presumably grows all the time,

13

the notices to both Luman and Arellano occurred right when these two employees were in the thick of issues relating to their employment at Precinct Two. Luman and Arellano were the only two employees who are plaintiffs in this case who lived in Jacinto City, and somehow they both coincidentally received notices during this time period when they had never received such notices before. This evidence—or trail—could lead a reasonable trier of fact to conclude that the Mayor and Constable had something to do with the notices. It is definitely suspicious.

The notices, however, are not an adverse employment action, and the plaintiffs bring their claims as employees of Precinct Two, not as ordinary citizens. The plaintiffs contend that the notices were an overt action taken in furtherance of a conspiracy to violate Arellano's and Luman's First Amendment rights at work, but the violation of those rights requires an adverse employment action. The evidence that the plaintiffs assert is probative of the theory that the Mayor agreed with the Constable to conspire to take adverse employment actions against Arellano and Luman at Precinct Two in retaliation for not supporting the Constable's campaign is that, in addition to being married to the Constable and perhaps having some influence due to that relationship, the Mayor's best friend was hired and promoted by Precinct Two via an expedited process, and the Mayor is the treasurer for her husband's campaign and thus likely knew who had and had not contributed. While this evidence could lead a reasonable juror to conclude that the Mayor had some type of influence over some of the Constable's employment decisions, that the Constable and Mayor could have learned how much Arellano and Luman were or were not contributing to the Constable's campaign, and that the Mayor was supportive of her husband's campaign, it does not create an issue of material fact that the Mayor and the Constable reached an agreement to conspire to terminate the employment of Arellano and Luman because these plaintiffs did not properly support the campaign.

Because the court finds there is no issue of material fact with regard to conspiracy, the court need not address the other arguments, the Mayor's motion for summary judgment is GRANTED.

## V. CONCLUSION

The Mayor's objections are SUSTAINED IN PART AND OVERRULED IN PART as stated above.  The Mayor's motion for summary judgment is GRANTED.

Signed at Houston, Texas on June 10, 2022.

Gray H. Miller
Senior United States District Judge

15