United States District Court
Southern District of Texas
**ENTERED**
September 01, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JERRY LUMAN, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H- 19-4920 |
| | § | |
| CHRISTOPHER DIAZ, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

# MEMORANDUM OPINION AND ORDER

## Table of Contents

**I. BACKGROUND** ............................................................................................................... 3

**II. LEGAL STANDARD** ....................................................................................................... 3

**III. ANALYSIS** ...................................................................................................................... 4

   A.  Failing to Attach Evidence to Individual Responses ................................................ 5

   B.  Objections to Failing to Identify a Page ................................................................... 6

   C.  Improper Expert Testimony by a Layperson: Mike Kritzler's Declaration (Dkt. 128-3) ................ 7

   D.  Other Objections to Kritzler's Declaration ............................................................... 9

   E.  Jason Curry's Declaration (Dkt. 128-6) .................................................................. 11

   F.  Sheila Felicia Declaration (Dkt. 129-6) ................................................................. 11

   G.  Objection to Kelly B. Hendricks's Declaration (Dkt. 140-1) ................................. 13

   H.  Campaign Finance Reports (Dkts. 129-3 and 129-4) .............................................. 13

   I.  Letters from Lee Hernandez (Dkts. 130-4 and 130-6) ............................................ 14

   J.  February 5, 2019 Letter (Dkt. 130-8) ...................................................................... 15

   K.  Objections to Evidence Cited by Individual Plaintiffs ............................................ 15

       1.  Arellano: SOAH Decision and Order (Dkt. 129-5) ........................................ 15

       2.  Clark: Texas Rangers Report (Dkt. 131-2) ..................................................... 16

       3.  Luman: Photo of Office Door .......................................................................... 16

       4.  Luman: IAD Case No. 2019-005 (Dkt. 134-1) ............................................... 17

       5.  Luman: Verbosky Termination Letter (Dkt. 138-4) ........................................ 17

       6.  Verbosky: Verbosky Attorney Letter (Dkt. 138-3) .......................................... 17

L.    Objections to Plaintiffs' Declarations ........................................................... 18

   1.   Anderson's Declaration (Dkt. 128-1) ................................................. 18

   2.   Mary Ann Carrion's Declaration (Dkt. 130-1) ................................... 25

   3.   Arellano's First Declaration (Dkt. 129-1) .......................................... 27

   4.   Arellano's Second Declaration (Dkt. 129-2) ...................................... 39

   5.   Reed Clark's Declaration (Dkt. 128-9) ............................................. 40

   6.   Ricardo Rodriguez's Declaration (Dkt. 136-1) .................................. 43

   7.   Javier Zavala's Declaration (Dkt. 141-1) .......................................... 46

   8.   Dwayne Pacifico's Declaration (Dkt. 135-1) .................................... 52

   9.   Jerry Luman's Declaration (Dkt. 128-5) ........................................... 54

   10.   David Williams's Declaration (Dkt. 128-7) ...................................... 56

   11.   Ana Herrera's Declaration (Dkt. 130-3) ............................................ 60

   12.   Sara Cynthia Vara-Leija's Declaration (Dkt. 128-8) ......................... 63

   13.   Norman Verbosky's Declaration (Dkt. 138-1) ................................... 66

   14.   Emily Rivera's Declaration (Dkt. 137-1) .......................................... 66

M.    Objections to Deposition Excerpts ............................................................ 68

   1.   Anderson's Deposition (Dkt. 128-2) ................................................. 68

   2.   Arellano's Deposition ....................................................................... 73

   3.   Carrion's Deposition (Dkt. 130-2) .................................................... 73

   4.   Clark's Deposition (Dkt. 131-1) ....................................................... 74

   5.   Ricardo Rodriguez's Deposition (Dkt. 136-2) .................................. 75

   6.   Dwayne Pacifico's Deposition (Dkt. 135-2) ..................................... 75

   7.   Ana Herrera's Deposition (Dkt. 132-1) ............................................ 76

   8.   Norman Verbosky's Deposition (Dkt. 138-2) ................................... 81

   9.   Emily Rivera's Deposition (Dkt. 137-2) ........................................... 82

**IV. CONCLUSION** ........................................................................................... 82

Pending before the court are defendant Christopher Diaz's objections to summary judgment evidence submitted by Marcus Anderson (Dkt. 167), Claudia Arellano (Dkt. 168), Mary Ann Carrion (Dkt. 169), Reed Clark (Dkt. 170), Ricardo Rodriguez (Dkt. 171), Javier Zavala (Dkt. 172), Dwayne Pacifico (Dkt. 185), Jerry Luman (Dkt. 186), David Williams (Dkt. 187), Ana

Herrera (Dkt. 188), Cynthia Vara-Leija (Dkt. 189), Norman Verbosky (Dkt. 190), and Emily Rivera (Dkt. 191). After considering the motions, responses, evidence, and applicable law, the court is of the opinion that the motions should be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

This case is about whether Christopher Diaz,[1] who was the elected constable of Harris County Precinct Two during the relevant time period, took certain employment actions against the plaintiffs, who were employees of Precinct Two, in retaliation for their exercise of rights under the First Amendment to the U.S. Constitution. Diaz filed thirteen separate motions for summary judgment, each plaintiff filed a response, and Diaz filed thirteen replies. *See* Dkts. 104–16, 128– 41, 151–53, 173–78, 181–84. Diaz also filed thirteen separate documents containing numerous evidentiary objections to the summary judgment evidence the plaintiffs submitted. Dkts. 167–72, 185–91. The court will consider the motions for summary judgment in a separate memorandum opinion and order after ruling on these voluminous evidentiary objections.

## II. LEGAL STANDARD

The court must consider Diaz's evidentiary objections in the context in which they are brought---objections to summary judgment evidence. Therefore, a review of the evidentiary procedures for summary judgment motions will be helpful.

The procedures for summary judgment are contained in Federal Rule of Civil Procedure 56, and subdivision (c) of that rule "establishes a common procedure for several aspects of summary-judgment motions synthesized from similar elements developed in the cases or found in many local rules." Fed. R. Civ. P. 56, Comm. Notes on Rules---2010 Amend.

---

[1] Christopher and Ana Diaz are both named as defendants in this case. The court will shorten Christopher Diaz's name to Diaz in this order since the motions at issue were filed by Christopher Diaz. It will use Ana Diaz's full name when referring to Ana Diaz.

3

Under Federal Rule of Civil Procedure 56(c)(1),

> A party asserting that a fact cannot be or is genuinely disputed [at the summary judgment stage] must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Committee Notes make clear that if materials "are not yet in the record---including materials referred to in an affidavit or declaration---[these materials] must be placed in the record." *Id.*, Comm. Notes on Rules---2010 Amend.

Under Rule 56(c)(2), a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Committee Notes indicate that if a party objects pursuant to Rule 56(c)(2), the proponent of the evidence must then show that it is either admissible or "explain the admissible form that is anticipated." *Id.*, Comm. Notes on Rules---2010 Amend.

Under Rule 56(c)(3), the court may consider materials that are not cited so long as they are contained in the record. Fed. R. Civ. P. 56(c)(3).

Under Rule 56(c)(4), if a party uses affidavits or declarations to support or oppose a motion for summary judgment, they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

Because there are objections relating to thirteen plaintiffs, the court has attempted to combine the analysis for objections that are the same for multiple plaintiffs. However, many of

Diaz's objections relate to the declarations or depositions of specific plaintiffs, so the analyses of these numerous objections will be set forth separately.

A.     Failing to Attach Evidence to Individual Responses

As noted above, Diaz filed separate motions for summary judgment for each plaintiff, each plaintiff filed a response to the motion for summary judgment relating to that plaintiff, and then Diaz filed replies to support each motion for summary judgment and separate objections as to each plaintiff's response.  Dkts. 104–16 (motions); Dkts. 128–41 (responses); Dkt. 151–53, 173–78, 181–84 (replies); Dkts. 167–72, 185–91 (objections).  This is a lot of paper.  In each of the separate objections, Diaz asserts that the plaintiffs "failed to attach all supporting evidence to each individual response."  Dkts. 167–72, 185–91.  Diaz contends that this is improper under Federal Rule of Civil Procedure 56 and that the court therefore should "not consider any exhibit not attached to a [specific] motion for summary judgment."  *See, e.g.*, Dkt. 191 at 1.

Under Federal Rule of Civil Procedure 56, any party who is "asserting that a fact cannot be or is genuinely disputed" may support the assertion by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1).  It is unclear why Diaz believes this means that the materials must be attached to each individual response.  Moreover, Rule 56(c)(3) specifically states that the "court need consider only the cited materials, but it *may* consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

While certainly the court understands that in most cases it is preferable that the cited materials be attached to the specific response, in a case involving this many motions, responses, replies, objections, and responses to objections, it is understandable that counsel tried to consolidate as much as possible and present the material in some sort of organized fashion.  Of course, one person's way of organizing material may make the material more confusing to decipher

to another.  Regardless, the court does not fault the plaintiffs for trying to more concisely organize their materials.[2]  To the extent the citations to other parts of the record clearly direct the court to the part of the record it needs to consider, it will do so.  Thus, Diaz's objection to this method is OVERRULED.

## B.   Objections to Failing to Identify a Page

Diaz objects to Anderson's reliance on Luman's (Dkt. 128-5), Williams's (Dkt. 128-7), and Carrion's (Dkt. 130-2) declarations because Anderson fails to identity a page or paragraph in the declarations.  Dkt. 167.  He similarly objects to the following plaintiffs' reliance on the following declarations for the same reasons:

> Carrion's reliance on Arellano's declaration (Dkt. 129-1). Dkt. 169.
> Carrion's reliance on Williams's Declaration (Dkt. 128-7).  *Id.*
> Clark's reliance on Williams's Declaration (Dkt. 128-7).  Dkt. 170.
> Williams's reliance on Arellano's declaration (Dkt. 129-1).  Dkt. 187.
> Williams's reliance on Anderson's declaration (Dkt. 12-3).  *Id.*
> Herrera's reliance on Williams's declaration (Dkt. 128-7).  Dkt. 188.
> Herrera's reliance on Luman's declaration (Dkt. 128-5).  *Id.*
> Vara Leija's reliance on Luman's declaration (Dkt. 128-5).  Dkt. 189.
> Verbosky's reliance on Williams's declaration (Dkt. 128-7).  Dkt. 190.
> Rivera's reliance on Ana Herrera's declaration (Dkt. 130-3).  Dkt. 191.

Diaz argues that a party must cite particular parts of the record and cannot merely cite the entire document without identifying a page or paragraph.  Dkt. 167, 169, 170, 187–88, 190–91. He points out that the court is not required to "'sift through the record in search of evidence to support a party's'" position.  *E.g.*, Dkt. 167 (quoting *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010)).

While the court whole-heartedly agrees that it should not be required to sift through a voluminous record in search of evidence to support a party's position, these declarations are all

---

[2] The court has also attempted to organize these materials and objections in this memorandum and opinion in a way that is easy to understand, but clearly with so many plaintiffs, motions, and objections, it is a challenge.

five pages or less, and this court generally reads the declarations submitted as summary judgment evidence in their entirety. Thus, the objections to the failure to pincite portions of the declarations the plaintiffs present as summary judgment evidence is OVERRULED.

C.    Improper Expert Testimony by a Layperson: Mike Kritzler's Declaration (Dkt. 128-3)

Diaz objects to Anderson's, Arellano's, Clark's, Pacifico's, and Vara-Leija's reliance on Mike Kritzler's declaration (Dkt. 128-3) to support their responses to the motions for summary judgment because Kritzler's testimony is, according to Diaz, meant to "make up for the fact that the Plaintiffs did not designate a law enforcement expert." Dkts. 167, 168, 170. 185, 189. Diaz asserts that Kritzler, who was not disclosed as an expert, may not offer expert testimony about the operations of a law enforcement department. Dkts. 167, 168, 170, 185. He specifically requests that the court strike from page 2, paragraph 5 through page 3 of the declaration. Dkts. 167, 168, 170, 185, 189. The plaintiffs note that Kritzler was designated as a fact witness and assert that any testimony offered by Kritzler is based on his first-hand knowledge and experience with Diaz, Precinct Two, the plaintiffs, and other employees in Precinct Two. Dkt. 200.

Kritzler was a lieutenant and was the designated Patrol Division Commander when he was employed by Precinct Two. Dkt. 128-3. On these pages that Diaz contends contain improper expert testimony, Kritzler lists and discusses the general characteristics of uniformed patrol division assignments versus administrative division assignments. Dkt. 128-3 at 2–3.

Diaz relies on *Basler v. Barron*, No. H-15-2254, 2017 WL 635501, 2017 U.S. Dist. LEXIS 21701 (S.D. Tex. Feb. 16, 2017), and *Bean Kemp v. City of Houston,* No. H-10-3111, 2013 WL 12320720, 2013 U.S. Dist. LEXIS 207981 (S.D. Tex. July 24, 2013), to support his position that the operations of a police department is not within the common knowledge of the public and thus expert testimony is required. *E.g.*, Dkt. 167. In the cited portion of *Bean Kemp*, the court

determined that two experts were "qualified to testify about police policies, procedures, and training related to the use of motor vehicles and pursuit techniques" and had "specialized experience and knowledge about law enforcement policies." *Bean Kemp v. City of Houston*, 2013 U.S. Dist. LEXIS 207981, at *32–34. The cited portion of *Basler* is similarly about the qualification of a law enforcement officer. *Basler*, 2017 U.S. Dist. LEXIS 21701, at *5. While the court found that the officers were qualified as experts in those two cases, those holdings do not address whether they *had* to be designated as experts to offer their testimony.

The court agrees that certain testimony about operations of a police department would require expert testimony, but this is not always the case. Under Federal Rule of Evidence 701,

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. The main issue here is whether the objected-to portion of Kritzler's declaration is based on "other specialized knowledge" that should be governed by Rule 702, which is the rule setting forth the requirements for expert witness testimony. *See* Fed. R. Evid. 702.

In Kritzler's case, he personally works in the patrol division and may describe what patrol division officers do. He does not, however, lay any foundation indicating that he has personal knowledge about what officers in the administrative division do. For instance, he states that the work of administrative division officers is "varied and generally more interesting" than patrol officers and that the work is "deliberative and most often self-paced." Dkt. 128-3 at 2. He also states that "there is no question that most veteran police officers wish to eventually promote or otherwise seek an assignment to an administrative division assignment." *Id.* There is no indication

8

such statements are made on personal knowledge, and he has not been designated as a law enforcement expert.  He may testify about his personal experiences, but he cannot opine about what other officers would desire.

The court GRANTS the motion to strike to the extent Kritzler opines about the duties of administrative division officers or the aspirations of and level of prestige of administrative positions other than from his own perspective, and the court will not consider this testimony when considering the motions for summary judgment.  The court DENIES the motion to the extent the material Diaz seeks to exclude includes information within the personal knowledge of Kritzler due to his position in the Patrol Division of Precinct Two.

D.     Other Objections to Kritzler's Declaration

Diaz also objects to these specific statements in Kritzler's declaration as speculative, conclusory, and lacking foundation (Dkts. 167, 168):

- "While I worked in the Patrol Division, it is safe to say that such positions in the Patrol Division were not sought after."

Dkt. 128-3 at 2 ¶ 4.  The plaintiffs argue that Kritzler has personal knowledge to make this statement because he would have been the person to make these assignments in the patrol division. Dkt. 200.  Kritzler's next statement is that "often new and inexperienced officers were placed under [his] command."  Dkt. 128-3 at 2 ¶ 4.  The court agrees that Kritzler has personal knowledge sufficient to make this general statement.  The objection is OVERRULED.

Diaz objects to the following statement as a legal conclusion and as lacking foundation (Dkt. 168):

- Kritzler's statement that Arellano was "involuntarily demoted."

Dkt. 128-3 at 6.  Kritzler provides substantial background in his declaration about what the duties of the various plaintiffs were and what the duties of officers in the patrol division were.  There is

sufficient foundation for this statement, and while the court will ultimately determine legally whether it was a "demotion," the opinions of other officers is relevant and necessary to that determination. *See Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992).

Diaz objects to the following statement as speculative and lacking personal knowledge (Dkt. 168):

- "The original order for this personnel move reportedly came from Constable Diaz himself."

Dkt. 128-3 at 6.  The court agrees that this statement is not based on personal knowledge because Kritzler states that Lee Hernandez gave him this information.  The objection is SUSTAINED.

Diaz objects to the following statement as irrelevant, conclusory, a legal conclusion, and an impermissible expert opinion by a lay witness (Dkt. 168):

- "I perceived Arellano's transfer as a demotion, because Arellano had a position in Civil Division, and she was moving to the Patrol Division."

Dkt. 128-3 at 6.  The court finds that the beliefs of other officers is relevant to the determination of whether these transfers amounted to an adverse employment decision.  *See* Part III.L.3, *infra*. Accordingly, these objections are OVERRULED.

Diaz objects to the following statement as conclusory and lacking of personal knowledge (Dkts. 167, 168):

- "Assignments in the Civil Division have more flexible hours, have more standard hours and holidays off, as well as more flexibility in scheduling than to positions in the Patrol Division."

Dkt. 128-3 at 6.  The plaintiffs assert that Kritzler has personal knowledge to make this statement as the patrol division commander.  Dkt. 200.  However, Kritzler does not lay the foundation indicating that this statement relating to the civil division is within his personal knowledge.  The objection is therefore SUSTAINED.

E.     Jason Curry's Declaration (Dkt. 128-6)

Diaz objects to Anderson's and Clark's citation to a statement in Jason Curry's declaration (Dkt. 128-6) that he was "not aware of any other supervisor being assigned to the evening patrol shift" as lacking foundation and not relevant.  Dkts. 167, 170.  Curry states that he serves as a corporal in the Patrol Division on the evening shift, and he occupied this position under both Diaz and the current constable, Jerry Garcia.  Dkt. 128-6.  Curry lists the people he knew to be assigned as supervisors on the evening shift and said he was not aware of any others.  The number of supervisors on the evening shift is relevant, and Curry can only testify as to his personal knowledge.  It is not improper for him to state that he is unaware of any others if he indeed is not.  This objection to the citation of Curry's declaration in Anderson's and Clark's responses is OVERRULED.

F.     Sheila Felicia Declaration (Dkt. 129-6)

Diaz objects to Arellano's citation to various portions of Sheila Felicia's declaration.  Dkt. 168.  Diaz objects to the following statement as hearsay and because it contradicts deposition testimony (Dkt. 168):

- "Hernandez was present during the meeting, and strongly encouraged me, as well as the other members of the Board, to vote to terminate Deputy Arellano."

Dkt. 129-6 at ¶ 2.  Diaz asserts that this statement is contradicted by Hernandez's deposition testimony.  Dkt. 168.  The objection that it is contradictory is OVERRULED.  If Hernandez says one thing and Felicia says another, that is a jury question.  With regard to the hearsay objection, this statement is offered to show that Hernandez was attempting to inappropriately influence the outcome of the disciplinary review board proceeding, not for the truth of the matter.  *See* Dkt. 129-6 (providing context for the statement); *see also* Fed. R. Evid. 801(c) (defining hearsay as a

statement that "a party offers in evidence to prove the truth of the matter asserted in the statement"). The objection is thus OVERRULED.

Diaz next objects to the following statement because "no foundation [was] laid for what the Board is supposed to do" and because it contains impermissible opinion testimony (Dkt. 168):

- "Because the Board is supposed to deliberate without input from the command staff, I believed that Hernandez['s] presence and strong encouragement for us to terminate Deputy Arellano was improper."

Dkt. 129-6 at ¶ 2.  First, since Felicia was designated to sit on this board, she should know what the board is "supposed" to do.  So, that aspect of the objection is OVERRULED.  As far as the "impermissible opinion testimony" objection, under Federal Rule of Evidence 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Since Felicia was not designated as an expert, the court agrees that she cannot expressly opine that it was "improper."  The objection that her opinion was improper opinion testimony from a lay witness is SUSTAINED.

Diaz objects to the following statement as speculative and conclusory and because the witness does not lay the proper foundation (Dkt. 168):

- "Since Hernandez was present at that Board, and he could only be present with the Constables' approval, it was clear to me that the Constable wanted Deputy Arellano to be terminated."

Dkt. 129-6.  The lack of foundation objection is OVERRULED.  Again, as a member of this Board, Felicia would have known the rules.  The court does agree that Felicia was speculating about the Constable's intentions, so the objection to this portion of the statement is SUSTAINED.

G.    Objection to Kelly B. Hendricks's Declaration (Dkt. 140-1)

Diaz objects to Kelly B. Hendricks's statement that "the fees paid by the examinees to Hendricks Polygraph and that Williams received no compensation for his work violates the best evidence rule." Dkt. 187.  Hendricks states that her declaration is based on personal knowledge, and she notes that the fees were paid by the examinees to Hendricks Polygraph, and Williams did not receive compensation and that he refused compensation.  Dkt. 140-1.  As far as the "fees paid by the examinees," the objection as written is nonsensical.  After examining the declaration, the court presumes Diaz is objecting to the statement that the fees for the polygraph examinations Williams administered were paid by the examinees.  *See id.*  It is possible that the polygraph company has actual records of who paid these fees, or at least had other records at the time (she states they only keep records for two years).  However,

> an event may be proved by nondocumentary evidence, even though a written record of it was made. If, however, the event is sought to be proved by the written record, the [best evidence] rule applies.  For example, payment may be proved without producing the written receipt which was given.   Earnings may be proved without producing books of accounts which they are entered.

Fed. R. Evid. 1002, Advisory Comm. Notes.  Here, the plaintiff is not attempting to prove the contents of an original writing but to prove that Williams did not receive compensation.  The owner of the company may testify about this.  This objection is OVERRULED.

H.    Campaign Finance Reports (Dkts. 129-3 and 129-4)

Diaz objects to Anderson's, Arellano's, Carrion's, Clark's, Pacifico's, Luman's, Williams's, Herrera's, Vara-Leija's, and Verbosky's citation of 929 pages of campaign finance reports (e.g., Dkts. 129-3, 129-4) without providing any citations to specific page numbers. Dkts. 167, 168, 169 170, 185, 186, 187, 188, 189, 190.  He also objects that Anderson, Arellano, Carrion, Clark, Pacifico, Luman, Williams, Herrera, Vara-Leija, and Verbosky make

representations about the amounts donated without showing the bases for these calculations. Dkts. 167, 168, 169, 170, 185, 186, 187, 188, 189, 190.  The plaintiffs assert that any lack of explanation with regard to the reports can be resolved through testimony at trial or a summary compilation of the reports. Dkt. 200.  The plaintiffs then direct the court to some specific examples of Arellano's donations and note that there are dozens of examples of donations from other plaintiffs that they just did not compile in the interest of time.  *Id.*  The court agrees that the plaintiffs needed to provide the court with some direction as to what aspect of the reports support their statements or provide an expert to testify about what the reports show.  The objections to these reports are SUSTAINED to the extent the plaintiffs ask the court to sift through the exhibits to find evidence supporting their claims or to merely give credit to conclusory assertions about what they say.

I.      Letters from Lee Hernandez (Dkts. 130-4 and 130-6)

Diaz objects to the letters Anderson, Arellano, Carrion, Rodriguez, Zavala, Pacifico, Luman, Williams, Herrera, Vara-Leija, and Verbosky cite to and rely on from Lee Hernandez (e.g., Dkts. 130-4 and 130-6) because the plaintiffs did not authenticate the documents or failed to lay a foundation as required by Federal Rule of Evidence 901.  Dkts. 167, 168, 169, 171, 172, 185, 186, 187, 188, 189. 190.  He also objects to these letters as hearsay in their entirety and also to the hearsay within each correspondence.  Dkts. 167, 168, 169, 171, 172, 185, 186.  The plaintiffs assert that these documents can and will be provided in admissible form at trial. Dkt. 200.  They respond that these documents are from the State Office of Administrative Hearings (SOAH) file, are records from two public state agencies, and are admissible under the hearsay exceptions at Rule 803(5), (6), and (8).  *Id.*

Since these letters can likely be admitted as business records or public records at trial, the overall hearsay objection is OVERRULED.  It does not appear that the plaintiffs rely on any hearsay within these documents to demonstrate an issue of material fact for trial, but to the extent there is reliance on hearsay within the documents that does not fall within a hearsay exception, the objection is SUSTAINED.

J.      February 5, 2019 Letter (Dkt. 130-8)

Diaz objects to Carrion's citation to a letter from February 5, 2019, about a U.S. Department of Justice Equitable Sharing Agreement, because the letter is hearsay and Carrion did not authenticate the document.  Dkt. 169.  In the response, the plaintiffs assert that Carrion was the chief clerk of Precinct Two and the custodian of business records, and she drafted the letter. Dkt. 200.  They therefore argue that she should be able to authenticate it at trial, and it is not hearsay.  *Id.*  The court agrees.  Diaz's objections to this exhibit are OVERRULED.

K.      Objections to Evidence Cited by Individual Plaintiffs

1.      Arellano: SOAH Decision and Order (Dkt. 129-5)

Diaz objects to the SOAH Decision and Order cited by Arellano in her response.  Dkt. 168 (objecting to Dkt. 129-5).  He contends that it is not a self-authenticating document and that Arellano did not provide an affidavit or otherwise show that the document is authentic.  *Id.* Additionally, Diaz argues that the document is not relevant to any claim or defense because the result of her appeal of her dishonorable discharge has no bearing on whether she engaged in protected First Amendment Speech and whether that was a substantial or motivating factor for her termination.  *Id.*  The plaintiffs respond that the documents can be presented in an admissible form at trial.  Dkt. 200.  They provide the signature of the custodian of records for the SOAH in their response.  *See id.*  The court finds that the plaintiffs will be able to present this evidence in an

admissible form at trial, so the objection is OVERRULED.  The court also finds that while the relevance is limited because the SOAH was attempting to determine if Arellano engaged in criminal misconduct, insubordination, or untruthfulness, which is the standard for a dishonorable discharge, the fact that Arellano was inappropriately subjected to a dishonorable discharge that was later found to be inappropriate has some relevance to Diaz's motivations in terminating her employment.  Accordingly, the relevance objection is also OVERRULED.

### 2. Clark: Texas Rangers Report (Dkt. 131-2)

Diaz objects to Reed Clark's reliance on a Texas Rangers Report at docket entry 131-2 because Clark did not authenticate the report and did not lay any foundation for its admissibility. Dkt. 170.  The plaintiffs assert that this can be presented as a public record or business record in admissible form at trial.  Dkt. 200.  The court finds that the plaintiffs should be able to present it in an admissible form at trial, so the authentication and lack of foundation objections are OVERRULED.

### 3. Luman: Photo of Office Door

Diaz objects to Luman's use of a photo on page 3 of his response to Diaz's motion for summary judgment because the photo was not produced during discovery.  Dkt. 186.  The photo seems to be included to show that Luman's name was removed from the office door when his chief deputy status was given to Lee Hernandez.  *See* Dkt. 134 at 2-3.  This photo is not really necessary to support the statement, to which Diaz does not object, so the objection seems pointless. Moreover, the plaintiffs point out that the photos *was* produced during discovery.  *See* Dkt. 200 at 57–58.  The objection is OVERRULED.

4.     Luman: IAD Case No. 2019-005 (Dkt. 134-1)[3]

Diaz objects to Luman including one page of his IAD file without any context or explanation under the rule of optional completeness.  Dkt. 186.  Diaz directs the court to docket entry 110-4, which is the entire file, which he urges the court to consider if it does not strike the page Luman provides.  *Id.*  Diaz's objection is OVERRULED.  To the extent Diaz would like the court to consider other aspects of the IAD file, he needs to cite to the specific pages of that document.  As noted by the plaintiffs, "Diaz has offered nothing by way of argument as to why or what else is contained in Dkt. 110-4 that bears on the pending issues."  Dkt. 200.

5.     Luman: Verbosky Termination Letter (Dkt. 138-4)

Diaz objects to the way Luman represents the Verbosky termination letter, which is contained at docket entry 138-4.  Dkt. 186.  Diaz asserts that Luman misrepresents a statement in the letter, and the next portion of the letter clarifies the context.  *See id.*  This is the type of thing Diaz can point out in his reply.  The objection is OVERRULED.

6.     Verbosky: Verbosky Attorney Letter (Dkt. 138-3)

Diaz objects to an email chain relied upon by Verbosky because it contains hearsay. Dkt. 190.  It is an email to Barbara Callistien at the Harris County Attorney's Office from Verbosky's attorney advising the office that he had been retained and includes settlement negotiations.  Verbosky offers this letter to show that he did respond to an offer for reinstatement, not for the truth of the matter asserted.  *See* Dkt. 138 at 18.  This objection is OVERRULED.

---

[3] While Diaz cites to Dkt. 134-1 as the exhibit that is one page of the IAD file, that exhibit is actually Luman's termination notice.  *See* Dkt. 134-1.  The court believes the page to which Diaz means to refer is contained at Dkt. 130-5.  The page contained at Dkt. 130-5 is also on page ten in Dkt. 110-4 (cited by Diaz as the entire IAD file).

L.      Objections to Plaintiffs' Declarations

   1.      Anderson's Declaration (Dkt. 128-1)

      a.      General Objections

Diaz objects to paragraphs 4 and 5 on page 1 though paragraph 3 on page 2 as irrelevant. These paragraphs relate to Lt. Kim Bellotte, who Anderson contends was Diaz's "work wife" and basically stood in Diaz's shoes.  Dkt. 128-1 at 1.   The declaration goes on to discuss some allegations against Bellotte and indicates that Bellotte was eventually discharged.  *Id.* at 1–2.  The plaintiffs contend that these paragraphs are relevant because they "are integral to establishing the history, pattern of conduct, and experience with Diaz that led to the adverse employment actions," as Bellotte served as Diaz's representative "within the community."  Dkt. 200.

The court finds that the Anderson's discussion of Bellotte's activities as Diaz's "work wife" and his report to Luman and participation in the Texas Rangers investigation is relevant to Anderson's still-pending claim for retaliation due to his participation in the Texas Rangers investigation.  Accordingly, Diaz's objection is OVERRULED.

Diaz objects to the following statement as conclusory and speculative (Dkt. 167):

- "I had in the past contributed to Constable Diaz's campaigns so I knew that Diaz would require I purchase tickets for the Top Golf event, which were priced at $125 each, as well as contribute approximately 16 to 20 hours preparing for the event."

Dkt. 128-1 at 2.  The plaintiffs respond that Anderson is not prohibited from testifying as to his personal knowledge about his previous participation in the campaign and it is based on undisputed personal knowledge and experience.  Dkt. 200.  The court agrees that Anderson's personal experience is sufficient for him to testify about the price and number of hours involved in this event, and he can testify about how much time and money it would take to continue supporting Diaz in the way he had in the past.  The court agrees that whether it was a requirement is what the

court is asked to decide, so Anderson's statement that it was a requirement is conclusory.  The objection is therefore SUSTAINED IN PART AND OVERRULED IN PART.

Diaz objects to the following statement as conclusory, speculative, and lacking foundation (Dkt. 167):

- "The campaign finance reports reflect my withdrawal of support in 2018."

Dkt 128-1 at 2.  While the reliance on voluminous campaign finance reports without a citation is problematic, Anderson knows if he was supporting Diaz prior to 2018 and then discontinued doing so even without the reports.  The objection is therefore OVERRULED.  The court will consider Anderson's assertion that he withdrew support in 2018.

Diaz objects to the following statement from Anderson's declaration as speculative and conclusory (Dkt. 167):

- "I was instructed that I and Sgt. Cindy Leija were demoted and would no longer receive car allowances and would drive patrol cars. I asked the group why this decision was made, and they all agreed that Diaz was out to get me and Sgt. Cindy Leija. I advised the group that three days earlier I had informed Diaz that I would not be assisting physically or financially in his upcoming golf fundraiser. The group agreed this decision was a punishment against both of us for not participating in his campaign."

Dkt. 128-1.  The only statements in this paragraph that are potentially speculative and conclusory are the hearsay statements that the court will be excluding anyway (*see infra*).  The objection to the parts of this paragraph that are not excluded as hearsay are OVERRULED.

Diaz objects to the following testimony as speculative and conclusory (Dkt. 167):

- "Diaz was upset with me but I knew it was due to my refusal to provide meat for his fundraiser."

Dkt. 128-1.  The court agrees this is speculation.  This objection is SUSTAINED as to the statement that Diaz was upset, but the court will consider Anderson's assertion that he refused to provide meat for a fundraiser.

Diaz objects to the following statement as conclusory and being a legal conclusion (Dkt. 167):

- "This employment decision was an obvious and retaliatory act by Constable Diaz for my refusal to support Diaz in his 2020 primary election."

Dkt. 128-1. The court agrees that Anderson's conclusion that Diaz's employment decision was retaliation for refusing to support Diaz in the election is a legal conclusion. The objection is SUSTAINED.

Diaz objects to the following statement as being an impermissible legal conclusion (Dkt. 167):

- "This involuntary transfer was also a demotion because of my loss of weekends off."

Dkt. 128-1. Certainly, whether Diaz's employment decisions relating to Anderson were an "adverse employment actions" calls for a legal conclusion, but here Anderson is explaining why he considered the transfer to be a demotion, and that is relevant and not a legal conclusion. This objection is OVERRULED.

Diaz objects to the last paragraph on page 4, which is about a meeting with Nick Lykos to try to "discuss the events that were taking place and how certain people were being targeted and retaliated against," because it is not relevant. Dkt. 167. However, Diaz argues in his motion for summary judgment that Anderson cannot assert that he was constructively discharged because he did not even try to file a grievance. *See* Dkt. 104. Anderson contends that there was no formal grievance procedure, and this statement is thus probative that he tried to find a way to complain. *See* Dkt. 128. The relevance objection is OVERRULED.

Diaz objects to the first paragraph on page 5, which states that Anderson resigned and then goes into what happened with other staff members after this resignation, as lacking foundation and

not being based on personal knowledge.  Dkt. 167; *see* Dkt. 128-1.  The court agrees that Anderson cannot testify about what happened with other personnel after he resigned without laying additional foundation.  This objection is SUSTAINED.

Diaz objects to the last two paragraphs on page five of Anderson's declaration, which detail incidents that Anderson believes represent harassment and continued retaliation by Diaz and those who are "politically loyal" to Diaz, as being irrelevant.  Dkt. 128-1; Dkt. 167.  Anderson argues that these paragraphs are relevant to show that Diaz's allies continued to harass him even after he was no longer employed by Precinct Two.  Dkt. 200.  The court agrees with Diaz that this post-employment information is not relevant to whether Anderson was constructively discharged.  This objection is SUSTAINED.

### b.    Hearsay Objections

Diaz objects to the following statements in Anderson's declaration as hearsay (Dkt. 167):

- "Lt. Kim Bellotte had also told us about giving 10% of tithes to Diaz's campaign from our extra jobs, because if it weren't for him, we wouldn't be able to work these extra jobs."

Dkt. 128-1 ¶ 4.  The plaintiffs assert that this is not hearsay because it is not offered for the truth of the matter asserted.  Dkt. 200.  They additionally argue that the statement is admissible as a statement by a party opponent because Bellotte was acting as Diaz's representative, citing Federal Rule of Evidence 801(d)(2).  *Id.*  The court agrees that this is not hearsay because it is being used to show the effect on the plaintiffs who heard the message, not to show that they would not have the extra jobs without Diaz or that they should donate ten percent.  *E.g.*, *United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018) ("Ordinarily, a statement is not hearsay if it is offered to show the statement's effect on the listener.").  Additionally, under Federal Rule of Evidence 801(d)(2)(D), a statement made by "the party's agent or employee on a matter within the scope of that

relationship and while it existed" is not hearsay.  Fed. R. Evid. 801(d)(2)(D).  Since Bellotte was

acting in her capacity as Diaz's "work wife" when making this statement, she was representing

him.  The objection is OVERRULED.

- "I was instructed that I and Sgt. Cindy Leija were demoted and would no longer receive car allowances and would drive patrol cars. I asked the group why this decision was made, and they all agreed that Diaz was out to get me and Sgt. Cindy Leija. I advised the group that three days earlier I had informed Diaz that I would not be assisting physically or financially in his upcoming golf fundraiser. The group agreed this decision was a punishment against both of us for not participating in his campaign."

Dkt. 128-1 at 3 ¶ 1.  The plaintiffs assert that the statements fall within hearsay exceptions, without

citing the exceptions.  Dkt. 200.  They state that Anderson is testifying based on his personal

knowledge---"what he was 'instructed' and what was said to him."  *Id.*  If you testify about an out

of court statement that was "said to you" and you are offering it for the truth of the matter asserted,

it is hearsay.  The statement about the group agreeing that Diaz was out to get Anderson and Leija

and that it was punishment are hearsay and do not fall within a hearsay exception about which the

court has been made aware.  The objection is SUSTAINED.

- "Chief Jerry Luman and Lt. David Williams stated Diaz was adamant about placing me on night shift and they could not change his mind."

Dkt. 128-1 at 3 ¶5.  The plaintiffs argue that the statement relays the "present sense impressions"

of Luman and Williams, which is an exception to hearsay, citing Federal Rule of Evidence 803(1).

The present sense impression exception allows hearsay testimony if a statement describes or

explains "an event or condition, made while or immediately after the declarant perceived it."  Fed.

R. Evid. 803(1).  There are multiple problems with the argument that this statement falls within

the present sense impression exception.  The plaintiffs assert better arguments in the alternative.

They argue that Luman and Williams were acting as Diaz's representatives and therefore the

statement is not hearsay but falls under the "party opponent" exclusion.  Dkt. 200.  They also note

that both Luman and Williams, who are plaintiffs, will be testifying, and thus this information can be offered in a form that will be admissible at trial because Diaz is a party opponent.  The court agrees that Luman and Williams will be able to testify about Diaz's demeanor in assigning Anderson to the night shift, and, more importantly, that they were acting as Diaz's representatives, making it a party-opponent statement.  The objection is OVERRULED.

- "When I inquired of Chief Jerry Luman and Lt. David Williams why the decision to move me to night shift was made, they told me Diaz did not give any reason for the change but that they knew Diaz was upset with me and that he did not want me in the building, or in the office during the daytime, and that I was going to night shift effective immediately."

Dkt. 128-1 at 3 ¶ 6.  The hearsay objection to this statement is OVERRULED, as Luman and Williams were representing Diaz here.  Moreover, Luman states in his own declaration that Diaz did not provide a reason and that Diaz was adamant and upset.  *See* Dkt. 128-5.

- "When Chief Jerry Luman passed along my night vision issue, Diaz told him I need to go find a new job."

This is hearsay within hearsay.  What Diaz said falls within the party opponent exception.  Since Luman is also a party, he should be able to testify about his own statements, so it will be admissible at trial even though it is hearsay when presented through Anderson's declaration.  In fact, Luman makes this same statement in his declaration.  *See* Dkt. 128-5.  Moreover, Luman was representing the party opponent when he made this statement.  This objection is OVERRULED.

Anderson discusses a meeting he and some other officers had with Nick Lykos and a county investigator, states the purpose of the meeting, notes that he and the others explained their concerns and complaints, and asserts that Lykos was "very apologetic but stated that 'Harris County claims that Diaz can do whatever he wants.'"  Dkt. 128-1 at 4.  Diaz objects to this statement as hearsay, but it appears to be offered to show that Anderson attempted to complain about Diaz but ran into a brick wall.  It is thus not hearsay.  The hearsay objection is OVERRULED.

23

c.      Objections to Reliance on Anderson Declaration by Other Plaintiffs

Diaz objects to Zavala's and Pacifico's reliance on the following statement in Anderson's declaration (Dkts. 172, 185):

- "This was the same rhetoric that as emphasized at a majority of prior Diaz campaign events."

Dkt. 128-1 at 2 ¶ 4.  Diaz contends this statement is conclusory, speculative, and not based on personal knowledge.  Dkts. 172, 185.  These objections are OVERRULED.

Diaz objects to Rivera's reliance on and citation to, in general, Anderson's declaration to support the statement that "Rivera's interaction with Hernandez [was] similar to other Plaintiffs that had similar interactions, including Anderson informing Diaz that he was not going to participate in the upcoming 2018 Top Golf Fundraiser . . . ." (Dkt. 137).  Dkt. 191.  Diaz contends this is "not relevant to any of Rivera's claims or defenses."  *Id.*  The court disagrees.  This objection is OVERRULED.

Diaz objects to Williams's reliance on Anderson's discussion of Diaz's stump speech in his declaration because it violates the best evidence rule.  Dkt. 187.  Diaz does not point to any writing that Anderson should have produced or flaws with Anderson's account; this objection is OVERRULED.

d.      Deposition and Declaration Conflict

Diaz objects to a statement in Anderson's declaration that he made Diaz aware that he could not help physically or financially on the next fundraiser because he was taking his family to Disney World; Diaz contends that this statement conflicts with what Anderson said in his deposition.  Dkt. 167.  Diaz asserts that in the deposition Anderson said that he told Diaz he could not attend the fundraiser because of prior vacation plans and did not tell Diaz that he would no longer be participating or donating money to future campaign events.  Dkt. 167 (citing the

24

deposition).  The court does not see how this is contradictory.  Going to Disney World is a vacation when you live in Texas.  This objection is OVERRULED.

2.  Mary Ann Carrion's Declaration (Dkt. 130-1)

Diaz objects to the following statement in Mary Ann Carrion's declaration because it is conclusory, speculative, and unduly prejudicial (Dkt 169):

- "Duran's work, though not her proper duties, was, and was part of, Diaz's transformation of the precinct into a mere arm of his political campaign, as I have deposed. Duran felt herself beyond my discipline and supervision and regarded me as unfair owing to my not countenancing Bellotte's political corruption and losing faith in the Diaz machine as a result."

Dkt. 130-1 at 1 ¶ 5.  The plaintiffs assert that this paragraph cannot be read in isolation and provide the previous paragraphs that discuss how she was "gradually stripped of her job duties" and Duran received more job duties.  Dkt. 200.  The additional text does provide context making the statement about transforming the precinct less conclusory.  The plaintiffs also argue that Diaz has not shown that the statement is unfairly prejudicial.  *Id.*  The court agrees that Diaz has not shown the testimony is unduly prejudicial.  However, the court agrees with Diaz that the testimony about Duran's beliefs and feelings is speculative.  This objection is SUSTAINED with regard to the last sentence but otherwise OVERRULED.

Diaz objects to the following statement as hearsay and lacking foundation (Dkt 169):

- "Duran also proposed "weekly meetings" for campaign and political purposes, which were being commingled with official business on the County's dime."

Dkt. 130-1 at 2 ¶ 1.  Since Carrion has personal knowledge of the schedule in her office, this objection is OVERRULED. It is not hearsay.

Diaz objects to the first full paragraph on page two of Carrion's declaration as hearsay. Dkt. 169.  The paragraph discusses a call Carrion received from Diaz, a party opponent, and a call she received from Barbara Callistien, who she says she contacted to get advice about Duran's FMLA application.  She then goes on to discuss something Callistien told her about a call Callistien

received from Diaz. Dkt. 130-1.  The discussion of what Barbara Callistien told Carrion on the phone regarding what Diaz told her is, indeed, inadmissible hearsay.  The plaintiffs inexplicably argue that "Carrion is able to testify about what was and was not said between her and Callistien." Dkt. 200.  If she is testifying about what Callistien said, it is hearsay unless it is not offered for the truth of the matter.  While the plaintiffs also argue it is not offered for the truth, the court disagrees. *Id.*  The objection is SUSTAINED with regard to that portion of this paragraph.

Diaz next objects to the following statement as hearsay, lacking foundation, and irrelevant (Dkt 169):

- "Also, Barbara Callistien emailed Lee Hernandez requesting the department send clerks to Basic FMLA Management Training."

Dkt. 130-1 at 2 ¶ 3.  The court agrees that this is hearsay.  The objection is SUSTAINED.

Diaz objects to the following statement as hearsay (Dkt 169):

- "I asked if Duran, since she was now the Assistant Clerk, would be doing the same and his response was "no, we know what Jessica is doing, and she is helping us out on the upcoming event," meaning the June 2019 Diaz campaign Casino Night fundraiser."

Dkt. 130-1 at 3 ¶ 1.  The plaintiffs point out that the "he" here is Diaz, who is a party opponent. Dkt., 200.  The hearsay objection is OVERRULED.

Diaz objects to the following statement as irrelevant (Dkt 169):

- "After my resignation under duress, I supported now-Constable Garcia in the election."

Dkt. 130-1 at 3 ¶ 4.  Diaz asserts that who Carrion supported after she resigned is not relevant to whether she was constructively discharged for exercising her First Amendment rights.  Dkt. 169. The court agrees that this is not relevant.  The objection is SUSTAINED.

### 3.    Arellano's First Declaration (Dkt. 129-1)

Diaz objects to several portions of Claudia Arellano's first declaration.  He objects to the following statement at being conclusory and a legal conclusion (Dkt. 168):

- Arellano suffered a "demotion and involuntary transfer."

Dkt. 129-1 at 1 ¶ 1.  Arellano explains later in the deposition what she means by "involuntary transfer," so this aspect of the objection is OVERRULED.  Additionally, while the court will determine whether the alleged adverse employment action legally is a "demotion," the lay opinions of officers as to whether it is a "demotion" is relevant to a determination as to whether a transfer is an adverse employment decision.  *See* Click, 970 F.2d 110.  There is sufficient information in the declaration to explain why the plaintiff believed it was a demotion.  The objection is OVERRULED.

Diaz objects to the following statement in Arellano's declaration because it is conclusory, speculative, and irrelevant (Dkt. 168):

- The civil division is "more preferable" and "a more favorable position."

Dkt. 129-1 at 1 ¶ 2.  Arellano immediately explains that it is preferable and more favorable "because of its regular hours, regular days off (Saturday and Sunday), holidays off, and opportunities to manage one's own schedule. Many other deputies sought such benefits."  While there may be somebody out there who would prefer irregular hours, irregular days off, and having to work holidays and not be in charge of one's own schedule, the court finds that it is not conclusory or speculative to state that the former set of circumstances is favorable and preferable to most.

Whether it is relevant is more complicated.  Under Fifth Circuit law, "discharges, demotions, refusals to hire, refusals to promote, and reprimands" constitute "adverse employment

actions" in First Amendment retaliation claims.  *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) (cleaned up).  However, not every employment action that has the effect of chilling speech is considered an adverse employment action.  *Id.*  Examples of employment actions that are not considered "adverse employment actions" in the Fifth Circuit include: false accusations against an employee, without more; a departmental investigation of the employee, without more; failing to allow the employee to attend certain conferences; administrative matters such as assigning an unusually heavy workload or not allowing a person to work overtime or be reimbursed for travel.  *Id.* at 376–77.  Additionally changing an employee's hours, without more, is not an adverse employment action.  *Id.* at 377.  But a transfer may be considered a demotion in some cases.  *Id.*  For instance, even if a transfer does not result in a change in pay, it is a demotion and thus adverse employment action under § 1983 if the position is "much less desirable" than the previous position.  *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996); *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992) (finding that a transfer to a job in the jail that was "not as interesting or prestigious as" the plaintiffs' former jobs in the law enforcement section was a demotion even though it was higher pay as "[m]oney alone . . . does not buy happiness").  "[A] plaintiff's subjective perception that a demotion has occurred is not enough," however.  *Forsyth*, 91 F.3d at 774.  Factors such as prestige, better working hours, how interesting the positions are, whether other officers voluntarily take such transfers, and whether transfers to the position have been used as punishment in other situations impact whether the transfer may be considered an adverse employment action.  *Id.*

The court finds that even though Arellano's subjective belief that it is a demotion without other evidence is insufficient, her discussion of the position being preferable and why is relevant

to the ultimate determination of whether the transfer was an adverse employment action.  This objection is thus OVERRULED.

Diaz next objects to the following statement as conclusory and speculative and asserts that Arellano has not demonstrated she has personal knowledge of this asserted fact (Dkt. 168):

- "Many other deputies sought such benefits."

Dkt. 129-1 at 1 ¶ 2.  While the court agrees that Arellano has not demonstrated that she has personal knowledge of this asserted fact, it is hardly speculative to state that many people would prefer to have weekends and holidays off.  This objection is OVERRULED.

Diaz objects to the following statement because Arellano has not established that she donated anything prior to this point, and he objects under the best evidence rule (Dkt. 168):

- "In or about January of 2018, I began to reduce my financial and goods (auction items) contributions to the Diaz campaign."

Dkt. 1929-1 at 1 ¶ 3.  We are at the summary judgment stage, not trial.  If Diaz has evidence that Arellano's recollection is incorrect regarding her donations decreasing, he can present that evidence to the court and can cross examine Arellano about it.  Arellano's statement that she donated in the past is not inadmissible at the summary judgment stage simply because Arellano does not point to financial statements.  *See* Fed. R. Evid. 1002, Advisory Comm. Notes.  This objection is OVERRULED.

Diaz next objects to the following statement as irrelevant and hearsay (Dkt. 168):

- "[Lt. Eric] Slaughter told me that my punishment for this mistake was that the overtime I worked to remedy this situation must be done without pay."

Dkt. 129-1 at 1 ¶ 5.  Arellano contends that she was told that she was being transferred due to this incident when she was really transferred for failing to support the Diaz campaign, so what she was told by her superiors regarding this incident is relevant.  It is also not hearsay because it is not

being offered for the truth of the matter asserted but to demonstrate that the incident was handled. These objections are OVERRULED.

Diaz objects to the following testimony as irrelevant and because Arellano does not demonstrate she has personal knowledge (Dkt. 168):

- "Nothing further was said or done to either Parnelli Jones or the Precinct 2 clerk who originally misplaced the document into the 'move out tray.'"

Dkt. 129-1 at 1 5.   The statement is relevant, but the court agrees that Arellano has not demonstrated that she knows that nothing was done to the other two employees.   The objection is therefore SUSTAINED.

Diaz next objects to the following statement because it is hearsay, speculative, and lacks personal knowledge or foundation (Dkt. 168):

- "On April 2, 2019, Eric Slaughter brought the Civil Division personnel together and ordered, on behalf of Chris Diaz, that no one with Precinct 2 is to speak or otherwise associate with political candidate Jerry Garcia while on-duty at the monthly Harris County auction; and those who did were to be punished."

Dkt. 129-1 at 1 ¶ 6.   First, later in the paragraph it becomes clear that Arellano was present at this meeting, so it is not speculative, and Arellano has personal knowledge of the meeting.   As far as hearsay, if a statement was made "by the party's agent or employee on a matter within the scope of that relationship while it existed," and is offered against the opposing party, it is not hearsay. Fed. R. Evid. 801(d)(2)(D).   Since the statement was made on behalf of Chris Diaz in the scope of Slaughter's relationship and employment, it is not hearsay.   The objection is OVERRULED.

Diaz objects the following statement as hearsay, speculative, and lacking personal knowledge or foundation (Dkt. 168):

- "Slaughter pointed out the personnel and duty assignment changes on the computer screen for other people currently being punished for political purposes."

Dkt. 129-1 at 1 ¶ 6.  Diaz objects to both Arellano's reliance on this statement in her declaration and to Dwayne Pacifico's, Jerry Luman's, and Ana Herrera's reliance on this statement in Arellano's declaration.  Dkts. 168, 185 186, 188.  Again, Arellano indicates she was at the meeting, so she has personal knowledge and lays sufficient foundation.  Additionally, to the extent that pointing to a computer can be considered an "out of court statement," it is not hearsay because it is not offered for its truth but to demonstrate the effect on the listeners.  These objections are OVERRULED.

Diaz objects to the following statement because as hearsay (Dkts. 168, 185, 186, 188):

- "Lt. Slaughter advised me that Lee Hernandez would be present at the auctions in order to 'watch' what was going on. Slaughter added, looking directly at me, that 'I know Garcia used to be your supervisor and our friend but he's the opponent now.' He continued, 'Again, I can't tell y'all what to do, but [Hernandez] will be watching everyone.'"

Dkt. 129-1 at 1 ¶ 6.  He objects to both Arellano's reliance on this statement in her declaration and to Dwayne Pacifico's, Jerry Luman's, and Ana Herrera's reliance on this statement in Arellano's declaration.  Dkts. 168, 185, 186, 188.  Again, this is offered to show the effect on Arellano, not the truth of the matter that Hernandez would be watching or that Garcia was Arellano's friend, but rather how these statements allegedly chilled Arellano's First Amendment rights.  This objection is OVERRULED.

Diaz next objects to the following statement because it is hearsay, violates the best evidence rule, and is irrelevant (Dkt. 168):

- "On April 9, 2019, Eric Slaughter issued an email stating that the title of all civil papers must be highlighted in order to avoid any confusion as there was in the move-out case with Parnelli Jones and me."

Dkt. 129-1 at 1 ¶ 7.  As far as hearsay, again, Arellano is using this to demonstrate that the department had already taken care of the error that was later used as a reason for her termination.  This hearsay objection is OVERRULED.  However, the court agrees that the email string itself

should have been provided as the statement appears to be offered to prove the content of the writing. The plaintiffs' argument regarding Diaz's best evidence rule objections is essentially that the statements are not being offered to prove the content of writings. *See* Dkt. 200 at 8. The best evidence rule objection is SUSTAINED.

Diaz objects that the following testimony is conclusory and irrelevant (Dkt. 168):

- "It was my understanding that, with this document, all discipline and remedial action to be taken relative to this move out incident was now complete."

Dkt. 129-1 at 1 ¶ 7. What the discipline was for this incident is relevant since the incident was later given as a reason for the employment action at issue. This objection is OVERRULED.

Diaz objects to Arellano's recitation of Diaz's speech, as well as the reliance on Arellano's recitation by other plaintiffs, as a violation of the best evidence rule, noting that Arellano produced an audio recording of the speech in discovery and the court should not rely on her transcription. Dkts. 168, 187. Diaz also objects to the relevance. Dkt. 168. First, Diaz does not point to any errors in the text Arellano provides of the speech. Certainly, at trial, the audio recording would be helpful. But if the transcription is correct, and Diaz has given the court no reason to believe it is not, the evidence is appropriate at the summary judgment stage, as a transcription is more convenient for the court. It is also highly relevant to Arellano's claims that Diaz expected his employees to support his campaign. These objections are OVERRULED.

Diaz objects to the following statement as lacking foundation, conclusory, speculative, and not based on personal knowledge (Dkt. 168):

- "On previous occasions, Chris Diaz would also lecture Pct. 2 employees about the absolute need for us to get money for him and his campaign, whether that be from loans, donations or from 'breaking into a 401K:' we were, he demanded to do anything possible to get him money."

32

Dkt. 129-1 at 1 ¶ 2.  The court agrees that Arellano does not lay enough foundation for her testimony about these "previous meetings."  The plaintiffs offer only a blanket response to the objections to Arellano's declaration.  *See* Dkt. 200.  This objection is therefore SUSTAINED.  The court notes, however, that other plaintiffs also discuss Diaz's speech about borrowing from 401Ks.

Diaz objects to the following statement as irrelevant (Dkt. 168):

- "As the meeting broke up, Constable Diaz demanded that I put up a campaign sign for Ramon Garza in my yard. I said at the time that I would. Constable Diaz lives across the street from me at 10826 Munn Street, Houston, Texas 77029, and could easily monitor whether I complied with this directive. My house was located at 10913 Munn Street, Houston, Texas 77029. In the end, I did not put up the sign."

Dkt. 129-1 at 2.  Diaz asserts it is not relevant because it relates to supporting another candidate, not Diaz.  Dkt. 168.  The court disagrees.  This objection is OVERRULED.

Diaz next objects to the following statement as vague, conclusory, and overly prejudicial (Dkt. 168):

- "[H]aving called my husband immediately after escaping this situation and telling him I could not take this abuse any longer."

Dkt. 129-1 at 3 ¶ 1.  Diaz cites Federal Rule of Evidence 403.  Rule 403 allows a court to exclude "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  We are at the summary judgment stage, and there is no danger of unfair prejudice in front of a jury. The court will view the evidence objectively.  It is relevant.  The objections are OVERRULED.

Diaz next objects to the following statement as hearsay and not being the best evidence (Dkt. 168):

- "On April 15, 2019, I received a telephone call and email from Mike Kritzler informing me that I was being moved from the Civil Division, effective April 20, 2019."

Dkt. 129-1 at 3 ¶ 2.  Diaz asserts that Arellano produced an email during discovery regarding her transfer to the civil division, which would be the best evidence for this fact.  Dkt. 168 (citing Fed. R. Evid. 1002).  Federal Rule of Evidence 1002 indeed requires an "original writing, recording, or photograph to "prove its content unless [the] rules or a federal statute provide otherwise."  Fed. R. Evid. 1002.  However, since there was also a phone call, the court need not rely on what the email said at this stage.  This objection is OVERRULED.  As far as hearsay, since Kritzler is also a witness, he can testify at trial regarding this phone call.  The court finds that the evidence that Arellano was moved from the civil division will be able to presented in a form that is admissible in trial (*see* Fed. R. Civ. P. 56), and the objections to it are therefore OVERRULED.

Diaz objects to the following statement as irrelevant and a legal conclusion (Dkt. 168):

- "No 614.023 notice was issued" when Arellano was moved from the Civil Division.

Dkt. 129-1 at 3 ¶ 2.  This is not a legal conclusion; it is a statement of fact.  If such a notice was issued, Diaz is free to provide the notice as evidence.  Under Texas Government Code § 614.023, disciplinary action cannot be taken against an officer or employee due to a complaint unless a signed copy of a complaint is given to the officer or employee.  Tex. Gov't Code Ann. § 614.023.  The facts surrounding Arellano's transfer and potential reasons, or lack of reasons, for the transfer are relevant.  This objection is OVERRULED.

Diaz next objects to the following statement at hearsay and not the best evidence (Dkt. 168):

- "[A]n anonymous letter that had been received regarding the April 2, 2019, meeting Lt. Slaughter had with Civil Division personnel ordering all to stay away from Jerry Garcia."

Dkt. 129-1 at 3 ¶ 3.  Arellano is stating what a meeting was about; this is not hearsay.  And again, Diaz must object that the fact cannot be supported in an admissible form at trial.  Presumably he is objecting that Arellano has not provided the actual letter, but the entire sentence, which says, "I

agreed to attend, and on April 18, 2019, I met him at the Command Office at 10 a.m. about an anonymous letter that had been received regarding the April 2, 2019, meeting Lt. Slaughter had with Civil Division personnel ordering all to stay away from Jerry Garcia." *Id.*  She is not discussing the content of the letter in this objected-to portion of a sentence; the best evidence rule thus is not implicated, and it is not hearsay.  These objections are OVERRULED.

Diaz next objects that the following statement is hearsay, speculative, and conclusory (Dkt. 168):

- "I gathered that Vela viewed me as a target of the investigation because he asked me, 'Did you write this [letter]?' He then questioned me regarding political loyalty and whether I was friends with Jerry Garcia."

Dkt. 129-1 at 3 ¶ 3.  It is clear from this statement alone that it is not offered for the truth of the matter but rather to show that Arellano was likely a target of the investigation.  Thus, it is not hearsay.  The statement that Vela viewed her as the target is speculative, and the court will thus not consider that portion of the sentence.   The objection is SUSTAINED IN PART AND OVERRULED IN PART.

Diaz objects to the following statement under the best evidence rule (Dkt. 168):

- "That evening, at approximately 5:27 p.m., I displayed a four-by-four 'Elect Lt. Jerry Garcia' campaign sign on my residential fence."

Dkt. 129-1 at 3 ¶ 4.  It is unclear what the best evidence is—possibly the sign?  This objection is OVERRULED.

Diaz objects to the following statement as hearsay and under the best evidence rule (Dkt. 168):

- "Later this same evening, Ana Diaz' brother, Tony Gonzalez posted a photograph of this Jerry Garcia political sign on Facebook with a caption that referenced 'loyalty.'"

Dkt. 129-1 at 3 ¶ 5.  Since this statement is being used to prove the content of the writing, the writing itself should have been provided.  Moreover, it is hearsay.  This objection is SUSTAINED.

Diaz objects to the following statement as irrelevant, hearsay, and unduly prejudicial, and he also objects under the best evidence rule (Dkt. 168):

- "On April 24, 2019, I received a Notice of Violation on my mailbox that a complaint had been received by the City of Jacinto City, stating that I did not have a building permit for a construction project on my property. There was no construction project. By a funny coincidence—or not— Constable Diaz's wife Ana is the Jacinto City mayor."

Dkt. 129-1 at 3 ¶ 5.  The court agrees that the notice of violation is the best evidence for this statement, and the plaintiffs are using this statement to prove the content of a writing.  The plaintiffs have not explained why the original writing is unavailable.  *See* Dkt. 200 (plaintiffs' response) (agreeing that under Rule 1002, a party seeking the prove the contents of a document must "introduce the original document or explain why it cannot be produced").  The court agrees that this is hearsay and that the best practice would be to attach the actual violation notice to the declaration.  The violation notice is likely admissible under a hearsay exception, but this statement made without the actual evidence is not.  This objection is SUSTAINED.

Diaz next objects to the following statement as conclusory, lacking foundation, and irrelevant (Dkt. 168):

- "I was on FMLA medical leave due to a serious medical condition related to the ongoing retaliation issues in this action."

Dkt. 129-1 at 3 ¶ 6.  The court agrees that asserting her medical leave was due to the "retaliation" is conclusory and that Arellano did not lay enough foundation for the court to rely on this statement.  The objections are SUSTAINED.

Diaz objects to the following statement ad hearsay (Dkt. 168):

- "Rene Vela admitted to me verbally that he did not know what the violation would be in this IAD case, or, in other words, what type of misconduct that he (Vela) was even investigating."

Dkt. 129-1 at 3.  The plaintiffs do not offer a specific response to this objection, and it appears to be an out-of-court statement offered for the truth of the matter asserted---that Vela did not know why he was investigating Arellano.  This objection is SUSTAINED.

Diaz objects to the following statement as hearsay, and he contends it violates the best evidence rule and contains legal conclusions (Dkt. 168):

- "This [Texas Government Code Section 614.023] 'notice': a) failed to include a copy of the signed complaint, b) failed to specify what allegations of misconduct were made against me, and c) was not timely issued."

Dkt. 129-1 at 3.  The court agrees that the statement that the notice was not timely issued is a legal conclusion.  The court will not consider that statement but does take note of the fact that the date of this notice was April 26, 2019, and the incident in question was on March 22, 2019.  The statute requires that a complaint be given to an employee in a "reasonable time."  Tex. Gov't Code § 614.023.  Regardless, the statement is being used to prove the content (or lack of content) of a writing without offering the actual writing, and that is a violation of the best evidence rule.  The objections are SUSTAINED.

Diaz next objects that the following statement is hearsay and that it is not admissible under the best evidence rule "because everything related to the basis of the IAD investigation is contained within the investigation file itself, which was produced in discovery" (Dkt. 168):

- "He asserted that by policy I was required to cooperate with this 'administrative investigation' but on May 15, 2019, after the interview had almost completed, informed me that this investigation may be a 'criminal investigation' for official oppression."

Dkt. 129-1 at 4 ¶ 1.  While there may be a written report of the IAD investigation, this statement is not being used to prove the content of that record.  Thus, it is not a violation of the best evidence rule.  The best evidence rule objection is OVERRULED.

As far as hearsay, Arellano asserts that the complaint came from Diaz (see the next objection), so Vela was representing Diaz when making this statement.  The hearsay objection is OVERRULED.

Diaz objects that the following statement is hearsay, and that it is not admissible under the best evidence rule "because everything related to the basis of the IAD investigation in contained within the investigation file itself, which was produced in discovery" (Dkt. 168):

- "It was toward the end of the interview that Vela asserted that this investigation was criminal in nature, predicated on a complaint of official oppression, and indicated that the complaint had come from Constable Diaz."

Dkt. 129-1 at 4 ¶ 1.  While there may be a written record of the IAD investigation, this statement is not being used to prove the content of that record.  Thus, it is not in violation of the best evidence rule.  This objection is OVERRULED.

As far as hearsay, while Arellano asserts that the complaint came from Diaz, Vela was acting as Diaz's agent in the scope of his employment, so the hearsay objection is OVERRULED.

Diaz objects to Arellano's statement that she did not receive a copy of her termination letter because it contradicts her deposition testimony.  Arellano states: "A copy was never received as promised by Lee Hernandez."  Dkt. 129-1 at 4 ¶ 2.  Diaz cites to Ex. A and Ex. B; presumably one of these exhibits is meant to be the deposition that is allegedly contradictory, but that deposition is not attached.[4]  Regardless, even the argument does not provide a contradiction because Diaz states

---

[4] There is a highly redacted copy of some pages of Arellano's deposition attached to the original motion.  Dkt. 105, Ex. 1.  However, the pages cited here were not included in that exhibit.  To the

that Arellano admitted to *signing* the letter in her deposition; the declaration just says she did not

*receive* the letter.  This objection is OVERRULED.

Diaz next objects that the following statement is conclusory, speculative, and irrelevant

(Dkt. 168):

- "This termination was conducted at this time and in this place, and under these circumstances, in a calculated attempt to further embarrass and degrade me in front of my peers."

Dkt. 129-1 at 4 ¶ 2.  The court agrees that this is a conclusory statement and speculative.  It is,

however, relevant.  The court will disregard the speculative aspect of the statement while

considering the alleged fact of how the place and timing impacted the witness.  The objection is

SUSTAINED IN PART.

Diaz objects that the statements regarding alleged code violation are not relevant to any

claim or defense at issue in this case.  Dkt. 168.  The court disagrees.  This objection is

OVERRULED.

### 4.    Arellano's Second Declaration (Dkt. 129-2)

Arellano provides a second one-page declaration signed on March 23, 2022.  Dkt. 129-2.

Her original declaration was signed on February 23, 2022.  *See* Dkt. 129-1.  Diaz objects to various

statements made in the second declaration.  Dkt. 168.

Diaz first objects to the following statement because it conflicts with Arellano's deposition

testimony (Dkt. 168):

- "I did acknowledge and briefly converse with Jerry Garcia at the auctions."

---

extent these deposition pages may be elsewhere in the record, as Chris Diaz has noted, the court is
not obligated to go sifting through the record to find it.

Dkt. 129-2 at 1 ¶ 2.  According to Diaz, Arellano indicated at her deposition that she did not speak to Jerry Garcia at the auction and had only waved to him.  Dkt. 168 at 8.  The deposition, which is attached to the original motion, indicates that Arellano said, in response to a question "Did you say hi to Jerry Garcia at the auction," that she "waved."  Dkt. 105, Ex. 1 at 66.  However, Arellano did not say that she did not speak to him, she responded that she waved when asked if she said hello.  There is no indication that there were follow-up questions about whether she spoke with him.  Thus, there is no conflict.  This objection is OVERRULED.

     5.     Reed Clark's Declaration (Dkt. 128-9)

     Diaz objects to the following statements from Reed Clark's declaration (Dkt. 128-9) because they are conclusory, speculative, or lack foundation (Dkt. 170):

- "I knew that my job depended on my contributions to the Diaz campaign."
- "I objected to a requirement to be involved in campaign fundraisers."
- "as he retaliated against others who did not support his political goals as he wished."
- "Based upon direct orders from Diaz, I was demoted and involuntarily transferred to a less desirable position in the patrol division. The change was both a demotion and an involuntary transfer because I was being stripped of my administrative duties in the community outreach division and placed into a reactive patrol assignment, which was a contract patrol assignment."

Dkt. 128-9.  The plaintiffs contend that when the entirety of the declaration is reviewed, it is clear that Clark laid the proper foundation and that the information can be presented in admissible form at trial.  Dkt. 200.  The court agrees that Clark's statement that he knew his job depended on his contributions is conclusory and speculative.  The objection to that statement is SUSTAINED. These objections are otherwise OVERRULED.

     Diaz objects to the following statement as hearsay (Dkt. 170):

- "On the same day, Chief Jerry Luman stated that Diaz wished to place me and Deputy Pico Rodriguez on different shifts out of retaliation. Chief Jerry Luman apologized but stated that he had to follow orders."

Dkt. 128-9 at 2 ¶ 1.  The plaintiffs' arguments are present sense impression and state of mind and that Clark was testifying on personal knowledge as a participant in the conversation.  Dkt. 200. While the court finds none of these arguments convincing, it is clear here that Luman was acting as Diaz's agent, at least with regard to the statement that they were being placed on different shifts. The first part of the statement is not hearsay.  The fact that it was out of retaliation and the apology were likely not made as Diaz's representative.   However, Luman himself also provided a declaration in which he states that he warned Clark that Diaz was going to transfer him and Pacifico out of retaliation.  *See* Dkt. 128-5.  Thus, while the statement about retaliation is technically hearsay when made by Clark, the evidence will be available at trial through Luman.  The hearsay objection to the first sentence is therefore OVERRULED.  Luman did not substantiate the second sentence in his declaration, and it is clearly made in his own capacity and not as Diaz's representative.  The hearsay objection to the second sentence is therefore SUSTAINED.

Diaz objects to the following statement as hearsay and also objects under the best evidence rule because there is a recording of this conversation and Diaz asserts that Clark "is not attaching it because he knows that his recollection of the events does not match the conversation itself" (Dkt. 170):

- "This conversation was followed-up by Lt. Hernandez stating that it would be best that I and Deputy Rodriguez both leave Precinct 2."

Dkt. 128-9 at 2 ¶ 1.  While a recording of this conversation may exist, this statement is not being offered to prove the contents of that recording.  Thus, the objection under the best evidence rule is OVERRULED.  If Diaz has evidence that the recollection is incorrect, he can use that in his reply. With regard to hearsay, the plaintiffs assert that the statement is (1) not hearsay because it was made on behalf of Diaz; and (2) admissible under Rules 803(1) and (3).  Dkt. 200.  First, it is not clear here that Hernandez was acting as Diaz's agent in making this statement.  Second, Rule

803(1) is an exception to the rule against hearsay for a "statement describing or explaining an event or condition, made while or immediately after the declaration perceived it." Fed. R. Evid. 803(1). This statement does not qualify as a present sense impression. Third, Rule 803(3) is a hearsay exception for then-existing mental, emotional, or physical condition. Under this exception, a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity of terms of the declarant's will" is not excluded by the rule against hearsay. Fed. R. Evid. 803(3). Simply advising that it would be best if they left does not qualify under the "state of mind" exception. The hearsay objection is SUSTAINED.

Diaz objects to the following statement "because Constable Diaz categorically denies that this meeting ever took place or that Clark informed him that he would no longer be helping with the campaign" and because "Clark failed to produce any documents or tangible items demonstrating this alleged meeting ever took place" (Dkt. 170):

- "This was all done after I communicated to Diaz that I was not going to be block walking or helping with his campaign."

Dkt. 128-9. If Diaz says one thing happened and Reed Clark says another thing happened, that is a question of fact for a jury, not a reason to strike evidence. This objection is OVERRULED.

Diaz objects to the following statement because it is hearsay (Dkt. 170):

- "Chief Jerry Luman spoke with me after the meeting and stated 'You know what it is. I know what it is, we all know what it is after the meeting that, you know, this is what Constable Diaz does and he's been doing since he was elected as Constable.' And I said 'I know.' Chief Jerry Luman apologized and said, 'It's out of my hands. The Constable made the decision.'"

Dkt. 128-9 at 2 ¶ 2. The plaintiffs assert that the statement is admissible under Rules 803(1) and (3) and that whether Luman apologized is not offered for the truth of the matter asserted. Dkt. 200.

The fact that the constable made the decision is a statement of a party opponent because Luman was representing Diaz.  The remaining statement is hearsay and does not fall under the present sense impression or state-of-mind exceptions.  While it is possible that Luman could testify to these statements at trial, the plaintiffs did not assert this in their response.  The hearsay objection is SUSTAINED except with regard to the fact that the constable made the decision.

6.    Ricardo Rodriguez's Declaration (Dkt. 136-1)

Diaz objects to the following statement from Ricardo Rodriguez's declaration as conclusory, speculative, and irrelevant (Dkt. 171):

- "The precinct has become wholly politicized."

Dkt. 136-1 at 2 ¶ 2.  The court agrees that this statement is speculative, and the objection is SUSTAINED.

Diaz next objects to the following statement as conclusory, speculative, because the declarant lacks personal knowledge, and as unduly prejudicial (Dkt. 171):

- "In the first few days of October 2018, Diaz was made aware that I was giving no further aid to his campaign. He knew of my nonparticipation through my not attending---and not signing in at---campaign events; and he monitored staff participation obsessively."

Dkt. 136-1 at 2 ¶ 3.  The court agrees that Rodriguez did not lay enough foundation to support his knowledge of Diaz's being "made aware" he was not supporting the campaign.  This objection is SUSTAINED as to the first sentence.  The objections to the second sentence are SUSTAINED IN PART.  The court will consider the statement that Rodriguez did not sign in and did not attend, but the remainder is speculative.

Diaz objects to the following statement because he (Diaz) denies the meeting took place and Rodriguez did not produce any documents or tangible items to prove it took place (Dkt. 171):

- "At the beginning of October 2018, Reed Clark and I were invited to lunch with Diaz at Tepatitlan Mexican Grill.  Clark spoke on behalf of both of us that we were not going to

be helping any further with the Diaz campaign.  Diaz responded with 'that's disappointing.'"

Dkt. 136-1 at 2 ¶ 2.  If Diaz denies that the meeting took place and Rodriguez and Clark assert that it did, then this is a question of fact for the jury, not a reason to strike their statements.  This objection is OVERRULED.

Diaz next objects to Rodriguez's testimony that he was demoted because he never lost his rank and his pay was not decreased.  Dkt. 171.  These are not the only factors the court considers when determining if an employment action is a "demotion."  This objection is OVERRULED.

Diaz next objects to the following statement as hearsay (Dkt. 171):

- "Luman explained that Diaz had ordered the move."

Dkt. 136-1 at 2 ¶ 5.  Luman was speaking on behalf of Diaz here, a party opponent.  The statement is not hearsay.  The objection is OVERRULED.

Diaz next objects to the following statement as a legal conclusion (Dkt. 171):

- "I did not receive the required notice under Section 614.023 Texas Local Government Code for the change.  This transfer and the task force transfer were adverse and retaliatory."

Dkt. 136-1 at 2 ¶ 5.  The court agrees that Rodriguez has not established special expertise regarding what types of notices are "required," though he may state that he did not receive the notice.  The court agrees that his opinion that the transfers were adverse and retaliatory are legal conclusions.  The objection is SUSTAINED IN PART AND OVERRULED IN PART.

Diaz next objects that the following statement is speculative and hearsay, and he also objects under the best evidence rule because Rodriguez recorded the conversation (Dkt. 171):

- "Shortly thereafter, I met with Hernandez, who stated that I needed to find another job.  Pressed for explanation, Hernandez angrily insinuated that I needed to leave."

Dkt. 136-1 at 2 ¶ 6.  While a recording of this conversation may exist, this statement is not being offered to prove the content of the recording.   Thus, the best evidence rule objection is OVERRULED.

With regard to hearsay, the statement that Rodriguez needed to find another job is not hearsay because it was made on behalf of Diaz, the party opponent.  *See* Dkt. 200.  The hearsay objection to that portion of the statement is thus OVERRULED.   The angry insinuation that Rodriguez needed to leave appears to have been made independent of Diaz, and it does not qualify as an excited utterance since there was no startling event or condition, *see* Fed. R. Evid. 803(2).  Thus, the hearsay objection to that portion of the statement is SUSTAINED, and the court will disregard Rodriguez's report that Hernandez angrily insinuated that he should leave.

Diaz objects to the following statement as hearsay and under the best evidence rule (Dkt. 171):

- "Hernandez, using profanity and curse words, indicated that people should not mess with him. Hernandez indicated that Diaz was the boss and when Diaz ordered something, people needed to listen. Hernandez explained that if Diaz was mad at someone, Diaz would move them, and then used me as an example. He also indicated that I would be moved to an evening-shift position."

Dkt. 136-1 at 2 ¶ 7.  While a recording of this conversation may exist, this statement is not being offered to prove the content of that recording.   Thus, the best evidence rule objection is OVERRULED.  The hearsay objection is also OVERRULED as either made on behalf of Diaz or under the then-existing state of mind hearsay exception, *see* Fed. R. Evid. 803(3).

Diaz objects to the following statement as speculative, conclusory, and lacking a foundation or personal knowledge (Dkt. 171):

- "After Diaz learned of the existence of the certificate, Diaz ordered Lt. David Williams, the current IAD investigator at the time, to determine if there were any criminal charges that could be brought against me."

Dkt. 136-1 at 3 ¶ 2.  The court agrees that Rodriguez has not laid the foundation for how he knows what Diaz ordered Williams to do.  This objection is SUSTAINED.

### 7.   Javier Zavala's Declaration (Dkt. 141-1)

Diaz objects to the following statements as conclusory or speculative and because Zavala fails to demonstrate he has personal knowledge sufficient to make the statements (Dkt. 172):

- "I was hired ostensibly as a deputy, but, in fact, as a good campaign asset. I knew I was expected to be primarily working on the campaign."

- "With the first year, I was promoted to a coveted position as a day shift district deputy over a number of other deputies of longer service."

Dkt. 141-1 at 1 ¶¶ 2, 3.  The court agrees that the bulk of these statements is speculative or made without indicating how Zavala would know.  The objection is SUSTAINED IN PART AND OVERRULED IN PART.  The court will consider the statement that Zavala was hired as a deputy and promoted to day shift district deputy within the first year, but it will disregard the remainder of these statements.

Diaz objects to the following statement as speculative, conclusory, lacking foundation or personal knowledge, and irrelevant (Dkt. 172):

- "I witnessed what happened to other deputies and precinct personnel who failed to support the Diaz campaign and to 'go along to get along.' Examples included the IT supervisor, Paul Tran, who was sent to the night patrol contract position; which is considered an entry-level position."

Dkt. 141-1 at 1 ¶ 4.  The statement itself indicates personal knowledge, as Zavala says he witnessed the events.  The court, however, agrees that there is no indication that Zavala has special knowledge that the night patrol contract position is entry level, so it will disregard that aspect of this statement.  The statement is definitely relevant to some of the other plaintiffs' constructive discharge allegations.  This objection is SUSTAINED with regard to the entry level statement but otherwise OVERRULED.

Diaz asserts the same objections to the following statement and adds that it is impermissible character evidence (Dkt. 172):

- "Another deputy assigned to the schools, who similarly failed to serve Diaz politically, was also transferred to the night patrol contract position."

Dkt. 141-1 at 1 ¶ 4.  This is in the same paragraph and Zavala states that he witnessed these events. It is unclear how this statement could be construed as impermissible character evidence.  The objection is OVERRULED.

Diaz next objects to the following statement as speculative, conclusory, lacking foundation or personal knowledge, and hearsay (Dkt. 172):

- "I knew, from Lee Hernandez, that political support was a quid pro quo, and retaliation the consequence of not giving it."

Dkt. 141-1 at 1 ¶ 4.  Diaz also objects that this statement "does not speak to any proof of Constable Diaz's knowledge, animus, or actions as they relate, if at all, to Zavala."  Dkt. 172.  Since this argument is contained in the objections to the declaration, the court assumes it is a relevance argument.  The declarant does not state how he knew this from Hernandez, but it must be either hearsay or speculation.  The plaintiffs' response does not address the specific objections to the Zavala declaration except to say the arguments are more suited to a reply and go mainly to credibility.  *See* Dkt. 200.  The objection to this statement is SUSTAINED.

Diaz objects to the following statement as speculative, conclusory, lacking foundation or personal knowledge, and hearsay (Dkt. 172):

- "On May 27, 2019, in discussing the traffic position and my seeking it, Hernandez stated 'we need to take care of the boss, and we need to make sure that he gets elected.' . . . Hernandez did not like my answer."

Dkt. 141-1 at 2 ¶ 2 (alteration in the objections document).  The court agrees that the latter part of this statement is purely speculation.  The objection to Hernandez's feelings about the answer is

SUSTAINED.  Hernandez stating that they needed to take care of the boss and make sure he was elected is offered to show a quid pro quo not offered to demonstrate the truth of the matter and appears to be made on behalf of the party opponent.  That objection is OVERRULED.

Diaz objects to the following statement as speculative, conclusory, and lacking foundation or personal knowledge (Dkt. 172):

- "Instead it was given to Deputy Andre Mitchell, a known supporter of the Diaz campaign and an academy classmate of Kim Bellotte's, who had bought Diaz a new set of golf clubs."

Dkt. 141-1 at 2 ¶ 3.  Diaz notes that Zavala testified in his deposition that he was told in passing that Mitchell had purchased Diaz golf clubs, which demonstrates he has no personal knowledge of this.  Dkt. 172.  There is no foundation for the other assertions in this statement.  The objection is SUSTAINED.

Diaz objects to the following two statements as speculative, conclusory, and lacking foundation or personal knowledge (Dkt. 172):

- "The command structure by that point was simply the campaign structure."
- "I knew I had clearly violated Diaz's employment policies and was shiftily punished for failure to participate."

Dkt. 141-1 at 2 ¶¶ 7, 8.  These objections are OVERRULED.

Diaz objects to the following testimony as speculative, conclusory, lacking foundation or personal knowledge, and contradicting deposition testimony (Dkt. 172):

- "I had been active on social media in my support of Jerry Garcia, and actively posted support for Garcia on this public forum, which Diaz routinely monitored."

Dkt. 141-1 at 2 ¶ 9.  Diaz points on that Zavala admitted in his deposition that he had no personal knowledge if Diaz saw Zavala's social media interaction with Garcia and that he sometimes "liked" Garcia's posts but did not openly support Garcia's candidacy.  Dkt. 172 (citing Ex. 1 at 85,

86, 88, 89 and Ex. 2).  Diaz failed to attach the exhibits he contends conflict with this declaration

to his objections.  The objection is therefore OVERRULED.

Diaz objects to the following statement as speculative, conclusory, lacking foundation or

personal knowledge, and because it conflicts with Zavala's deposition testimony that he was not

threatened or forced to resign (Dkt. 172 (citing Ex. 1)):

- "I resigned under duress on August 15, 2019, despite the attempts of my supervisors to decline to accept my involuntary resignation."

Dkt. 141-1 at 3 ¶ 1.  Again, Diaz did not actually attach the deposition to this objection, so the

court cannot determine if it conflicts.  The objection is OVERRRULED.

Diaz objects to the following testimony at speculative, conclusory, and lacking personal

knowledge or foundation (Dkt. 172):

- "So thoroughly had the campaign captured the lawful and public operations of the precinct, it was pointless for me, as it was pointless for others, to try to resolve issues through a chain of command consisting of the very Diaz loyalists who were the problem: especially as the precinct under Diaz refused to appoint a grievance officer as the law requires."

Dkt. 141-1 at 3 ¶ 1.  The court agrees that this statement is speculative, but it will consider it to the

extent it explains why Zavala did not file a grievance.  The objection is SUSTAINED IN PART

AND OVERRULED IN PART.

Diaz objects to the following statement as hearsay, under the best evidence rule, and

because it conflicts with Zavala's deposition testimony (Dkt. 172):

- "There was a list at the front door that detailed my name and the amount I was to donate, $250.00."

Dkt. 141-1 at 2 ¶ 6.  Diaz also asserts that Zavala's "failure to produce any such list precludes him

from using it as evidence or an exhibit."  Dkt. 172 (citing Fed. R. Civ. P. 37(c)).  However, if this

list were at the front door of a Diaz campaign event (as stated in the declaration), it is not a list that

would have been under Zavala's custody and control.  The deposition was not provided, but Diaz

alleges there is a conflict because Zavala testified that he signed up to be a VIP sponsor for this event and split a $500 donation with another Precinct Two employee.  *Id.*  This does not conflict with the declaration.  With regard to hearsay, this is being used to demonstrate that Diaz compelled participation in the campaign, not for the truth of the matter asserted that Zavala's donation amount was $250.  These objections are OVERRULED.

Diaz objects to the following statement as hearsay (Dkt. 172):

- "I spoke with Ed Reyna, an old friend training as a deputy, and he advised me, in response to my question about whether my job were [sic] safe, that the command structure did not trust me."

Dkt. 141-1 at 2 ¶ 7.  The court agrees this is hearsay, and the objection is SUSTAINED.

Diaz objects to the following statement as hearsay, under the best evidence rule, and because it contradicts Zavala's deposition testimony (Dkt. 172):

- "I received a text message from Hernandez's wife regarding a campaign event, and I responded back that I could not make any further campaign events."

Dkt. 141-1 at 2 ¶ 8.  Again, Diaz did not attach the deposition to the objections.  Zavala's own response is not hearsay, and he does not say what Hernandez's wife said in the original text.  However, since he is using this to prove that he texted Hernandez's wife the information, he needed to provide the text unless they were for some reason unavailable.  The best evidence rule objection is SUSTAINED.

Diaz objects to the following statement as hearsay and irrelevant (Dkt. 172):

- "In June of 2019, I was informed by Lt. Mike Kritzler that Diaz decided to demote me to a contract patrol position, on the night shift, which was a less desirable and reactive position."

Dkt. 141-1 at 2 ¶ 9.  Diaz contends it is irrelevant because adverse employment actions for First Amendment retaliation claims must be ultimate employment actions, and transfers only qualify if "'they are markedly less prestigious and less interesting than the old one.'"  Dkt. 172 (quoting

*Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)).  Diaz goes on to note that under Fifth Circuit precedent the plaintiff's personal preferences and subjective perceptions are insufficient to establish an adverse employment action.  *Id.*  The court agrees that the fact that Zavala believed it was a less desirable and reactive position, alone, does not establish that he suffered an adverse employment action.  However, it is not irrelevant.  With regard to hearsay, since Kritzler was representing Diaz, it is a statement of a party opponent and not hearsay.  The objections are OVERRULED.

Diaz objects to the following statement as hearsay and because it contradicts deposition testimony (Dkt. 172):

- "I believe Diaz made the employment decisions on the basis of my participation in the campaign to support Diaz's political opponent – Jerry Garcia."

Dkt. 141-1 at 2 ¶ 9.  Diaz contends this contradicts testimony on page 90 lines 18-22, but he does not provide the deposition.  It is unclear how this is hearsay.  These objections are OVERRULED.

Diaz objections to Zavala's statement that he was asked to donate sandwiches for a campaign event because in his deposition he said that the sandwiches were for a youth baseball team and were not campaign related.  However, he does not attach this deposition testimony to the objections.  The objection is thus OVERRULED.

Diaz objections to the following statement as impermissible character evidence (Dkt. 172):

- "This was especially true after Lee Hernandez, a man with a highly dubious reputation at Metro, came into the precinct as Diaz's patronage man."

Dkt. 141-1 at 1 ¶ 7.  Diaz cites Federal Rule of Evidence 608, which deals with a witness's character for truthfulness or untruthfulness.  *See* Fed. R. Evid. 608.  It is unclear what Zavala means by "highly dubious reputation," but the court will not consider this opinion, particularly to the extent it relates to truthfulness.  The objection is SUSTAINED.

Diaz objects to Zavala's testimony about the denial of extra employment as not being relevant to a claim or defense because denial of extra jobs is not an ultimate employment decision. Dkt. 172. The court will consider whether Zavala's assertions of adverse employment actions rise to the Fifth Circuit's requirements in the memorandum opinion and order ruling on the motions for summary judgment and defers considering this issue until that ruling. It is a legal issue, not an evidentiary issue.

### 8. Dwayne Pacifico's Declaration (Dkt. 135-1)

Diaz objects to the following statement in Pacifico's declaration as conclusory, speculative, and lacking in foundation or personal knowledge (Dkt. 185):

- "The fundraiser event was cancelled, but the money was not refunded. Also in January of 2018, after making this donation, I was made Deputy Investigator for the department."

Dkt. 135-1 at 1 ¶ 5. These objections are OVERRULED.

Diaz objects to the following statement as conclusory, speculative, lacking in foundation or personal knowledge, and irrelevant (Dkt. 185):

- "Jessica Duran was a substantial political supporter of Diaz and had worked closely with Assistant Chief Lee Hernandez within the community outreach division. Both Diaz and Hernandez intervened multiple times to protect her."

Dkt. 135-1 at 1 ¶ 7. Pacifico's testimony about Duran is relevant because it is intertwined with the alleged adverse employment decision—transfer to the night shift in the patrol division. Her provision of "substantial" political support without more background as to how Pacifico knows this lacks foundation or is speculative, but the fact she worked closely with Hernandez, the division she worked in, and the statement that Diaz and Hernandez intervened on her behalf are within Pacifico's personal knowledge as evidenced by the remainder of his declaration. The objection is SUSTAINED with regard to the assertion that Duran provided "substantial political support" but otherwise OVERRULED.

Diaz objects to the following two statements as conclusory, speculative, and lacking in foundation or personal knowledge (Dkt. 185):

- "As a result of this sudden, unexpected, and unwarranted schedule change, I was unprepared, did not have the proper uniform or equipment, was told to turn in my assigned take home vehicle, and other arrangements had to be made to accommodate my drastic change in work hours."
- "This was a demotion from my previous position. The night shift in the patrol division position was a less desirable duty which resulted in my loss of a take-home car, required me to go back into uniform, cost me extra jobs and 'z-time' income, and moved me from a proactive investigatory position, where I investigated crimes from theft to sexual assault, and placed me in a reactive patrol assignment. I was not provided a Section 614.023 notice and received no reason for this transfer and demotion."

Dkt. 135-1 at 3 ¶¶ 2, 4.  These objections are OVERRULED.

Diaz objects to the following statement in Pacifico's declaration as hearsay:

- "In January 2018, I was told by Chief Jerry Luman that I was required to donate money to a fundraiser Constable Diaz was hosting."

Dkt. 135-1 at 1 ¶ 5.  The plaintiffs assert that Luman was making this as an agent of Diaz, a party opponent, and it therefore does not fall within the rule against hearsay.  Dkt. 200.  The court agrees. This objection is OVERRULED.

Diaz objects to a statement about Pacifico's wife writing check number 2978 for $166 to the Diaz Campaign because it violated the best evidence rule.  Dkt. 185.  Diaz contends that Pacifico did not produce the check during discovery and therefore cannot use it as summary judgment evidence.  *Id.*  The plaintiffs do not address this objection.  *See* Dkt. 200.  Pacifico can testify that his wife donated, but he cannot testify about the contents of that check without providing the original writing.  Thus, to the extent that Pacifico states what was in the check, the objection is SUSTAINED.

9.      Jerry Luman's Declaration (Dkt. 128-5)

Diaz objects to the third and fourth paragraphs on the first page of Luman's declaration (Dkt. 128-5) as irrelevant. Dkt. 186.  These paragraphs related to a Texas Rangers' investigation about Kim Bellotte's alleged misappropriation of Hurricane Harvey relief items.  *See* Dkt. 128-5 at 1 ¶¶ 3-4.  Diaz argues that this is irrelevant because the court already dismissed the claims related to the Texas Rangers' investigation.  Dkt. 186.  The plaintiffs, rather than responding to each relevance objection, merely note that the court need not consider the relevance objections and can just consider the evidence it finds relevant when determining the summary judgment motions. Dkt. 200.  The court agrees with Diaz that the Texas Rangers investigation and Kim Bellotte's alleged misappropriation of items is not relevant to Luman's claims, and the objection is SUSTAINED in that regard.  However, the court did not dismiss the claims relating to participation in the Texas Rangers investigation for Clark and Rodriguez, *see* Dkt. 63, so to the extent Luman's participation in the investigation needs to be considered to determine if Clark's and Rodriguez's involvement is protected conduct, the relevance objection is OVERRULED.

Diaz objects to testimony about Luman's hearing before the SOAH it is not relevant and additionally violates the best evidence rule.  Dkt. 186.  The best evidence rule objection is OVERRULED, as Luman provides the decision and order in the SOAH proceeding.  Dkt. 134-2. The relevance objection is also OVERRULED.

Diaz objects to the following statements as conclusory, speculative, and lacking personal knowledge or foundation (Dkt. 186):

- The statement that Luman was required to "demote and involuntarily transfer Deputy Rodriguez to a less desirable position in the SEITEG Unit."
- "The IAD investigation, launched at Diaz's direction, failed to take into account that Lee Hernandez was biased, being a supporter of Diaz and a contributor to his campaign, and an individual who had received my job before the investigation had concluded."

- "I knew Diaz had a political pay-to-play policy. It was after and in light of the corruption probe and his demotion and firing of good deputies for political disloyalty that I dropped my support for Diaz in early 2019."

Dkt. 128-5 at 2 ¶ 1; Dkt. 128-5 at 3 ¶¶ 6, 7.  The IAD investigation was about allegedly derogatory statements Luman made to Lee Hernandez.  Dkt. 128-5 at 3 ¶ 5.  The objection to lack of personal knowledge or foundation is SUSTAINED with regard to the statement that the investigators did not take into account Hernandez's alleged bias and the fact he received Luman's job, as Luman does not have any way of knowing what was considered.  This objection is otherwise OVERRULED with regard to each of the three statements.  The objections that the statements are conclusory are OVERRULED as there is sufficient context to the statements when one reads the entire declaration.

Diaz objects to the following statements in Luman's declaration as hearsay (Dkt. 186):

- "Lt. David Williams, in my presence and that of Chief Clerk Mary Ann Carrion; Lt. Mike Kritzler; Assistant Chief Norman Verbosky; and Lt. Fred Taylor, informed Sgt. Anderson that, per Diaz, he and Sgt. Cindy Leija were no longer to receive a car allowance and were to drive a patrol car."
- "Anderson notified the group that three days earlier he had informed Diaz that he would not be assisting physically or financially in Diaz's upcoming golf fundraiser."
- "Sgt. Anderson advised me that he could not work nights, because he could not see at night. Sgt. Anderson stated that he could not effectively operate a patrol vehicle at night and might injure himself or the citizens of Harris County. Sgt. Anderson also stated that he had not worked night shift since 2006."

Dkt. 128-5 at 1 ¶ 6; Dkt. 128-5 at 2 ¶ 3.  These statements are indeed hearsay, though all of this information is otherwise in the record in admissible form.  Regardless, as to the inclusion in this specific declaration, the objections to the first two statements are SUSTAINED.  The third statement is not offered for the truth of the matter asserted—whether Anderson could see at night—but to demonstrate that Anderson had informed his supervisor about his night-vision issues.  The objection to that statement as hearsay is OVERRULED.

In addition to objections to Luman's reliance on Luman's declaration, Diaz objects to Arellano relying on it.  Diaz objects to Arellano's citation of the following statement from Jerry Luman's declaration, which he contends is conclusory, speculative, lacking personal knowledge, and lacking foundation (Dkt. 168 (Arellano Objections)):

- "I believe that the last review board that was done at Precinct 2 was for Arellano. Diaz discontinued the Review Board afterwards."

Dkt. 128-5 at 4.  The court agrees that there is insufficient foundation for how Luman knows this, and the objection is therefore SUSTAINED.

### 10.    David Williams's Declaration (Dkt. 128-7)

Diaz objects to the following statements from David Williams's declaration as conclusory, speculative, and lacking in foundation or personal knowledge (Dkt. 187):

- "This would be a violation of Harris County policy, because Slaughter was campaigning while on duty, as well as possible claims of official oppression. I was not able to investigate Slaughter because I was demoted and stripped of all my IAD investigatory assignments."
- "I already knew at the time of that conversation that Diaz was planning to transfer me."
- "On June 12, 2019, I was inexplicably (or in a move explicable only as political retaliation) demoted once again and returned to work as the only person on the 3:00 p.m. to 11:00 p.m. night watch commander shift. This assignment had not been backfilled since it was originally created for me about one and a half months earlier."
- "On June 24, 2019, other far less experienced and credentialed colleagues (Eric Slaughter and Paul Martinez) were both promoted to the rank of captain while I had been relegated to vehicle maintenance issues and severely reduced authority. Paul Martinez was a known political supporter of Diaz who, like Hernandez and Vela, rose quickly within the ranks to replace Luman, Verbosky, and me."
- "Diaz and Hernandez wanted get control of the current command staff in order maximize political loyalty to the Diaz campaign. So, Diaz promoted Hernandez to lieutenant, then to assistant chief and then to chief deputy over a period of a few months."

Dkt. 128-7 at 1 ¶¶ 5, 6; Dkt. 128-7 at 2 ¶ 8; Dkt. 128-7 at 4 ¶ 7.  The court agrees that the statement that Hernandez was quickly promoted because he and Diaz wanted to maximize political loyalty is speculative and conclusory.  The objection to this statement is SUSTAINED.  These objections are otherwise OVERRULED.

Diaz objects to the following statement from David Williams's declaration as conclusory, speculative, lacking in foundation or personal knowledge, and hearsay (Dkt. 187):

- "This demotion was relayed to me by Lee Hernandez and coupled with a demand for a political contribution to the Diaz campaign. Lee Hernandez was, in succession to Bellotte, Diaz's uniformed political enforcer in a politicized precinct in which staff were expected to contribute to and sign up, by attendance logs, for Diaz' reelection campaign events."

Dkt. 128-7 at 2 ¶ 4.  The plaintiffs respond that Hernandez was acting as Diaz's agent, so this is not hearsay.  Dkt. 200.  The court agrees that this statement cannot be excluded under the rule against hearsay, and the objections are OVERRULED.

Diaz objects to the following statements from David Williams's declaration as conclusory, speculative, lacking in foundation or personal knowledge, and irrelevant (Dkt. 187):

- "Likewise, the swift advancement of Hernandez from a sergeant to the chief deputy, who was in charge of the entire department was extremely degrading for me."
- "After Diaz fired Verbosky, suspended Luman, and then had Paul Martinez become a full time as an "acting captain" was also degrading. Also, I believe that Diaz also made Slaughter an "acting captain" so that Martinez and Slaughter would both out rank Williams. This really demoralized me, as I was the only member of Diaz old command staff that was still employed, although not working in any capacity like I had previously."

Dkt. 128-7 at 4 ¶¶ 7, 9.  The court finds these statements are relevant to Williams's assertion that he was constructively discharged.  The court agrees that Williams's discussion about why Diaz made Slaughter acting caption is speculative, and the objection to that sentence is SUSTAINED IN PART.  The court will only consider the evidence to the extent it made Williams feel demoralized because officers who he once outranked now outranked him.  The remaining objections are OVERRULED.

Diaz also objects to the following statements as irrelevant (Dkt. 187):

- Paragraph 3 on the first page of the declaration, which is about the Texas Rangers' investigation.
- "On July 5, 2019, as a result of the stress produced in my private life by the ongoing retaliation against me, my wife suffered from an anxiety-induced bout of Bell's Palsy, and as a result has a physician-documented permanent facial paralysis of 20%."

Dkt. 128-7 at 1 ¶ 3; Dkt. 128-7 at 3 ¶ 4.  Later in the declaration, when Williams is discussing the medical issues he had that he attributes to the stress caused from the alleged retaliation, he notes that his wife's serious medical condition also contributed to his medical condition.  Dkt. 128-7 at 3 ¶ 5.  Her condition is therefore relevant.  The Texas Rangers investigation is not relevant to Williams's remaining claims.   These objections are thus SUSTAINED IN PART AND OVERRULED IN PART.

Diaz objects to the following statement as irrelevant and as impermissible character evidence (Dkt. 187):

- "During this suspension meeting, I was surrounded by three or four armed police officers when Lee Hernandez walked into the same room and slammed a box of tissue paper down on the desk in front of me. Hernandez was visibly agitated and stared without blinking and assumed a very aggressive physical posture; e.g., shoulders and elbows back, leaning forward, staring and breathing hard, as if he were ready to engage in a physical altercation."

Dkt. 128-7 at 3 ¶ 4.  Under Federal Rule of Evidence 404, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."   Here, however, the statements about Hernandez's demeanor do not seem to be about him acting in conformance with a general bad character; instead, Williams is setting forth the situation in the room during his suspension meeting to show the effect on Williams; he states in the next paragraph that he was hospitalized the following month with uncontrolled hypertension.  *See* Dkt. 128-7 at 3 ¶ 5.  This objection is OVERRULED.

Diaz objects to the following statement as irrelevant and conclusory and asserts that it contains a legal conclusion (Dkt. 187):

- "On August 17, 2019, as a result of the ongoing and unrelenting whistleblower retaliation, in addition to my wife's serious medical condition as a result of these actions, I was admitted into Methodist Hospital with uncontrolled hypertension and blood pressure readings of, among others, 208/113."

Dkt. 128-7 at 3 ¶ 5. This statement is relevant to damages. The statement that the damages resulted from whistleblower retaliation is a legal conclusion, and the court will disregard that assertion. This objection is therefore SUSTAINED IN PART AND OVERRULED PART. It is SUSTAINED with respect to the "whistleblower retaliation" part being a legal conclusion, but it is otherwise OVERRULED.

Diaz objects to the following statements in Williams's declaration as hearsay (Dkt. 187):

- "Arellano indicated to me that Slaughter had ordered a number of Precinct 2 employees not to speak or associate with Jerry Garcia while on duty."
- "I had a conversation with Barbara Callistien where she told me that she was planning to hire Coons."
- "Hughes had contacted me ostensibly to "welcome me" to the task force. The phone call remained on speaker while Captain Beau Price was also in the room. The conversation quickly turned into a lecture on political "loyalty" and "support" to elected officials, as I have deposed."
- "On June 2, 2019, I received a text message from Christy Hernandez, Lee Hernandez's wife, soliciting money and auction items for the Diaz Casino Night Fund raiser."
- "When I was transferred to the night watch commander position, Hernandez just ordered me to "sit there.""

Dkt. 128-7 at 1 ¶ 6; Dkt. 128-7 at 2 ¶ 5; Dkt. 128-7 at 5 ¶ 11. Diaz also objects to the statement about the text message from Lee Hernandez's wife as violating the best evidence rule. Dkt. 187. The plaintiff cannot prove the contents of an original writing without producing the original writing. Thus, the objection with regard to the best evidence rule is SUSTAINED, and the court will not consider the statement about what Christy Hernandez's text message said. With regard to hearsay, the plaintiffs respond that the statements either are not hearsay because they are not offered for the truth of the matter asserted or fall within a hearsay exception. Dkt. 200. The statements appear to be offered for the truth of the matter, and the court is unaware of any hearsay exceptions that apply. The hearsay objections are SUSTAINED.

Diaz objects to Williams's statement about not being provided an explanation for his demotion because it conflicts with his deposition testimony, but he does not provide a citation to

the conflicting testimony.  *See* Dkt. 187 at 6.  He thus has not met his burden, and his objection is OVERRULED.

Diaz objects to Williams's statement that notice was required under Section 614.023 of the Texas Local Government Code because this is a legal conclusion.  *Id.*  While Williams may testify that he did not receive notice or did not receive notice within a certain time period, stating that it is required under the statute is a legal conclusion.  This objection is SUSTAINED in that the court will not rely on Williams's interpretation of the law.

### 11.   Ana Herrera's Declaration (Dkt. 130-3)

Diaz objects to the following statements in Ana Herrera's declaration as speculative, conclusory, and lacking foundation or personal knowledge (Dkt. 188):

- Contract Patrol Division was "a position desirable to other Reserve Deputies."
- "Warrant Division, a more favored shift involving greater flexibility, weekends and holidays off, no mandatory uniform, and a car allowance. This was a position desirable to other Deputies."
- "The precinct had now become completely pay-to-play."
- "The SRO assignment was a less desirable position. I would lose my take home car and would be required to wear a uniform."
- "This was again a less desirable position; involving the loss of my take home car; requiring me to wear a uniform; and precluding my working extra jobs."
- "Slaughter is a known support of the Diaz campaign. Before I left the campaign, I would regularly see him at Diaz campaign events."

Dkt. 130-3 at 1 ¶¶ 3, 4, 9; Dkt. 130-3 at 2 ¶¶ 3, 4; Dkt. 130-3 at 4 ¶ 1.  Herrera has sufficiently laid the foundation to support her assertion that the positions to which she was reassigned were less desirable to other deputies, so the objections to those statements above are OVERRULED. Herrera's statement that the precinct was completely pay-to-play is conclusory and speculative, so the objections to that statement are SUSTAINED.  The statement about Slaughter being "known" to support the Diaz campaign is speculative, and the objection to that portion of the last statement above is SUSTAINED.  However, the court will consider the statement that Herrera saw Slaughter

at these events as some evidence of his support, so any objections to the remainder of the sentence are OVERRULED.

Diaz objects to the following statement from Herrera's declaration as speculative, conclusory, lacking foundation or personal knowledge, and hearsay (Dkt. 188):

- "Hernandez's unofficial position in the Diaz political organization made him the point-man for patronage because 'he had the Constable's ear.' Hernandez had essentially taken over Kim Bellotte's position within the Diaz campaign after Bellotte was forced to resign in the wake of the Texas Rangers' report."

Dkt. 130-3 at 1 ¶ 5.  The court finds that there is sufficient foundation in the record indicating that Hernandez and Diaz had a close working relationship subsequent to when Bellotte, who Diaz referred to as his "work wife," left the precinct.  It is unclear what Diaz contends is hearsay in this statement.  The objections to this statement are OVERRULED.

Diaz objects to the following statement from Herrera's declaration as speculative, conclusory, and lacking foundation or personal knowledge, and also contends it violates the best evidence rule (Dkt. 188):

- "Martinez's contributions were ones that I could not match."

Dkt. 130-3 at 1 ¶ 7.  The speculative and lack of foundation objections to this statement are SUSTAINED.

Diaz objects to the following statements from Ana Herrera's declaration as hearsay (Dkt. 188):

- "Hernandez's response was positive, and he indicated that he was certain I would be an asset to the department in a supervisory position. Hernandez stated that he knew that I was hardworking, and he would definitely let "The Boss" know of my interest in the sergeant's position."
- "Hernandez came into my office and privately advised me that Corporal Blanca Martinez was also being considered for the new sergeant's position. Hernandez emphasized that Martinez was a big supporter of Diaz and added that her contributions are 'pretty big.'"

- "On or about March 14, 2019, at approximately 1:20 p.m., Hernandez stopped me outside of his office and questioned me regarding the silent auction for the upcoming Diaz campaign fundraiser."
- "Hernandez stared for a few seconds and then said to me, "So, you're not going to help?" I answered, "No." Hernandez replied, "I'll be sure and let 'The Boss' know that you won't be helping with the auction!""
- "On or about March 19, 2019, at approximately 1:30 p.m., Chief Jerry Luman came to my office and stated that I was being involuntarily transferred to a School Resource Officer (SRO) position. Chief Jerry Luman advised that Diaz's reason for the transfer was not disclosed to him."
- "he immediately said, 'Oh right! Well then, you are being transferred because we don't have a female officer on the evening shift.'"
- "Hernandez responded by telling me I have been around long enough to know how the game is played. Hernandez then advised me that my new involuntary assignment would begin in two days, on Saturday, March 30, 2019."

Dkt. 130-3 at 1 ¶¶ 6, 7; Dkt. 130-3 at 2 ¶¶ 1, 2, 4.  The plaintiffs assert that Hernandez's statements and Luman's statements are not hearsay because they were acting as Diaz's agents. Dkt. 200.  The court agrees that to the extent Hernandez and Luman were acting as Diaz's agents, their statements are admissible.  The statements that are solely Hernandez's opinions are hearsay and are not admissible.  The objections are SUSTAINED IN PART AND OVERRULED IN PART.

Diaz objects to Herrera's statement in her declaration that she was terminated because it is "contrary to evidence," citing the document at docket entry 108-6. Dkt. 188.  That document is Herrera's resignation letter.  *See* Dkt. 108-6.  Herrera does state later in her declaration that she was forced to resign, so the assertion that she was terminated in the first paragraph appears to just be semantics, but nevertheless her employment was not technically terminated, so the objection is SUSTAINED.

Diaz objects to Herrera's testimony on the first paragraph of page 3 as irrelevant. Dkt. 188.  The paragraph describes a health condition that Herrera contends was exacerbated by stress.  *See* Dkt. 130-3 at 3 ¶ 1.  This is relevant as it relates to damages.  The objection is OVERRULED.

Diaz objects to the following statement because it violates the best evidence rule, noting that there is a recording of the statements to which Herrera refers (Dkt. 188):

- "At various campaign meetings, Diaz would also talk about getting money, and demand that employees "borrow from your 401K," "get a loan from your bank," "ask your friends for money," "ask your neighbors for money," or "offer your neighbors a ride to the bank to get the money."

Dkt. 130-3 at 3 ¶ 4.  Since Herrera is speaking of various events as opposed to one event where a recording may be in the record, the objection is OVERRULED.

Diaz objects to the following statement under the best evidence rule because the plaintiff did not produce the sign-up sheets (Dkt. 188):

- "The meetings also contained sign-up sheets that were monitored by Christy Hernandez, Jessica Duran, and Ana Diaz."

Dkt. 130-3 at 3 ¶ 4.  These sign-up sheets would not be under Herrera's custody and control, so the objection is OVERRULED.

Diaz objects to plaintiff Emily Rivera's citation to Herrera's deposition as supportive of the statement that Herrera informed Hernandez she was not going to participate in campaign events because it is not relevant to Rivera's claims or defenses.  Dkt. 191 (citing Dkt. 130-3).  The court finds that it is relevant.  The objection is OVERRULED.

### 12.    Sara Cynthia Vara-Leija's Declaration (Dkt. 128-8)

Diaz objects to Vara-Leija's discussion of the Texas Rangers investigation in her declaration as irrelevant.  Dkt. 189 (objecting to Dkt. 128-8 at 1 ¶ 4).  Vara-Leija notes how she participated in the investigation and subsequently stopped donating to the Diaz campaign because she "disapproved of his methods and ethics."  Dkt. 128-8 at 1 ¶ 4.  The court agrees that the investigation is not relevant to whether Diaz retaliated against Vara-Leija for not donating to his

campaign, and this objection is SUSTAINED.  The court will disregard this paragraph to the extent

it discusses the substance of the Texas Rangers investigation.

Diaz next objects to the following statement in Vara-Leija's declaration because it is

speculative, conclusory, and lacks foundation (Dkt. 189):

> "On or about March 21 or 22, 2019, I filed a complaint on Brown
> for his conduct. That same day, I was told my new supervisor would
> be Brown; the same individual on which I had just filed a complaint.
> Two days later I was sent back to OEM. The reason for this transfer
> that I was given was that Diaz said he no longer needed me in the
> office."

Dkt. 128-8 at 1 ¶ 6.  These objections are OVERRULED.

Diaz objects to the following statement as hearsay and irrelevant (Dkt. 189):

> "This notification came shortly after I had been commended by
> TCOLE Field Supervisor, Richard Gutiérrez, on the flawless audit."

Dkt. 128-8 at 2 ¶ 1.  These objections are OVERRULED.

Diaz objects to the following statement as hearsay, speculative, and conclusory (Dkt 189):

> "Chief Jerry Luman advised me that Diaz ordered I not work the
> Jacinto City, South Houston or Galena Park areas and that I not
> prepare anything for the task force as Diaz didn't want violators
> apprehended whose families could possibly be his campaign
> supporters."

Dkt. 128-8 at 2 ¶ 2.  Since Luman was speaking as Diaz's representative here, this is not hearsay.

All of the objections to this statement are OVERRULED.

Diaz objects to the following statement under Federal Rule of Civil Procedure 37(c)

because Vara Leija did not plead that this was an alleged reassignment upon which she was basing

her claim (Dkt. 189):

> "On June 26, 2019, I was reassigned as quartermaster to overseeing
> property room/equipment, a reassignment from a more prestigious
> assignment to a lesser one, and again without issuance of a 614.023
> notice."

Dkt. 128-8 at 2 ¶ 4.  The plaintiffs assert that there is no requirement that each individual adverse employment action be pled.  Dkt. 200.  This objection is more appropriately an argument in the reply to the extent Vara-Leija asserts in response that this is evidence of an adverse employment action.  The evidentiary objection is OVERRULED.

Diaz objects to the following statement as speculative and conclusory and asserts that it contains impermissible opinion testimony (Dkt. 189):

> "This patrol shift was a reactive assignment and was considered less desirable than the administrative position I had occupied prior to this demotion and involuntary transfer."

Dkt. 128-8 at 2 ¶ 8.  The court agrees that the statement that the position was "considered less desirable" is conclusory and speculative, as Vara-Leija is speculating as to what others thought of the position.  The objection to that statement is SUSTAINED to the extent Vara-Leija is speculating as to other officers' views of the position.  The objection is otherwise OVERRULED.

Diaz objects to the following testimony as hearsay (Dkt 189):

> "Hernandez turned, looked directly at me and stated, "You do not want to get caught in my or Diaz's crosshairs like Williams did." Hernandez advised that all I had to do was "sit there.""

Dkt. 128-8 at 2 ¶ 8.  The plaintiffs assert that this is not offered for the truth of the matter asserted.  Dkt. 200.  The court agrees that Vara-Leija appears to be offering this statement to demonstrate its effect on her rather than for the truth of the matter.  Additionally, Hernandez is acting as an agent of Diaz here.  The objection is OVERRULED.

Diaz objects to the following testimony as violating the best evidence rule (Dkt. 189):

> "In protest, I wrote an email to Diaz indicating that I had never worked on patrol before and was not experienced. Diaz did not respond."

Dkt. 128-8 at 3 ¶ 4.  While Diaz does not state why he believes this statement violates the best evidence rule, presumably he is asserting an email exists.  A party must provide the original writing to prove the contents of a writing.  Thus, the best evidence objection is SUSTAINED.

### 13.    Norman Verbosky's Declaration (Dkt. 138-1)

Diaz objects to the first paragraph of Norman Verbosky's declaration that discusses his statements to the Texas Rangers as irrelevant.  Dkt. 190.  This is the second paragraph on the first page, and the information in the paragraph about the Texas Rangers just indicates that Verbosky provided testimony unfavorable to Diaz and Bellotte regarding Bellotte's involvement in the campaign.  Dkt. 138-1 at 1 ¶ 2.  The court agrees that the Texas Rangers investigation is not relevant to Verbosky's remaining claims.  This objection is SUSTAINED.

Diaz objects to the following statements as conclusory, speculative, and lacking in foundation or personal knowledge:

- "I therefore declined to provide Diaz with any further assistance to his campaign and ceased attending campaign functions; having lost faith in his judgment and his ethics. I quit the political support, based on the fact that Diaz was involved in illegal activities; especially with the monies that were coming in and the goods that Diaz and Bellotte were going around asking for and obtaining. I wasn't going to have any part of the political side because he was doing it on county time, which is illegal."
- "My advice was overlooked. By me going against Diaz and Bellotte, whether it was illegal or what, that was part of my termination, because I brought to light these injustices going on, and I wasn't going to have any part of it."
- "I was replaced by Lt. Lee Hernandez, who, unlike me, was a Diaz campaign contributor."

Dkt. 138-1 at 1 ¶¶ 3, 4, 6.  These objections are OVERRULED with regard to the first statement and SUSTAINED with regard to the second and third statement.

### 14.    Emily Rivera's Declaration (Dkt. 137-1)

Diaz objects to the following statements in Emily Rivera's declaration as conclusory, speculative, and lacking foundation (Dkt. 191):

- "I realized that Diaz and Hernandez would see me as insubordinate for refusing to participate in the Diaz campaign. I was aware of Diaz's expectations for political loyalty from his employees and knew from others experience that I too would be retaliated against.:
- "In addition, Jessica Duran discovered that I had 'liked' a Facebook post by the opposing campaign and telephoned me at home before work to question my loyalty to Diaz, mentioning that he was on Facebook and had taken notice of that interaction. Sure enough, my liking a post was causing Diaz to question my loyalty."

Dkt. 137-1 at 2 ¶¶ 1-2.  The court agrees that the statement that Rivera knew she too would be retaliated against is speculative.  The objections are SUSTAINED with regard to that statement but otherwise OVERRULED.

Diaz objects to the following statements as hearsay (Dkt. 191):

- "In addition, Jessica Duran discovered that I had 'liked' a Facebook post by the opposing campaign and telephoned me at home before work to question my loyalty to Diaz, mentioning that he was on Facebook and had taken notice of that interaction. Sure enough, my liking a post was causing Diaz to question my loyalty."
- "On February 21, 2019, Christy Hernandez, Assistant Chief Lee Hernandez's wife, texted me to discuss campaign meetings. Jessica Duran's status of employment, and campaign concerns."
- "Later that same day, while I was still at work, Assistant Chief Lee Hernandez walked up to me and said 'so you just said the hell with it?' Hernandez was referring to campaign activities and my declining to discuss them on duty; and he confronted me loudly. Hernandez added that 'you know that he [referring to Diaz] really needs your help, right?' I responded that Diaz needed to find a campaign manager. Hernandez responded, 'I think he is going to ask you to do it.' I notified Hernandez that I did not have time for that. Hernandez responded, 'So you are going to tell him no?'"

Dkt. 137-1 at 1 ¶¶ 4, 6; Dkt. 137-1 at 2 ¶ 2.  Diaz also objects that the second statement above violates the best evidence rule.  Dkt. 191 at 3.  With regard to the best evidence rule, the texts themselves are the best evidence, and the plaintiff is testifying about the contents of the writing.  Thus, the plaintiff needed to provide the writing.  The best evidence rule objection to the second statement above is SUSTAINED.  With regard to hearsay, the portion of the first statement discussing what Duran said about Diaz is hearsay and the second statement about what Christy Hernandez said is hearsay; the objections to these statements are SUSTAINED.   The third

statement about what Hernandez said was made while Hernandez was acting as Diaz's agent and therefore is considered a statement of a party opponent.  That objection is OVERRULED.

Diaz objects to Rivera's testimony that she told Christy Hernandez that she would not be attending a campaign event because Diaz asked Rivera for evidence that demonstrated her decision not to participate in the campaign, and Rivera did not produce evidence.  Dkt. 189.  Diaz did not provide the court with this discovery request and response when filing this objection.  This objection is therefore OVERRULED.

## M.   Objections to Deposition Excerpts

### 1.   Anderson's Deposition (Dkt. 128-2)

Diaz objects to testimony in Anderson's deposition (Dkt. 128-2) as being non-responsive, not being testimony, "no question," hearsay, vague, irrelevant, or calling for a legal conclusion and non-responsive.  Dkt. 167.

Diaz objects to the following testimony as being non-responsive (Dkt. 167):

- Q.··So, again, if your rank was sergeant throughout that entire time, how were you demoted?
  A.··Well, I was involuntarily transferred to night shift.

Dkt 128-2 at 37:4–7.  This objection is OVERRULED.  Diaz is free to argue that the transfer was not a demotion, but the witness responded to the question as he understood it.

Diaz objects to the following deposition excerpt as "no testimony"  (Dkt. 167.):

- Q.··Demotion is something other than that.··You have made two claims.··One is that you were·involuntarily transferred.··The other is that you were·demoted.

Dkt. 128-2 at 37:21–24.  This objection is OVERRULED.  A full review of the testimony on this page demonstrates that counsel was just trying to clarify his question to the deponent.

Diaz objects to the following testimony as non-responsive (Dkt. 167):

- Q:  So my question is how were you demoted.

> A.  I was -- I was involuntarily transferred from day shift supervising several -- almost 14 people to night shift supervising two people.
> Q.  Okay.
> A.  That's a demotion

Dkt. 128-2 at 37:25 to 38:5. This objection is OVERRULED.  The witness responded to the question with his understanding of the word "demotion."

Diaz objects to this testimony as "no question" (Dkt. 167):

- A.··When I -- when I advised -- when I was in the·meeting on January -- or December 3rd and I advised I·was no longer going to contribute time or money or·effort to the Chris Diaz campaign, to the Chris Diaz·machine, political machine -- it started back in October·of '18 which is in my complaint also when I advised the·Constable that I couldn't participate in a fundraiser.·And he got upset with me and told me that you can't·participate -- because I was going out -- because I was taking my kids to Disney World.··I said, "I can't be at·this fundraiser because I'm taking my kids to Disney·World."·And he said, "You have money for Disney·World; but you don't have money for this fundraiser, for·this golf event?" That's when it -- that's when it started --·that's when I realized that I was being retaliated·against.··Because three days after that is when my car·allowance was taken away.··End of statement.

Dkt. 128-2 at 67:17 to 68:10. This objection is OVERRULED.  "No question" is not a proper objection.  While it appears Diaz is objecting that Anderson merely cited the lines the response was in and did not cite the question, the deponent was responding to a question about what actions he took that were the subject of the retaliation.  The question is provided right above the cited response.  While the answer is not very concise, it is responsive to the question.

Diaz's next objection to the Anderson deposition is from lines 86:22 to 87:13, which basically is discussion about the witness not being able to find something and needing his glasses. They were still on the record, but it is not relevant.  Dkt. 167.  The objection to this testimony, which just happens to be in the middle of some relevant testimony cited by Anderson, is

SUSTAINED, and the court will not consider this irrelevant discussion about the witness not being able to see an exhibit without his glasses.[5]

Diaz against objects to this testimony as "no question" (Dkt. 167):

- ·· A.··Well, I know in the statement it says I was not going to.··I told him I was not going to -- I was not able to, okay?··I told him that I was not going to --·able to participate in this event, even though I showed·up at the meeting, that I was taking my children, my·wife and kids with our RV and we were driving to Disney·World and spending a couple of weeks in October at Walt·Disney World's campground.··He was very irritated by·that.··And, of course, you see the quote here.··And he·said, "You have money to go on vacation, but you don't·have money for this golf tournament?"··And then he also·said, "It must be nice to have money to go on vacation."

Dkt. 128-2 at 90:12-23.  While certainly there is no question in the pincite Anderson provided, right above the directly cited lines there is a question, and Anderson provided the entire page to the court.  The court is not required to sift through the summary judgment evidence for the parties, but it is perfectly capable of seeing a question right above a response in a deposition if the response does not itself provide enough information.  This objection is OVERRULED.

Diaz objects to this portion of Anderson's deposition as non-responsive (Dkt. 167):

- Q.··(BY MR. KOTLARSKY)··That was for a Thanksgiving feast, as you called it, for the people in the building.
      I'm asking when did you donate -- when did you last donate money to Constable Diaz's campaign?
  MR. POERSCHKE:··Object, mischaracterizes prior testimony.
  A.··Shane, real quick, every -- it doesn't have to be a campaign event to donate to this man's campaign.·It could be anything as simple as hey, come eat lunch·with me; and I pay for lunch.··That's part of his campaign.··It's part of his image.··He goes around and he goes to these fancy restaurants and he's networking with people.··And he brings us along to pay the bill. ·So that's part of the campaign.
  ·· ····· ·· So when you asked me that -- I'm not being difficult.··I'm just trying to be as forthcoming as I·can.··So the last time I gave money to Chris Diaz in any capacity is the $25 I gave to Chief Luman.··Of course,·he gave the other 25 for the Thanksgiving feast.

---

[5] The court notes that it would have disregarded this testimony anyway. While certainly it would be helpful if the plaintiffs would have more precisely cited the testimony the court needs to consider in the first place, it was not necessary to file formal objections because the plaintiffs included some extraneous lines that make absolutely no difference to the outcome of this case. This simply increased counsel's workload as well as the court's for no purpose.

Dkt. 128-2 at 136:5–23.  That objection is OVERRULED.  The witness was responding to the question as he understood it.  To the extent that it is nonresponsive to the question asked, at the summary judgment stage a party "may object that a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Here, however, even if the witness's statement does not respond to the question about donating money—and the witness makes a good argument that it does—the question could be reworded to evoke a "responsive" answer to provide the same evidence at trial.

Diaz objects to the following testimony as hearsay (Dkt. 167):

- Q: Chief Luman told you that Constable Diaz·did not care about your difficulty with night vision,·not about any other -- not about anything else, correct?
  A.··Right.

Dkt. 128-2 at 4–7.  However, Luman is a plaintiff in this case and will likely testify, so Luman may testify about what Diaz told him since Diaz is a party opponent.  Additionally, Luman was representing Diaz here, so the statement is not hearsay under the party opponent rule.  This objection is OVERRULED.

Diaz objects to the following portion of the deposition transcript as "no response to question" (Dkt. 167):

- Q.··Thank you.··With regards to Lieutenant Kritzler, what did Lieutenant Kritzler say about his belief that you were being forced to resign because you had stated that you no longer wished to participate in campaign events or donate?

Dkt. 128-2 at 159:8–12.  The court believes that Diaz is objecting that Anderson cited to only the question and not the response.  The court agrees with Diaz that it cannot rely on a statement by counsel as evidence, so this objection is SUSTAINED.

Diaz next objects to Anderson's citation of a portion of the deposition (Dkt. 128-2 at 173:7–11) that contains a question by Anderson's counsel that Diaz's counsel objects to and then Anderson's counsel re-phrases. *See* Dkt. 167. Diaz asserts it is "vague, no response to question." While the initial question was vague, neither the cited testimony nor this objection serves a purpose. The objection is SUSTAINED to the extent that the court will not rely on the initial vague wording of a question that was then rephrased. It is otherwise OVERRULED.

Diaz objects to the following cited testimony because it does not include the question (Dkt. 167):

- A: No. The reason I didn't want to support Chris Dias and Kim Bellotte – Chris Diaz because of the things that Kim Bellotte had done?

Dkt. 128 at 175: 3–5. Again, the actual question is included in the materials provided to the court should the court need to refer to it, and, regardless, the response speaks for itself. This objection is OVERRULED.

Diaz objects that the following cited portion of the deposition as calling for a legal conclusion, speculation, and "no response to question" (Dkt. 167):

- . . . anything – and I'm not interested in what's actually in the report, but is there anything in the report, but is there anything that you personally observed about the actions of Chris Diaz or Kim Bellotte that would be considered possibly a theft offense?
  MR. KOLARSKY: Objection, calls for a legal conclusion and calls for speculation.
  MR. POERSCHKE: He's a police officer.

Dkt. 128 at 177:9–15. First of all, Anderson's counsel lays the foundation for the question right after this excerpt by confirming Anderson is familiar with the Texas Penal Code, and then Anderson responds to the question. This objection is OVERRULED.

Diaz's final objection to the excerpts from Anderson's deposition is that page 177 line 16 through page 179 line 23 are irrelevant. Dkt. 167. This testimony is about Bellotte's actions with regard to items that were donated for Hurricane Harvey victims. Immediately after this testimony,

Anderson explains that Bellotte's actions contributed to his decision not to donate to Diaz. *See* Dkt. 128-2 at 179:24 to 180: 3. While this ties Bellotte's action to the events in this case, at least tangentially, it is still not relevant. The reason for Anderson's decision to not support Diaz has nothing to do with his *right* not to support Diaz. This objection is SUSTAINED.

### 2. Arellano's Deposition

Diaz objects that Arellano did not attach her deposition to her response, and the only pages that are already in the record that are cited in the response are page 72, line 16, to page 73 line 5. Dkt. 168. Diaz urges the court to not consider any other portion of the deposition and to not rely on assertions that Arellano attributes to her deposition testimony. *Id.* This objection is SUSTAINED. The court will not rely on any deposition testimony that was not provided to the court.

### 3. Carrion's Deposition (Dkt. 130-2)

Diaz objects to some excerpts from Carrion's declaration about her meeting with the Texas Rangers (Dkt. 130-2 at 57:17–60:6, 60:21–63:10). Dkt. 168. Diaz asserts that this investigation is not relevant as the court has already dismissed the claim relating to the investigation. *Id.* Diaz acknowledges that Carrion claims that this information goes to her alleged motive for failing to support Diaz, but he asserts that that is irrelevant as well. *Id.* The court agrees that Carrion's motive for failing to support Diaz is irrelevant. The plaintiffs argue that the investigation is relevant not only to the dismissed claim but also provides a backdrop to the issues to be litigated at trial and provides Diaz's modus operandi. Dkt. 200. The court agrees with Diaz that the Texas Rangers investigation is not relevant to Carrion's remaining claim; this objection is SUSTAINED.

### 4.      Clark's Deposition (Dkt. 131-1)

Diaz objections to the following pages and lines of Clark's deposition (Dkt. 131-1) because the question is not cited: 17:16-19, 22:4-5, 37:9-11, 67:14-18, 84:19-22, 85:20-22, 87:10-12, 110: 1-5, 121:4-15.  The court has reviewed this testimony, and the response either speaks for itself or, if the court needs clarity, in most of these cases it can look directly above the response and find the question.  These objections are OVERRULED.

Diaz objects to the following deposition excerpts because there was "no evidence attached:" 24:11-19, 25, 26, 48:15-16, 50:5-9, 50:11-16, 52:3-9.  The court agrees that this evidence was not attached.  These objections are SUSTAINED.

Diaz objects to page 37:9-11 under the "optional completeness rule."  Dkt. 170.  If there is more complete evidence that calls the cited evidence into question, Diaz should come forward with it.  That is what would happen at trial if this objection were made.  It is not a reason to strike summary judgment evidence.  This objection is OVERRULED.

Diaz objects to the testimony on the following pages/lines as hearsay: 67:14-18, 110:1-5. Dkt. 170.  On page 67, Clark says that Lee Hernandez told him Diaz, Diaz's wife, and Bellotte were aware of the Texas Rangers report.  To the extent Hernandez is acting as an agent of Diaz, the party opponent, this objection is OVERRULED.  It is otherwise SUSTAINED, and the court will not consider Clark's assertion that Ana Diaz and Bellotte knew about the Texas Rangers report.  The testimony on page 110 is about a group discussion and some unnamed person making a statement inferring that everyone knew that the employment decisions at issue were retaliation and that it was out of the control of the people in the group. Dkt. 131-1 at 110:1-5.  Both of these statements are indeed hearsay.  The court agrees that this is hearsay and will not consider it.  The objection is SUSTAINED.

Finally, Diaz objects to the testimony on the following pages/lines as nonresponsive: 84:19-22, 85:4-5, 85:20-22, 87:10-12, 110: 1-5, 126:22-127:1.  Dkt. 170.  The court has reviewed this testimony, and it is true that at times the responses are not exactly responsive to the question. However, at the summary judgment stage, the standard under Federal Rule of Civil Procedure 56 is whether "the material cited to support of dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Even if the statements are not perfectly responsive to the question asked, presumably Clark's counsel could frame an appropriate question at trial.  These objections are therefore OVERRULED.

### 5.   Ricardo Rodriguez's Deposition (Dkt. 136-2)

Diaz objects to the deposition provided by Ricardo Rodriguez (Dkt. 136-2) because Rodriguez included the entirety of his deposition including irrelevant, immaterial, and voluminous materials not in conformity with Rule 56 or this court's procedures.  Dkt. 171.  Diaz urges the court to strike and disregard portions of the deposition transcript that are inappropriately included without any identification of relevant facts.  *Id.*  This objection is SUSTAINED.  The court will disregard those portions of the deposition that are not referred to by the parties.

### 6.   Dwayne Pacifico's Deposition (Dkt. 135-2)

Diaz objects to four portions of Pacifico's deposition (Dkt. 135-2), contending that all four are not relevant and that three of the four excerpts are nonresponsive.  Dkt. 185 (objecting to Dkt. 135-2 at 147:11-148:1, 151:3-11, 159:12-161:8, and 161:13-162:1).  These objections are OVERRULED.  To the extent these snippets in isolation are irrelevant, the remaining testimony on the page illuminates the relevance.  And, the nonresponsive objections are not helpful as surely plaintiffs' counsel will be able to ask a question to which the information is adequately responsive at trial.

7.      Ana Herrera's Deposition (Dkt. 132-1)

Diaz objects to the following page and line designations of Herrera's deposition as "no question": Dkt. 132-1 at 20:21-22, 34:1-4, 75:7-17, and 80:3-12.  Dkt. 188.  The court has reviewed this testimony, and the response either speaks for itself or if the court needs clarity, in most of these cases it can look directly above the response and find the question.  These objections are OVERRULED.

Diaz objects to the following page and line designations of Herrera's deposition as nonresponsive: Dkt. 132-1 at 20:25-21:3, 21:7-17, 22:14-23, 23:10-16, 23:19-24, and 75:7-17. This is a summary judgment motion, not at trial.  Yes, at times the witness adds information that is not completely responsive to the question.  But, if her response is something that her counsel will need to get in as evidence, the court is confident counsel will be able to ask a question in a way to elicit this information so that it is admissible at trial.  These objections are therefore OVERRULED.

Diaz objects to the attorney commentary contained at page 21 line 6 of the Herrera deposition.  Dkt. 188.  The commentary is as follows: "Just a yes-or-no question."  While certainly Herrera could have left this line out of her citation, the court is capable of disregarding it without the necessity of the defendant filing a former objection over commentary that makes no difference whatsoever.  Nevertheless, the objection is SUSTAINED.

Similarly, Diaz objects to the court reporter statement that she or he did not hear the answer contained on page 22 lines 3 through 4.  Dkt. 188.  Again, this makes no difference, but the objection is SUSTAINED.

Diaz objects to the following pages and lines of Herrera's deposition as hearsay:

Q: Okay. What did Lieutenant Hernandez say to you?

A: Lieutenant Hernandez said that he thought that that was a great idea and he thought I would do a good job because – and he told me because you are a hard worker and that he would tell the Constable.

Dkt. 132-1 at 30:17-22.  This objection is SUSTAINED.

Q: (BY MR. KOTLARSKY) Do you know whether Lee Hernandez ever told Constable Diaz that you were interested in being considered for the sergeant position?
A: Yes, he told me that he did. Excuse me.
Q: Confirm when you say – Lee Hernandez told you that Lee Hernandez had, in fact, told Constable Diaz that you were interested in being considered for the sergeant position?
A. That's correct. That's correct.

Dkt. 132-1 at 33:12-21.  This objection is OVERRULED.  Hernandez was acting as an agent of the party opponent here.

Q:  .  .  .  said that he thought it was a great idea that you seek consideration for the position and that he would pass along your consideration or request for consideration to Constable Diaz, correct?
A: Correct.
Q: Did Lieutenant Hernandez tell you anything else during that conversation?
A: No.
Q: Did Lieutenant Hernandez tell you who else was being considered for the position?
A: Not at that – not at that time. Not at that time.
Q: At any other time did Lieutenant Hernandez tell you who was being considered for the position?
A: Yes.

Dkt. 132-1 at 34:5-19.  This objection is OVERRULED.  Hernandez was acting as an agent of the party opponent here.

Q: And what did Lieutenant Hernandez tell you then?
A: Lieutenant Hernandez told me that Blanca Martinez was being – was also interested in the sergeant's position.
Q: Anything else?
A: She didn't have the experience that I did and that he was going to continue to talk to the Constable.

Dkt. 132-1 at 34:22 to 35:4. The court agrees this is hearsay. The objection is SUSTAINED.

Q: When did you find out that Corporal Martinez was being promoted to that sergeant position?
A: In February.
Q: How did you find that out?
A: Lieutenant Hernandez came to me and told me that she was going to get the position.
Q: I'm not interested here in why you think she got that position. I'm only interested in what Lieutenant Hernandez told you about why Martinez had gotten the position.
A: At the time that he told me she got the position, he didn't tell me anything else. Before he told me she got the position he told me that she was being considered for the position. At that time he told me that she was – that her – excuse me, her contributions to Constable Diaz were pretty big.
Q: When did Lieutenant Hernandez tell you that Martinez was being considered for the position and that her contributions to the Constable had been pretty big?
A: A few days before he told me that she got the position.

Dkt. 132-1 at 39:18 to 40:10. This objection is OVERRULED.  Hernandez was acting as an agent of the party opponent here.

Q: What did Corporal Martinez tell you about her donations to Constable Diaz?
A: She just told me that – when she did donate she would tell me how much she donated. Sometimes, not all the time. A couple of times, maybe once, twice.

Dkt. 132-1 at 43:9-13.  This objection is SUSTAINED.

Q: What do you mean by you failed to participate in the fundraising?
A: Lieutenant Hernandez had come to me and asked me about the silent auction which is what I have been doing since – for every campaign, fundraising, that allowed the space for silent auction. I would organize that and I – he came to me and asked if I was going to organize the next one and I told him no.

Dkt. 132-1 at 45:13-20.   This objection is OVERRULED.   While there are questions from Hernandez in this testimony, the substance of the testimony is what the witness told Hernandez.

Q: What was Lieutenant Hernandez's response?
A: So he said, "So you are not going to help with the silent auction?"

Dkt. 132-2 at 52: 11-12.  This objection is OVERRULED.  Hernandez was acting as an agent of the party opponent here.

> A: . . . And he said, "Well, I'll make sure I'll tell the boss that."

Dkt. 132-2 at 52:14-15.  This objection is OVERRULED.  Hernandez was acting as an agent of the party opponent here.

> Q:  Okay. Who told you that you were being transferred to a position as a school-resource officer?
> A: Chief Luman.  Chief Luman came to my office and told me.  But it was in March 2019.
> Q: What did Chief Luman say in that conversation?
> A: He told me I was being transferred to the schools and he did not know why. He did not have a reason.

Dkt. 132-2 at 57:3-10.  This objection is OVERRULED.  Luman was acting as an agent of the party opponent here.

> Q: Either way Chief Luman did not know the reason –
> A: Right
> Q: --you were being transferred, correct?
> A: Correct.

Dkt. 132-2 at 47:15-19.  This objection is SUSTAINED.  Luman will have to testify about what he knew.

> Q: What was the response?
> A. It's the Constable's decision.

132-2 at 57:24-25.  This objection is OVERRULED.  Luman was acting as an agent of the party opponent here.

> Q: What did Chief Luman say at the time that he informed you the transfer was cancelled?
> A: That Chief Clemmons – there was no need for me to go there. No reason – he did not want me there because he had people there that were already trained and he didn't want to have to train me – train another officer, not particularly me, not specifically me, just another officer.

Dkt. 132-2 at 67:7-19.  This objection is SUSTAINED.

> Q: . . . So then Chief Clemmons, he – I was told by Chief Luman
> that Chief Clemmons denied the transfer, said that he didn't want
> me over there, he didn't want to have to train another officer and he
> didn't want to give up any of the officers he already trained.

Dkt. 132-2 at 67:25 to 68:4. This objection is SUSTAINED.

Diaz objects to the following page/line designations under the best evidence rule: Dkt. 132-2 at 41:24 to 42:5, 42:6-9, and 42:13-43:6.  The testimony on these pages and lines is about how much Corporal Martinez donated to the Diaz campaign.  *See* Dkt. 132-2 at 41–43.  Diaz does not state why he objects under the best evidence rule, though presumably it mirrors his other objections under this rule that there is a copy of the actual campaign finance reports in the record, and that is better evidence than this testimony.  Regardless, these finance reports are in the record, and the witness will be able to point to this evidence in her testimony at trial.  The objection is OVERRULED.

Diaz next objects to the testimony on page 75 lines 7 through 17 because of "optional completeness."  Dkt. 188.  The statement is about Herrera's employment history.  Dkt. 132-2 at 75:7–17.  Diaz does not state why he believes this testimony is not complete, but if he has additional information about Herrera's employment history, he should provide that evidence and cite to it.  The court need not take a suggestion that there may be more to the story as fact.  The objection is OVERRULED.

Diaz's final objection to Herrera's deposition is to page 100 line 25 to page 101 line 12.  Diaz contends the testimony contained on these lines is speculative.  Dkt. 188.  This testimony is about what Herrera's interpretation of Hernandez's statement that Diaz had his ear meant.  *See* Dkt. 132-1 at 100–01.  This objection is SUSTAINED.

8.      Norman Verbosky's Deposition (Dkt. 138-2)

Diaz objects to the following testimony as not including the question and hearsay (Dkt. 190):

> A: Lt. Kimberly Bellotte, the next day or second day after work would run in – I would run into her office or hallway, and she would tell me, we have a list of who showed up and who's paying what. So, we'll – it's duly noted. The constable will know who's giving and who's not, or who cares in – was in her words, basically.

Dkt. 138-2 at 39:11-16.  The question is on the page provided and is not particularly helpful because the answer speaks for itself.  *See* Dkt. 138-2 at 39:3-4, 9-10.  Since Bellotte was Diaz's "work wife," she was representing him here and it is thus the same as a statement of a party opponent.  The objection is OVERRULED.

Diaz objects to the following the question is not provided in the citation and because it is non-responsive (Dkt. 190):

> A: He made the statement in the hallways on many occasions, whatever Kim says, goes. She's my work wife. She is my work wife, and whatever she says, it comes directly from me.

Dkt. 138-2 at 41:3-6.  This is actually an example of an instance where not having the question is a problem.  The question must be at the bottom of the previous page, and Verbosky did not provide the previous page.  Moreover, since the witness is using pronouns, without the question or other context, it is not clear who the witness is referring to (though the court assumes it is Diaz given other evidence in this case).  That being said, the court has no way of determining if the answer is indeed nonresponsive because Diaz did not provide the question either.  Thus, the objection to Verbosky's failure to provide the question is SUSTAINED but the nonresponsive objection is OVERRULED.

9.      Emily Rivera's Deposition (Dkt. 137-2)

Diaz objects to the following portions of Emily Rivera's deposition as nonresponsive or "no question": Dkt. 137-2 at 25:15-21, 44:15-21.  Dkt. 191.  On both of these passages, Rivera adds additional details after responding to the questions; the questions are not in the cited testimony, but they are directly above the cited testimony in the pages provided.  *See* Dkt. 137-2 at 25:12-21.  The court agrees that the additional information is not responsive to the question asked, but the response still could be presented in a form that is admissible at trial if counsel asks the proper question.  Therefore, the objections are OVERRULED.

## IV. CONCLUSION

The objections to the plaintiffs' summary judgment evidence are SUSTAINED IN PART AND OVERRULED IN PART as outlined above.

Signed at Houston, Texas on September 1, 2022.

_____
Gray H. Miller
Senior United States District Judge

82